**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Tiara Avaness (SBN 343928)
*tavaness@clarksonlawfirm.com*
Valter Malkhasyan (SBN 348491)
*vmalkhasyan@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (231) 788-4070

*Counsel for Plaintiffs & the Proposed Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.K., N.Z., and R.P., individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DESERT CARE NETWORK, DESERT REGIONAL MEDICAL CENTER, INC., JFK MEMORIAL HOSPITAL, INC., PALM BEACH HEALTH NETWORK, PALM BEACH GARDENS COMMUNITY HOSPITAL, INC. D/B/A PALM BEACH GARDENS MEDICAL CENTER, TENET HEALTHCARE CORP., and TENET HEALTHSYSTEM MEDICAL, INC.,<br><br>Defendants. | Case No.: 2:23-cv-5021<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CAL. CIV. CODE SECTION 56, *et seq*.<br><br>2. VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT, CAL. PENAL CODE SECTION 630, *et seq*.<br><br>3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE SECTION 17200, *et seq*.<br><br>4. INVASION OF PRIVACY UNDER CALIFORNIA CONSTITUTION<br><br>5. INVASION OF PRIVACY - INTRUSION UPON SECLUSION<br><br>6. NEGLIGENCE<br><br>7. VIOLATION OF FLORIDA SECURITY OF |

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

COMMUNICATIONS ACT, FLA. STAT. SECTION 934.01, *et seq.*

8.  VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. SECTION 501.201, *et seq.*

9.  BREACH OF IMPLIED CONTRACT

10. VIOLATION OF CALIFORNIA PENAL CODE SECTION 496(a) and (c)

11. UNJUST ENRICHMENT

## **DEMAND FOR JURY TRIAL**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

Plaintiffs B.K. ("**B.K**"), N.Z. ("**N.Z.**"), and R.P. ("**R.P.**") (collectively, "**Plaintiffs**"), individually and on behalf of all others similarly situated bring this action against Defendants: (1) Desert Care Network; (2) Desert Regional Medical Center, Inc. ("**DRMC**"); (3) JFK Memorial Hospital, Inc. ("**JFK Hospital**"); (4) Palm Beach Health Network and Palm Beach Gardens Community Hospital, Inc. d/b/a Palm Beach Gardens Medical Center ("**PBGMC**") (the **"Florida Defendants"**); and (5) Tenet HealthSystem Medical, Inc. and Tenet Healthcare Corp. ("**Tenet**") (collectively, "**Defendants**").

Plaintiffs' allegations are based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein, after a reasonable opportunity for discovery.

## INTRODUCTION

1.  Defendants are hospitals and networks which operate within the vast Tenet Healthcare Corp. systems, providing healthcare services to patients in both California and Florida.

2.  Tenet is a network of over four hundred sixty-five (465) surgical hospitals and ambulatory surgery centers, sixty-one (61) acute care facilities, and approximately one hundred and ten (110) additional outpatient centers that provide a wide range of medical services to patients across the U.S., including the Desert Care Network and the Palm Beach Health Network.[1]

3.  The Desert Care Network is a network of hospitals and medical centers, including DRMC and JFK Hospital (together, the "**California Defendants**"), that offers a range of medical services to patients in the Coachella Valley region. DRMC is a large tertiary hospital that provides advanced medical services to patients in the

---

[1] *Who We Are,* TENETHEALTH, www.tenethealth.com/about (last visited June 15, 2023).

CLASS ACTION COMPLAINT

Coachella Valley area. JFK Hospital affords medical care to patients in the Coachella Valley region.

4.    Palm Beach Health Network is a network of six (6) hospitals and care centers, including PBGMC (together, the "**Florida Defendants**"), that serves patients in Palm Beach County. PBGMC is an acute care hospital providing medical and surgical services as part of this network.

5.    Defendants have disregarded the privacy rights of millions of visitors to and users of their websites ("**Users**" or "**Class Members**") by intentionally, willfully, recklessly and/or negligently failing to implement adequate and reasonable measures to ensure that that the Users' personally identifiable information ("**PII**") and protected health information ("**PHI**") (collectively, "**Private Information**") was safeguarded. Instead, Defendants allowed unauthorized third parties, including Meta Platforms, Inc. d/b/a Facebook ("**Facebook**") to intercept the Users' clicks, communications on, and visits of Defendants' websites, including https://www.desertcarenetwork.com/ and https://www.palmbeachhealthnetwork.com/ (the "**Websites**"), and their "My Health Rec" Patient Portal, available via Tenet Health at https://cernerhealth.com/ (the "**Portal**") (and collectively with the Websites, the "**Web Properties**").

6.    Unbeknownst to Users and without Users' authorization or informed consent, Defendants installed Facebook's Meta Pixel ("**Meta Pixel**" or "**Pixel**") and other third-party tracking technology, in their Web Properties in order to intercept and send Private Information to third parties such as Facebook and/or Google LLC.

7.    These Pixels collect Users' confidential and private PHI—including but not limited to details about their medical conditions, treatments and providers sought, and appointments—and send it to Facebook without prior, informed consent. These Pixels are snippets of code that track Users as they navigate through a website— logging which pages they visit, each button they click, and what information they provide in online forms. More specifically, the Meta Pixel sends information to Facebook via scripts running in a person's internet browser so each data packet comes

2

labeled with a specific internet protocol ("**IP**") address that can be used in combination with other data to identify an individual or household. Additionally, if the person has an active Facebook account, the IP address is paired with their personal unique Facebook ID ("**FID**"), which Facebook uses to identify that individual.

8.     Plaintiffs and Class Members who visited and used Defendants' Web Properties understandably thought they were communicating with only their trusted healthcare providers, and reasonably believed that their sensitive and private PHI would be guarded with the utmost care. In browsing Defendants' websites – be it to make an appointment, locate a doctor with a specific specialty, find sensitive information about their diagnosis, or investigate treatment for their diagnosis – Plaintiffs and Class Members did not expect that every search (including exact words and phrases they typed into Defendants' website search bars), page visit, or even their access/interactions on Defendants' online portals would be intercepted, captured, or otherwise shared with Facebook in order to target Plaintiffs and Class Members, in conscious disregard of their privacy rights.

9.     Defendants encouraged Plaintiffs and Class Members to access and use various digital tools via their Web Properties to, among other things, receive healthcare services, in order to gain additional insights into their Users, improve their return on marketing dollars and, ultimately, increase their revenue.

10.     In exchange for installing the Pixels, Facebook provides Defendants with analytics about the advertisements they have placed as well as tools to target people who have visited their Web Properties.

11.     While the information captured and disclosed without permission may vary depending on the Pixel(s) embedded, these "data packets" can be extensive, transmitting, for example, not just the name of the physician and her field of medicine, but also the first name, last name, email address, phone number, zip code, and city of residence entered in the booking form. That data is linked to a specific IP address. The amalgamation of these data points and unique identifying information results in

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050   F: (213) 788-4070 | clarksonlawfirm.com

an egregious, unauthorized dissemination of highly sensitive Private Information unique to each individual User.

12.   The Meta Pixel can track and log each page a user visits, what buttons they click, as well as specific information they input into a website. In addition, if the person is (or recently has) logged into Facebook when they visit a particular website when a Meta Pixel is installed, some browsers will attach third-party cookies—another tracking mechanism—that allow Facebook to link Pixel data to specific Facebook accounts.

13.   Alarmingly, the use of Meta Pixels on Defendants' Web Properties tracks extremely sensitive PHI such as health conditions (e.g., diabetes), diagnoses (e.g., COVID-19 or AIDS), procedures, test results, treatment status, the treating physician, allergies, and PII.

14.   Plaintiffs had their Private Information, including sensitive medical information, harvested by Facebook through the Meta Pixel tracking tool without their consent when they entered their information into Defendants' Web Properties, and continued to have their privacy violated when their Private Information was used to turn a profit by way of targeted advertising related to their respective medical conditions and treatments sought.

15.   Defendants that knew by embedding the Meta Pixel—a proprietary tracking and advertising tool developed by Facebook—on their Web Properties, they were permitting Facebook to collect and use Plaintiffs' and Class Members' Private Information, including sensitive medical information.

16.   Defendants (or any third parties) did not obtain Plaintiffs' and Class Members' prior consent before sharing their sensitive, confidential communications and Private Information with third parties such as Facebook.

17.   Defendants' actions constitute an extreme invasion of Plaintiffs and Class Members' right to privacy and violate federal and state statutory and common law as well as Defendants' own Privacy Policies that affirmatively and unequivocally state

that any personal information provided to Defendants will remain secure and protected.[2]

18.  As a result of Defendants' conduct, Plaintiffs and Class Members have suffered numerous injuries, including: (i) invasion of privacy; (ii) lack of trust in communicating with doctors online; (iii) emotional distress and heightened concerns related to the release of Private Information to third parties; (iv) loss of the benefit of the bargain; (v) diminution of value of the Private Information; (vi) statutory damages and (vii) continued and ongoing risk to their Private Information. Plaintiffs and Class Members have a substantial risk of future harm, and thus injury in fact, due to the continued and ongoing risk of misuse of their Private Information that was shared by Defendants with third parties.

19.  Plaintiffs seek, on behalf of themselves and a class of similarly situated persons, to remedy these harms and therefore assert the following statutory and common law claims against Defendants: (i) Violation of the California Confidentiality of Medical Information Act ("**CMIA**"), Cal. Civ. Code § 56, *et seq.*; (ii) Violation of the California Invasion of Privacy Act ("**CIPA**"), Cal. Penal Code § 630, *et seq.*; (iii) Violation of California's Unfair Competition Law ("**UCL**"), Cal. Bus. & Prof. Code § 17200, *et seq*. – Unlawful and Unfair Business Practices; (iv) Invasion of Privacy under the California Constitution; (v) Common Law Invasion of Privacy; (vi) Negligence; (vii) Violation of the Florida Security of Communications Act ("**FSCA**"), Fla. Stat. 934.01, *et seq*.; (viii) Violation of the Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**"), Fla. Stat. § 501.201, *et seq*.; (ix) Common Law Breach of Implied Contract; (x) Violation of California Penal Code § 496, *et seq.* and (xi) Common Law Unjust Enrichment.

---

[2] *Notice of Privacy Practices*, DESERT CARE NETWORK, https://www.desertcarenetwork.com/notice-of-privacy-practices (last visited June 15, 2023); *Notice of Privacy Practices*, PALM BEACH HEALTH NETWORK, https://www.palmbeachhealthnetwork.com/privacy-practices (last visited June 15, 2023).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

**PARTIES**

20.   Plaintiff B.K. was a California resident at all relevant times, including at least until May 2022.

21.   Plaintiff N.Z. is and at all relevant times was, a California resident.

22.   Plaintiff R.P. was a Florida resident at all relevant times, including at least until late 2021.

23.   Defendant Desert Care Network is a for-profit organization incorporated in Delaware with its principal place of business located at 1445 Ross Ave., Ste., 1400, Dallas, TX 75202.

24.   Defendant Desert Regional Medical Center, Inc., is a for-profit company incorporated in California with its principal place of business located at 14201 Dallas Parkway, Dallas, TX 75254.

25.   Defendant JFK Memorial Hospital, Inc., is a for-profit company incorporated in California with its principal place of business located at 14201 Dallas Parkway, Dallas, TX 75254.

26.   Defendant Palm Beach Gardens Community Hospital, Inc., d/b/a Palm Beach Gardens Medical Center is a for-profit company incorporated in Florida with its principal place of business located at 14201 Dallas Parkway, Dallas, TX 75254.

27.   Defendant Palm Beach Health Network is a for-profit company incorporated in Delaware with its principal place of business located at 1445 Ross Ave., Ste., 1400, Dallas, TX 75202.

28.   Defendant Tenet Healthcare Corp. is a for-profit company incorporated in Nevada with its principal place of business located at 14201 Dallas Parkway, Dallas, TX 75254.

29.   Defendant Tenet HealthSystem Medical, Inc. is a for-profit company incorporated in Delaware with its principal place of business located at 14201 Dallas Parkway, Dallas, TX 75254.

///

CLASS ACTION COMPLAINT

**JURISDICTION & VENUE**

30.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than one hundred (100) putative class members defined below, and minimal diversity exists because a significant portion of putative class members are citizens of a state different from the citizenship of at least one Defendant.

31.    Pursuant to 28 U.S.C. Section 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. The California Plaintiffs are citizens of California, reside in this District, and used Defendants' Web Properties within this District. Moreover, Defendants receive substantial compensation from offering healthcare services in this District, and Defendants made numerous misrepresentations which had a substantial effect in this District, including, but not limited to, representing that they will only disclose Private Information provided to them under certain circumstances, **which do not** include disclosure of Private Information for marketing purposes.

32.    Defendants are subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendants and California. Defendants are authorized to conduct and are conducting business in California.

**FACTUAL BACKGROUND**

33.    Investigative journalists have published several reports detailing the seemingly ubiquitous use of tracking technologies on hospitals', health care providers' and telehealth companies' digital properties to surreptitiously capture and to disclose their Users' Private Information. Specifically, and for example, The Markup reported that 33 of the largest 100 hospital systems in the country utilized the Meta Pixel to send Facebook a packet of data whenever a person clicked a button to

CLASS ACTION COMPLAINT

schedule a doctor's appointment.[3] Estimates are that over 664 hospital systems and providers utilize some form of tracking technology on their digital properties.[4]

34.     Entities collecting and disclosing Users' Private Information face significant legal exposure under the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**"), which applies specifically to healthcare providers, health insurance providers and healthcare data clearinghouses.[5]

35.     The HIPAA privacy rule sets forth policies to protect all individually identifiable health information that is held or transmitted.[6] This is information that can be used to identify, contact, or locate a single person or can be used with other sources to identify a single individual. When PII is used in conjunction with one's physical or mental health or condition, health care, or one's payment for that health care, it becomes PHI.

36.     The unilateral disclosure of such Private Information is unquestionably a violation of HIPAA, among other statutory and common laws. And, while some hospitals and other disclosing entities attempt to seek refuge in the argument that these third parties allegedly do not store this Private Information, that argument is

---

[3]     Todd Feathers, *et al.*, *Facebook Is Receiving Sensitive Medical Information from Hospital Websites*, THE MARKUP (June 16, 2022), https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites.

[4]     Dave Muoio & Annie Burky, *Advocate Aurora, WakeMed get served class action over Meta's alleged patient data mining,* FIERCE HEALTHCARE (November 4, 2022),     https://www.fiercehealthcare.com/health-tech/report-third-top-hospitals-websites-collecting-patient-data-facebook.

[5]     Alfred Ng & Simon Fondrie-Teitler, *This Children's Hospital Network Was Giving Kids' Information to Facebook*, THE MARKUP (June 21, 2022), https://themarkup.org/pixel-hunt/2022/06/21/this-childrens-hospital-network-was-giving-kids-information-to-facebook (stating that "[w]hen you are going to a covered entity's website, and you're entering information related to scheduling an appointment, including your actual name, and potentially other identifying characteristics related to your medical condition, there's a strong possibility that HIPAA is going to apply in those situations").

[6]     The HIPAA Privacy Rule protects all electronically protected health information a covered entity like Healthcare Defendants "create[], receive[], maintain[], or transmit[]" in electronic form. *See* 45 C.F.R. § 160.103.

CLASS ACTION COMPLAINT

unavailing as the violation lies in the unlawful transmission of that data. As the Office for Civil Rights (OCR) at the U.S. Department of Health and Human Services (HHS) reminded entities regulated under HIPAA in its recently issued *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* bulletin:

> ***Regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.*** [7]

OCR makes it clear that information that is routinely collected by vendors on public-facing websites, apps and web-based assets may be PHI as well, including unique identifiers such as IP addresses, device IDs, or email addresses. [8]

**Defendants' Method of Transmitting Plaintiffs' & Class Members' Private Information via the Meta Pixel.**

37.   Web browsers are software applications that allow consumers to navigate the web and view and exchange electronic information and communications over the internet. Each "client device" (such as computer, tablet, or smart phone) accesses web content through a web browser (*e.g.*, Google's Chrome browser, Mozilla's Firefox browser, Apple's Safari browser and Microsoft's Edge browser).

38.   Every website is hosted by a computer "server" that holds the website's contents and through which the entity in charge of the website exchanges communications with Internet users' client devices via web browsers.

39.   Web communications consist of HTTP Requests and HTTP Responses, and any given browsing session may consist of thousands of individual HTTP

---

[7]   *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates,* U.S. DEP'T OF HEALTH AND HUM. SERVICES, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited June 15, 2023) (emphasis added).

[8]   *See id.*; *see also* Mason Fitch, *HHS Bulletin Raises HIPAA Risks for Online Tracking Vendors*, LAW360 (December 13, 2022), https://www.law360.com/articles/1557792/hhs-bulletin-raises-hipaa-risks-for-online-tracking-vendors?copied=1.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Requests and HTTP Responses, along with corresponding cookies:

- **HTTP Request**: an electronic communication sent from the client device's browser to the website's server. GET Requests are one of the most common types of HTTP Requests.  In addition to specifying a particular URL (i.e., web address), GET Requests can also send data to the host server embedded inside the URL, and can include cookies.[9]

- **Cookies**: a small text file that can be used to store information on the client device which can later be communicated to a server or servers.  Cookies are sent with HTTP Requests from client devices to the host server.  Some cookies are "third-party cookies" which means they can store and communicate data when visiting one website to an entirely different website.[10]

- **HTTP Response**: an electronic communication that is sent as a reply to the client device's web browser from the host server in response to an HTTP Request. HTTP Responses may consist of a web page, another kind of file, text information, or error codes, among other data.[11]

40.  A patient's HTTP Request essentially asks the Defendants' Website to retrieve certain information (such as a physician's "Book an Appointment" page), and the HTTP Response renders or loads the requested information in the form of "Markup" (the pages, images, words, buttons, and other features that appear on the patient's screen as they navigate Defendants' Website).

41.  Every website is comprised of Markup and "Source Code." Source Code is a set of instructions that commands the website visitor's browser to take certain actions when the web page first loads or when a specified event triggers the code.

42.  Source Code may also command a web browser to send data transmissions to third parties in the form of HTTP Requests quietly executed in the background without notifying the web browser's User.  The Pixel incorporated by Defendants uses Source Code that does just that.  The Pixel acts much like a

---

[9]  *An overview of HTTP*, MDN WEB DOCS, https://developer.mozilla.org/en-US/docs/Web/HTTP/Overview (last visited June 15, 2023).

[10]  *HTTP cookies*, MDN WEB DOCS, https://developer.mozilla.org/en-US/docs/Web/HTTP/Cookies (last visited June 15, 2023).

[11]  *An overview of HTTP*, *supra* note 13. One browsing session may consist of hundreds or thousands of individual HTTP Requests and HTTP Responses. *HTTP Messages*, MDN WEB DOCS, https://developer.mozilla.org/en-US/docs/Web/HTTP/Messages (last visited June 20, 2023).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

1    traditional wiretap.

2        43.   When patients visit Defendants' Web Properties via an HTTP Request to

3    Defendants' server, that server sends an HTTP Response including the Markup that

4    displays the Webpage visible to the User and Source Code, including Defendants'

5    Pixel.

6        44.   Thus, Defendants are, in essence, handing patients a tapped device and

7    once the Webpage is loaded into the User's browser, the software-based wiretap is

8    quietly waiting for private communications on the Webpage to trigger the tap, which

9    intercepts those communications—intended only for Defendants—and transmits

10   those communications to third parties, including Facebook.  Such conduct occurs on

11   a continuous, and not sporadic, basis.

12       45.   Third parties, like Facebook, place third-party cookies in the web

13   browsers of Users logged into their services.

14       46.   These cookies uniquely identify the User and are sent with each

15   intercepted communication to ensure the third-party can uniquely identify the patient

16   associated with the Private Information intercepted.

17       47.   With substantial work and technical know-how, internet users can

18   sometimes circumvent this browser-based wiretap technology. This is why third

19   parties bent on gathering Private Information, like Facebook, implement workarounds

20   that cannot be evaded by savvy users.

21       48.   Facebook's workaround, for example, is called CAPI, which is an

22   "effective" workaround because it does not intercept data communicated from the

23   User's browser. Instead, CAPI "is designed to create a direct connection between

24   [Web hosts'] marketing data and [Facebook]."[12]

25       49.   Thus, the communications between patients and Defendants, which are

26   necessary to use Defendants' Websites, are actually received by Defendants and

---

[12]   Michael Mata, *Stop Data Loss with Facebook Server-Side Tracking*, Madgicx
(March 18, 2022), https://madgicx.com/blog/facebook-server-side-tracking.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

CLASS ACTION COMPLAINT

stored on their server before CAPI collects and sends the Private Information contained in those communications directly from Defendants to Facebook.

50.     Client devices do not have access to host servers and thus cannot prevent (or even detect) this transmission.

51.     While there is no way to confirm with certainty that a Web host like Defendants has implemented workarounds like CAPI without access to the host server, companies like Facebook instruct Defendants to "[u]se the CAPI in addition to the [] Pixel, and share the same events using both tools," because such a "redundant event setup" allows Defendants "to share website events [with Facebook] that the pixel may lose."[13]

52.     The third parties to whom a website transmits data through Pixels and associated workarounds do not provide any substantive content relating to the User's communications. Instead, these third parties are typically procured to track User data and communications for marketing purposes of the website owner (i.e., to bolster profits).

53.     Thus, without any knowledge, authorization, or action by a User, a website owner like Defendants can use its source code to commandeer the User's computing device, causing the device to contemporaneously and invisibly redirect the Users' communications to third parties.

54.     In this case, Defendants employed the Tracking Pixel and CAPI to intercept, duplicate and re-direct Plaintiffs' and Class Members' Private Information to Facebook.

55.     For example, when a patient visits www.desertcarenetwork.com and enters "I have AIDS" into the search bar, the patient's browser automatically sends an HTTP Request to Defendants' web server. The Defendants' web server automatically returns an HTTP Response, which loads the Markup for that particular

---

[13] *See  Best  practices  for  Conversions  API,*  META, https://www.facebook.com/business/help/308855623839366?id=818859032317965 (last visited June 15, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

webpage as depicted below in *Figure 1*.[14]

*__Figure 1__*



56.    The patient visiting this particular web page only sees the Markup, not the Defendants' Source Code or underlying HTTP Requests and Responses.

57.    In reality, Defendants' Source Code and underlying HTTP Requests and Responses share the patient's personal information with Facebook, including the fact that the patient is looking for treatment for his AIDS diagnosis—along with the patient's unique Facebook identifiers.

///

///

///

///

///

///

///

---

[14]    Image depicted in Figure 1 was taken from https://www.desertcarenetwork.com/search?indexCatalogue=desert-care-search&searchQuery=I+have+AIDS&wordsMode=AllWords.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

*Figure 2. An HTTP single communication session sent from the device to Facebook that reveals the User's exact search terms (I have AIDS) typed into the search bar, along with the User's unique Facebook personal identifier (the c_user field).[15]*



*Figure 3. An easier-to-read representation of data sent to Facebook when a User enters search terms into Defendants' search bar.*



---

[15]    One of the user's personal identifiers from Facebook, the FID (represented as the c_user cookie highlighted in the image above), has been redacted to preserve the User's anonymity.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

58.     Similarly, if a User types "I need a hysterectomy" into Defendants' search bar, Defendants share that information with Facebook, along with the User's personal identifiers:

*Figures 4 and 5. An HTTP single communication session sent from the device to Facebook that reveals the User's exact search terms ("I need a hysterectomy") along with the User's unique Facebook personal identifier (the c_user field)[16]*





59.     In addition to controlling a website's Markup, Source Code executes a

---

[16]     Images depicted in Figures 4 and 5 were taken from https://www.pbgmc.com/search?indexCatalogue=Palm-Beach-Gardens-Search&searchQuery=I+need+a+hysterectomy&wordsMode=AllWords.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

host of other programmatic instructions and can command a website visitor's browser to send data transmissions to third parties via Pixels or web bugs,[17] effectively open a spying window through which the webpage can funnel the visitor's data, actions, and communications to third parties.

60.   Looking to the previous example, Defendants' Source Code manipulates the patient's browser by secretly instructing it to duplicate the patient's communications (HTTP Requests) and sending those communications to Facebook.

61.   This occurs because the Pixel embedded in Defendants' Source Code is programmed to automatically track and transmit a patient's communications, and this occurs contemporaneously, invisibly, and without the patient's knowledge.

62.   Thus, without Users' consent, Defendants effectively use this Source Code to commandeer patients' computing devices, thereby re-directing their Private Information to unauthorized third parties.

63.   The information that Defendants' Pixel sends to Facebook may include, among other things, patients' PII, PHI, and other confidential information.

64.   Consequently, when Plaintiffs and Class Members visit Defendants' Websites and communicate their Private Information, it is transmitted to Facebook, including, but not limited to, patient status, health conditions experienced and treatments sought, physician selected, appointments sought, specific button/menu selections, sensitive demographic information such as sexual orientation, and exact words and phrases typed into the search bar. Additionally, this includes instances when patients pay a bill, self-enroll in the patient portal, or access their portal via a designated button (or link) on the website. Each of these activities involves the transmission of sensitive information—such as payment details, personal identifiers required for portal enrollment, and portal usage data—which is inevitably communicated to Facebook.

---

[17]   These Pixels or web bugs are tiny image files that are invisible to website users. They are purposefully designed in this manner, or camouflaged, so that users remain unaware of them.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

***Defendants' Pixel Tracking Practices caused Plaintiffs' and Class Members' Private Information to be sent to Facebook.***

65.   Defendants utilize Facebook's Business Tools and intentionally install the Pixel and/or CAPI on their Web Properties to secretly track patients by recording their activity and experiences in violation of its common law, contractual, statutory, and regulatory duties and obligations.

66.   Defendants' web pages contain a unique identifier which indicates that the Pixel is being used on a particular webpage.[18]

67.   The Pixels allow Defendants to optimize the delivery of advertisements, measure cross-device conversions, create custom audiences, and decrease advertising and marketing costs.

68.   However, Defendants' Web Properties do not rely on the Pixel to function.

69.   While seeking and using Defendants' services as a medical provider, Plaintiffs and Class Members communicated their Private Information to Defendants via their Web Properties.

70.   Defendants did not disclose to Plaintiffs and Class Members that their Private Information would be shared with Facebook as it was communicated to Defendants. Rather, Defendants represented the opposite. This prevents the provision of any informed consent by Plaintiffs or Class Members to Defendants for the challenged conduct described herein.

71.   Plaintiffs and Class Members never consented, agreed, authorized, or otherwise permitted Defendants to disclose their Private Information to Facebook (or any other third-party), nor did they intend for Facebook to be a party to their

---

[18]   Defendants' Websites have more than one Meta Pixel installed on various web pages, including those identified as 249180606346420, 345595210061334, and 515825092623456 on https://www.desertcarenetwork.com/ and https://www.pbgmc.com/. These same Pixels are embedded across different websites for various hospitals and networks within Defendant Tenet's healthcare system.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

communications with Defendants.   Defendants do not employ any form or click system whereby Plaintiffs and Class Members provide their affirmative consent to Defendants agreeing, authorizing, or otherwise permitting Defendants to disclose their Private Information to Facebook (or any other third-party).

72.   Defendants' Pixels and CAPI sent sensitive Private Information to Facebook, including but not limited to Plaintiffs' and Class Members': (i) status as medical patients; (ii) health conditions; (iii) sought treatment or therapies; (iv) terms and phrases entered into Defendants' search bar; (v) sought providers and their specialties; (vi) selected locations or facilities for treatment; and (vii) web pages viewed.

73.   Importantly, the Private Information Defendants' Pixels sent to Facebook was sent alongside Plaintiffs' and Class Members' personal identifiers, including patients' IP address and cookie values thereby allowing individual patients' communications with Defendants, and the Private Information contained in those communications, to be linked to their unique Facebook accounts.

74.   Through the Source Code deployed by Defendants, the cookies that they use to help Facebook identify patients include but are not necessarily limited to cookies named: "c_user," "datr," "fr," and "fbp."[19]

75.   The "*c_user*" cookie or FID is a type of third-party cookie assigned to each person who has a Facebook account, and it is composed of a unique and persistent set of numbers.

76.   A User's FID is linked to their Facebook profile, which generally contains a wide range of demographics and other information about the User, including pictures, personal interests, work history, relationship status, and other details.

---

[19]   Defendants' Websites track and transmit data via first-party and third-party cookies. C_user, datr, and fr cookies are third-party cookies. The fbp cookie is a Facebook identifier that is set by Facebook source code and associated with Defendants' use of the Facebook Pixel. The fbp cookie emanates from Defendants' Website as a putative first-party cookie, but is transmitted to Facebook through cookie syncing technology that hacks around the same-origin policy.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

Because the User's Facebook Profile ID uniquely identifies an individual's Facebook account, Facebook—or any ordinary person—can easily use the Facebook Profile ID to quickly and easily locate, access, and view the user's corresponding Facebook profile.

77.   The "*datr*" cookie identifies the patient's specific web browser from which the patient is sending the communication. It is an identifier that is unique to the patient's specific web browser and is therefore a means of identification for Facebook users. Facebook keeps a record of every datr cookie identifier associated with each of its users, and a Facebook user can obtain a redacted list of all datr cookies associated with his or her Facebook account from Facebook.

78.   The "*fr*" cookie is a Facebook identifier that is an encrypted combination of the c_user and datr cookies.[20]

**Defendants' Pixel Disseminates Patient Information Via Their Websites.**

79.   By way of example, if a patient uses https://www.desertcarenetwork.com/ or https://www.pbgmc.com/ to look for medical treatments, they may select "Oncology" under the "Services" tab, which takes them to the list of services offered by Defendants to Users in need of cancer treatments. On those pages the user can further narrow their search results by services offered by Defendants.

80.   The User's selections and filters are transmitted to Facebook via the Meta Pixels, even if they contain the User's treatment, procedures, medical conditions, or related queries, without alerting the User, and the images below confirm that the communications Defendants send to Facebook contain the User's Private Information and personal identifiers, including but not limited to their IP address, Facebook ID, and datr and fr cookies, along with the search filters the User selected.

81.   For example, a cancer patient can search for various oncology care options, from mammograms and radiation oncology to resources intended to help

---

[20]   *See* Gunes Acar et al., *Facebook Tracking Through Social Plug-ins: Technical Report prepared for the Belgian Privacy Commission* 16 (March 27, 2015), https://securehomes.esat.kuleuven.be/~gacar/fb_tracking/fb_pluginsv1.0.pdf.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

patients navigate a cancer diagnosis, clinical research, support groups, and oncology classes.[21]

82.    From the moment the patient begins searching for cancer their selections or search parameters are automatically transmitted by the Pixel to Facebook along with the User's unique personal identifiers, as evidenced by Figures 6 and 7 below.

***Figure 6. Defendants' transmission to Facebook of User's search parameters showing  treatment sought ("infusion services").***



83.    The first line of highlighted text, "id: 345595210061334," refers to the Defendants' Pixel ID for this particular Webpage and confirms that the Defendants have downloaded the Pixel into their Source Code on this particular Webpage.

84.    In the second line of text, "ev:" is an abbreviation for event, and "Microdata" is the type of event. Here, this event means that Defendants' Pixel is sending all the meta information about the webpage which can include information

---

[21]    *See Oncology: Advanced Procedures for Complete Cancer Care*, DESERT CARE NETWORK, https://www.desertcarenetwork.com/services/oncology (last visited June 15, 2023); *see also Oncology: Cancer Care*, PALM BEACH CARE NETWORK, https://www.pbgmc.com/services/oncology (last visited June 15, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

like page title, URL, and page description.

85.   The remaining lines of text identify the User as a patient: (i) seeking medical care from Defendants via www.desertcarenetwork.com; (ii) who has cancer; and (iii) who is searching for infusion services.

86.   Finally, the last line of highlighted text ("GET"), demonstrates that Defendants' Pixel sent the User's communications, and the Private Information contained therein, alongside the User's personal identifiers, including Facebook ID and other cookies. This is further evidenced by the image below, which was collected during the same browsing session as the previous image.

***Figure 7. Defendants' transmission to Facebook of User's search parameters showing treatment sought ("infusion services") and the User's unique Facebook ID.***



87.   As mentioned above, if the patient selects other cancer services, such as "Breast Health" or "Cancer Patient Resources," those search parameters are also

1   automatically transmitted to Facebook by Defendants' Pixels, along with the patient's
2   personal identifiers. In addition to sharing patient's conditions and selected treatments
3   via PageView and Microdata events, Defendants' Pixels also share the text of buttons
4   clicked by the patient via the "SubscribedButtonClick" event.

5       88.   For example, if a patient clicks on the button "Schedule Your
6   Mammogram," Defendants send that information to Facebook via the
7   "SubscribedButtonClick" event, which shares the inner text of the button the User
8   clicked to schedule the procedure:

***Figures 8 and 9. HTTP communication sessions sent from the User's device to Facebook revealing the inner text of the button clicked by the User, and their personal identifiers.***

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

89.   This action takes the User to one of Defendants' web pages for mammograms (in this example, https://www.desertcarenetwork.com/services/diagnostic-imaging/mammogram/mammo-mondays) where the User can click on the button "Schedule A Mammogram Now" and fill out a form with to request an appointment.

90.   Defendants' Pixels also share that information with Facebook, including via a "Lead" event:

///

///

///

///

///

///

///

///

///

**CLASS ACTION COMPLAINT**

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

*Figures 10 and 11. HTTP communication sessions sent from the User's device to Facebook revealing the User is trying to schedule an appointment for a mammogram, and their personal identifiers.*





91.   As another example, if a User interested in a particular procedure reviews Defendants' resources for prospective patients, Defendants also share that information with Facebook, as images below demonstrate:

///

///

///

24

CLASS ACTION COMPLAINT

*Figures 12 and 13. HTTP communication sessions sent from the User's device to Facebook revealing the inner text of the button clicked by the User interested in bariatric surgery (for weight loss).*



```
▼ Query String Parameters        view source        view URL-encoded
   id: 515825092623456
   ev: SubscribedButtonClick
   dl: https://www.desertcarenetwork.com/services/bariatric-surgery/bariatric-resources
   rl: https://www.desertcarenetwork.com/services/bariatric-surgery
   if: false
   ts: 1685715281747
   cd[buttonFeatures]: {"classList":"no-underline text-purple-100 group-hover:underline group-hover:text-purple-200","des
   tination":"javascript:void(0)","id":"lnk_expandable_dbec12fe-ee7b-419a-b7a3-c9357026921d","imageUrl":"","innerTex
   t":"How much time will I need to recover after surgery? How long will it be before I can return to work?","numChildB
   uttons":0,"tag":"a","type":null,"name":""}
   cd[buttonText]: How much time will I need to recover after surgery? How long will it be before I can return to work?
   cd[formFeatures]: []
   cd[pageFeatures]: {"title":"\n\tBariatric Resources | Desert Care Network\n"}
```

```
▼ Request Headers
   :Authority:          www.facebook.com
   :Method:             GET
   :Path:               /tr/?
                        id=515825092623456&ev=SubscribedButtonClick&dl=https%3A%2F%2Fwww.desertcarenetwork.com%2Fservices
                        %2Fbariatric-surgery%2Fbariatric-
                        resources&rl=https%3A%2F%2Fwww.desertcarenetwork.com%2Fservices%2Fbariatric-
                        surgery&if=false&ts=1685715281747&cd[buttonFeatures]=%7B%22classList%22%3A%22no-underline%20text-
                        purple-100%20group-hover%3Aunderline%20group-hover%3Atext-purple-
                        200%22%2C%22destination%22%3A%22javascript%3Avoid(0)%22%2C%22id%22%3A%22lnk_expandable_dbec12f
                        e-ee7b-419a-b7a3-
                        c9357026921d%22%2C%22imageUrl%22%3A%22%22%2C%22innerText%22%3A%22How%20much%20time%20wi
                        ll%20I%20need%20to%20recover%20after%20surgery%3F%20How%20long%20will%20it%20be%20before%20I%2
                        0can%20return%20to%20work%3F%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22a%22%2C%22
                        type%22%3Anull%2C%22name%22%3A%22%22%7D&cd[buttonText]=How%20much%20time%20will%20I%20nee
                        d%20to%20recover%20after%20surgery%3F%20How%20long%20will%20it%20be%20before%20I%20can%20retur
                        n%20to%20work%3F&cd[formFeatures]=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22%5Cn%5CtBariatri
                        c%20Resources%20%7C%20Desert%20Care%20Network%5Cn%22%7D&sw=1664&sh=1110&v=2.9.104&r=stable
                        &ec=2&o=30&cs_est=true&it=1685678234526&coo=false&es=automatic&tm=3&rqm=GET
   :Scheme:             https
   Accept:              image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
   Accept-Encoding:     gzip, deflate, br
   Accept-Language:     en-US,en;q=0.9,ru;q=0.8
   Cookie:              datr=Qtl1Y1IVd2UWOuuBmn2Mb8vC; sb=GrxtY1jj9lKWnpCg7UAhiJMv; c_user=540          ;
                        usida=eyJ2ZXIiOjEsImIkIjoiQXJ2ajZoMm9tcGRIMSIsInRpbWUiOjI2ODU1NDk4OTJ9; dpr=1.5;
                        xs=7%3A_7bqKp6s0g6FyQ%3A2%3A1677887050%3A-
                        1%3A3037%3A%3AAcUqKVOX5uChe_cAbiTvqSAm_lOsvqSIzbb1sv50kaLo;
                        fr=0o6UBBVDuufDNIJE7.AWUx4bUMd3UL-JThkMvMDAXm_9o.Bkd4Ys.-f.AAA.0.0.Bkd4Ys.AWX4xihj-5k
   Referer:             https://www.desertcarenetwork.com/services/bariatric-surgery/bariatric-resources
```

///

///

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

92. Additionally, a patient can use Defendants' websites such as https://www.desertcarenetwork.com/ or https://www.pbgmc.com/ to search for a provider based on their name and/or specialty.

93. These search terms are also transmitted via the Facebook Pixel:

*Figures 14 and 15. Defendants' transmission to Facebook of User's search parameters showing search terms ("Amir Lavaf, MD" and "Radiation Oncologist") and the User's c_user information from search results via Defendants' search bar.*





Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

94.    This information is automatically sent from the User's device to Facebook, and it reveals the User's FID (c_user field) along with each search filter the User selected.

95.    By way of another example, Defendant Desert Care Network also shares Private Information collected on webpages specifically dedicated to patients, which discloses Private Information such as patients' gender affiliation:

***Figures 16 and 17. HTTP communication sessions sent from the User's device to Facebook revealing the inner text of the button clicked by a patient interested in support services for LGBTQ patients.***



/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 

CLASS ACTION COMPLAINT

96.    Finally, Defendants' websites also share with Facebook each time a website user wants to register for the patient portal or the fact that a patient is trying to access the patient portal.

97.    A User who accesses Defendants' website while logged into Facebook will transmit the c_user cookie to Facebook, which contains that user's unencrypted Facebook ID, and other personal cookie values including the datr and fr cookies.

98.    When accessing www. www.desertcarenetwork.com, for example, Facebook receives as many as seven (7) cookies:

*Figure 18*

CLASS ACTION COMPLAINT

99.   When a User's browser has recently logged out of their Facebook account, Facebook compels the User's browser to send a smaller set of cookies:[22]

**_Figure 19_**



100.  The fr cookie contains, at least, an encrypted Facebook ID and browser identifier.[23] Facebook, at a minimum, uses the fr cookie to identify Users.[24]

101.  At each stage, Defendant Desert Care Network also utilized the _fbp cookie, which attaches to a browser as a first-party cookie, and which Facebook uses to identify a browser and a User:[25]

**_Figure 20_**

| Name | Value | Domain | Path | Expires / Max-... |
|------|-------|--------|------|-------------------|
| _fbp | fb.1.1680025245129.1009717946 | .desertcarenetwork.com | / | 2023-08-31T1... |

102.  The fr cookie expires after ninety (90) days unless the User's browser logs back into Facebook.[26] If that happens, the time resets, and another ninety (90) days begins to accrue.

103.  The _fbp cookie expires after ninety (90) days unless the User's browser accesses the same website.[27]  If that happens, the time resets, and another ninety (90) days begins to accrue.

104.  The Facebook Tracking Pixel uses both first- and third-party cookies. A

---

[22]   The screenshot below serves as an example and demonstrates the types of data transmitted during an HTTP single communication session. Not pictured here and in the preceding image is the _fbp cookie, which is transmitted as a first-party cookie.

[23]   Data Protection Commissioner, *Facebook Ireland Ltd: Report of Re-Audit* 33 (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf.

[24]   *Cookies Policy*, META, https://www.facebook.com/policy/cookies/ (last visited June 15, 2023).

[25]   *Id*.

[26]   *Id*.

[27]   *Id*.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

first-party cookie is "created by the website the user is visiting"—i.e., Defendant.[28]

105. A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—i.e., Facebook.[29]

106. The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

107. Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to FIDs and corresponding Facebook profiles.

108. As shown in the figures above, Defendants sent these identifiers with the event data.

109. Plaintiffs never consented, agreed, authorized, or otherwise permitted Defendants to disclose their Private Information, nor did they authorize any assistance with intercepting their communications.

110. Plaintiffs were never provided with any written notice that Defendants disclosed its Website users' Private Information nor were they provided any means of opting out of such disclosures.

111. Despite this, Defendants knowingly and intentionally disclosed Plaintiffs' Private Information to Facebook.

***Defendants Violate Their Promises to Users and Patients to Protect Their Confidentiality.***

112. Defendants do not have the legal right to use or share Plaintiffs' and Class Members' data, as this information is protected by the HIPAA Privacy Rule. The Privacy Rule does not permit the use and disclosure of Private Information to

---

[28] *First-Party Cookie*, PCMag.com, https://www.pcmag.com/encyclopedia/term/first-party-cookie (last visited June 15, 2023). This is confirmable by using developer tools to inspect a website's cookies and track network activity.

[29] *Third-Party Cookie*, PCMag.com, https://www.pcmag.com/encyclopedia/term/third-party-cookie (last visited June 15, 2023). This is also confirmable by tracking network activity.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

Facebook for use in targeted advertising.[30]

113. Beyond Defendants' legal obligations to protect the confidentiality of individuals' Private Information, Defendants' privacy policies and online representations affirmatively and unequivocally state that any personal information provided to Defendants will remain secure and protected.[31]

114. Further, Defendants represent to Users that they will only disclose Private Information provided to them under certain circumstances, ***none of which apply here***.[32] Defendants' privacy policies do ***not*** permit Defendants to use and disclose Plaintiffs' and Class Members' Private Information for marketing purposes.

115. In fact, Defendants acknowledge in their (identical) Notices of Privacy Practices that they must obtain Users' "written authorization"[33] to use their PHI to send them any marketing materials.

116. Moreover, Defendants represent that they will not disclose Users' PHI without their authorization "in exchange for direct or indirect payment except in limited circumstances permitted by law. These circumstances include public health activities; research; treatment of the individual; sale, transfer, merger or consolidation of the Facility; services provided by a business associate, pursuant to a business associate agreement; providing an individual with a copy of their PHI; and other purposes deemed necessary and appropriate by the U.S. Department of Health and Human Services (HHS)."[34]

117. Upon information and belief, Defendants do not have a business associate agreement with Facebook, and none of the "limited circumstances" listed above apply

---

[30]  *See* 45 C.F.R. § 164.502.
[31]  *Notice of Privacy Practices*, DESERT CARE NETWORK, https://www.desertcarenetwork.com/notice-of-privacy-practices (last visited June 15, 2023); *Notice of Privacy Practices*, PALM BEACH HEALTH NETWORK, https://www.palmbeachhealthnetwork.com/privacy-practices (last visited June 15, 2023).
[32]  *See id.*
[33]  *See id.*
[34]  *See id.*

CLASS ACTION COMPLAINT

here.

118.  Further, in their (identical) Privacy Policies Defendants represent:

"***We do not sell personal information that we have collected from consumers to any third parties***."

"We may collect certain information by automated means. This information includes cookies, sensors, geo location, pixel tags, IP addresses, mobile device information and other similar technology. ***This information does not identify you, but is statistical data that provides generic information about your use of the Sites.***"

"We take reasonable, industry standard precautions to keep the Sites and their systems secure and to prevent personal information from being made available to unauthorized persons or entities."[35]

119.  Finally, in their Notices of Privacy Practices, Defendants acknowledge that they are "required by law to protect the privacy of [Users'] medical information" and "to notify [them] if there is a breach or impermissible access, use or disclosure of [their] medical information."[36]

120.  Defendants failed to issue a notice that Plaintiffs and Class Members' Private Information had been impermissibly disclosed to an unauthorized third party. In fact, Defendants ***never*** disclosed to Plaintiffs or Class Members that they shared their sensitive and confidential communications, data, and Private Information with Facebook and other third parties.[37]

---

[35]  *Privacy Policy*, DESERT CARE NETWORK, https://www.desertcarenetwork.com/privacy-policy (last visited June 15, 2023); *Privacy Policy*, PALM BEACH HEALTH NETWORK, https://www.palmbeachhealthnetwork.com/privacy-policy (last visited June 15, 2023).

[36]  *Notices of Privacy Practices*, *supra* note 35.

[37]  In contrast to Defendants, in recent months several medical providers which have installed the Meta Pixel on their Web Properties have provided their patients with notices of data breaches caused by the Pixel transmitting PHI to third parties. *See*, *e.g.*, *Cerebral, Inc. Notice of HIPAA Privacy Breach*, https://cerebral.com/static/hippa_privacy_breach-4000c6eb21449c2ecd8bd13706750cc2.pdf (last visited June 15, 2023); Annie Burky, *Advocate Aurora says 3M patients' health data possibly exposed through tracking technologies*, FIERCE HEALTHCARE (October 20, 2022), https://www.fiercehealthcare.com/health-tech/advocate-aurora-health-data-breach-

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

121. Defendants have unequivocally failed to adhere to a single promise vis-à-vis their duty to safeguard Private Information of their Users. Defendants have made these privacy policies and commitments available on their websites. Defendants included these privacy policies and commitments to maintain the confidentiality of their Users' sensitive information as terms of their contracts with those Users, including contracts entered with Plaintiffs and the Class Members. In these contract terms and other representations to Plaintiffs and Class Members and the public, Defendants promised to take specific measures to protect Plaintiffs' and Class Members' Private Information, consistent with industry standards and federal and state law. However, they failed to do so.

122. Even non-Facebook users can be individually identified via the information gathered on the Digital Platforms, like an IP address or personal device identifying information. This is precisely the type of information for which HIPAA requires the use of de-identification techniques to protect patient privacy.[38]

123. In fact, in an action currently pending against Facebook related to use of their Pixel on healthcare provider web properties, Facebook explicitly stated it requires Pixel users to "post a prominent notice on every page where the Pixel is embedded and to link from that notice to information about exactly how the Pixel works and what is being collected through it, so it is not invisible."[39] Defendants did not post such a notice.

_____

revealed-pixels-protected-health-information-3; *Novant Health Notifies Patients of Potential Data Privacy Incident*, PR NEWSWIRE (August 19, 2022), https://www.prnewswire.com/news-releases/novant-health-notifies-patients-of-potential-data-privacy-incident-301609387.html.

[38] *Guidance Regarding Methods for De-identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule*, U.S. DEP'T OF HEALTH AND HUM. SERVICES, https://www.hhs.gov/hipaa/for-professionals/privacy/special-topics/de-identification/index.html (last visited June 15, 2023).

[39] *See* Transcript of the argument on Plaintiff's Motion for Preliminary Injunction in *In re Meta Pixel Healthcare Litig.*, *supra* note 6, at 19:12-18.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050   F: (213) 788-4070 | clarksonlawfirm.com

124. Facebook further stated that "most providers [...] will not be sending [patient information] to Meta because it violates Meta's contracts for them to be doing that."[40]

125. Despite a lack of disclosure, Defendants allowed third parties to "listen in" on patients' confidential communications and to intercept and use for advertising purposes the very information they promised to keep private, in order to bolster their profits.

***Plaintiffs' and Class Members Reasonably Believed That Their Confidential Medical Information Would Not Be Shared with Third Parties.***

126. Plaintiffs and Class Members were aware of Defendants' duty of confidentiality when they sought medical services from Defendants.

127. Indeed, at all times when Plaintiffs and Class Members provided their Private Information to Defendants, they each had a reasonable expectation that the information would remain confidential and that Defendants would not share the Private Information with third parties for a commercial purpose, unrelated to patient care.

128. Personal data privacy and obtaining consent to share Private Information are material to Plaintiffs and Class Members.

129. Plaintiffs and Class Members relied to their detriment on Defendants' uniform representations and omissions regarding protection privacy, limited uses, and lack of sharing of their Private Information.

130. Now that their sensitive personal and medical information is in possession of third parties, Plaintiffs and Class Members face a constant threat of continued harm – including bombardment of targeted advertisements based on the unauthorized disclosure of their personal data. Collection and sharing of such sensitive information without consent or notice poses a great threat to individuals by subjecting them to the never-ending threat of identity theft, fraud, phishing scams, and harassment.

---

[40] *Id.* at 7:20-8:11.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

***Plaintiffs and Class Members Have No Way of Determining Widespread Usage of Invisible Pixels.***

131. Plaintiffs and Class Members have no idea that Defendants are collecting and utilizing their Private Information, including sensitive medical information, when they engage with Defendants' websites which have Meta Pixels secretively incorporated in the background.

132. Plaintiffs and Class Members do not realize that tracking Pixels exist because they are invisibly embedded within Defendants' web pages that users might interact with.[41] Patients and users of Defendants' websites do not receive any alerts during their uses of Defendants' Web Properties stating that Defendants track and share sensitive medical data with Facebook, allowing Facebook and other third parties to subsequently target all users of Defendants' websites for marketing purposes.

133. Plaintiffs and Class Members trusted Defendants' websites when inputting sensitive and valuable Private Information. Had Defendants disclosed to Plaintiffs and Class Members that every click, every search, and every input of sensitive information was being tracked, recorded, collected, and ***<u>disclosed</u>*** to third parties, Plaintiffs and Class Members would not have trusted Defendants' websites to input such sensitive information.

134. Defendants knew or should have known that Plaintiffs and Class Members would reasonably rely on and trust Defendants' promises regarding the tracking privacy and uses of their Private Information. Furthermore, any person visiting a health website has a reasonable understanding that medical providers must adhere to strict confidentiality protocols and are bound not to share any medical information without their consent.

---

[41] FTC Office of Technology, *Lurking Beneath the Surface: Hidden Impacts of Pixel Tracking*, FED. TRADE COMM'N (March 16, 2023), https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2023/03/lurking-beneath-surface-hidden-impacts-pixel-tracking.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

135.  By collecting and sharing Users' Private Information with Facebook and other unauthorized third parties, Defendants caused harm to Plaintiffs, Class Members, and all affected individuals.

136.  Furthermore, once Private Information is shared with Facebook, such information may not be effectively removed, even though it includes personal and private information.

137.  Plaintiffs fell victim to Defendants' unlawful collection and sharing of their sensitive medical information using the Meta Pixel tracking code on their websites.

***Facebook Use of Tracking Pixels in Advertising Business.***

138.  Facebook is one of the largest advertising companies in the country, with over 2.9 billion active users.[42]

139.  Realizing the value of having direct access to millions of consumers, in 2007, Facebook began monetizing its platform by launching "Facebook Ads," proclaiming it to be a "completely new way of advertising online" that would allow "advertisers to deliver more tailored and relevant ads."[43]

140.  Given the highly specific data used to target specific users, it is no surprise that millions of companies and individuals utilize Facebook's advertising services. Meta generates almost all of its revenue from selling advertisement placements:

| Year | Total Revenue | Ad Revenue | % Ad Revenue |
|------|---------------|------------|--------------|
| 2023 Q1 | $28.65 billion | $28.101 billion | 98.1% |
| 2022 | $116.61 billion | $113.64 billion | 97.5% |
| 2021 | $117.93 billion | $114.93 billion | 97.46% |
| 2020 | $85.97 billion | $84.17 billion | 97.90% |
| 2019 | $70.70 billion | $69.66 billion | 98.52% |
| 2018 | $55.84 billion | $55.01 billion | 98.51% |

---

[42]  S. Dixon, *Facebook Users by Country 2023*, STATISTA (February 24, 2023), www.statista.com/statistics/268136/top-15-countries-based-on-number-of-facebook-users/.

[43]  *Facebook Unveils Facebook Ads*, META (November 6, 2007), https://about.fb.com/news/2007/11/facebook-unveils-facebook-ads/.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

141.  One of its most powerful advertising tools is Meta Pixel, formerly known as Facebook Pixel, which launched in 2015.

142. Ad Targeting has been extremely successful due, in large part, to Facebook's ability to target people at a granular level. "Among many possible target audiences, Facebook offers advertisers, [for example,] 1.5 million people 'whose activity on Facebook suggests that they're more likely to engage with/distribute liberal political content' and nearly seven million Facebook users who 'prefer high-value goods in Mexico.'"[44]

143. Acknowledging that micro-level targeting is highly problematic, in November of 2021 Facebook announced that it was removing options that "relate to topics people may perceive as sensitive," such as "Health causes (e.g., 'Lung cancer awareness', 'World Diabetes Day', 'Chemotherapy'), Sexual orientation (e.g., 'same-sex marriage' and 'LGBT culture')", "Religious practices and groups (e.g., 'Catholic Church' and 'Jewish holidays')," as well as "Political beliefs, social issues, causes, organizations, and figures."

144. For Facebook, the Pixel acts as a conduit of information, sending the information it collects to Facebook through scripts running in the User's internet browser. The information is sent in data packets labeled with PII, including the User's IP address.

145. If the User has a Facebook account, the Private Information collected is linked to the individual Users' Facebook account. For example, if the User is logged into their Facebook account when the User visits a website where the Meta Pixel is installed, many common browsers will attach third-party cookies allowing Facebook to link the data collected by Meta Pixel to the specific Facebook user.

---

[44]   Natasha Singer, *What You Don't Know about How Facebook Uses Your Data*, N.Y. TIMES (April 11, 2018), https://www.nytimes.com/2018/04/11/technology/facebook-privacy-hearings.html.

CLASS ACTION COMPLAINT

146. Alternatively, Facebook can link the data to a users' Facebook account through the "Facebook Cookie." The Facebook Cookie is a workaround to recent cookie-blocking techniques, including one developed by Apple, Inc., to track users.[45]

147. Facebook can also link Private Information to Facebook accounts through identifying information collected through Meta Pixel through what Facebook calls "Advanced Matching."[46] There are two forms of Advanced Matching: manual matching and automatic matching. Using Manual Advanced Matching the website developer manually sends data to Facebook to link users. Using Automatic Advanced Matching, the Meta Pixel scours the data it receives to search for recognizable fields, including name and email address to match users to their Facebook accounts.[47]

148. A recent investigation revealed that the Meta Pixel was installed inside password-protected patient portals of at least seven health systems.[48] When a User navigates through their patient portal, the Meta Pixel sends Facebook sensitive data including but not limited to, the User's medication information, prescriptions, descriptions of their issues, notes, test results, and details about upcoming doctor's appointments.

149. David Holtzman, a health privacy consultant was "deeply troubled" by the results of The Markup's investigation and indicated "it is quite likely a HIPAA violation" by the hospitals, such as Defendants.[49]

---

[45]   Maciej Zawadziński & Michal Wlosik, *What Facebook's First-Party Cookie Means for AdTech,* CLEAR CODE (June 8, 2022), https://clearcode.cc/blog/facebook-first-party-cookie-adtech/.

[46] Illia Lahunou*, What is Advanced Matching in Facebook Pixel and How it Works,* VERFACTO, https://www.verfacto.com/blog/ecommerce/advanced-matching-facebook-pixel/ (last visited July 21, 2023); *see also About advanced matching for web*, META, https://www.facebook.com/business/help/611774685654668?id=1205376682832142 (last visited July 21, 2023).

[47]   *Id.*

[48]   *See* Feathers, *et al*., *supra* note 3.

[49]   *Id.*

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

150. Laura Lazaro Cabrera, a legal officer at Privacy International, indicated that Facebook's access to use even only some of these data points—such as just the URL—is problematic. She explained, "Think about what you can learn from a URL that says something about scheduling an abortion' . . . 'Facebook is in the business of developing algorithms. They know what sorts of information can act as a proxy for personal data."[50]

151. When Users visit websites that have incorporated the Meta Pixel, the Pixel collects information about Users' activity on that website. This information is then shared with Facebook and, in tandem with data from the Users' Facebook profile such as their age, gender, and interests, can be used to target the user with advertisements on Facebook and other websites that use the Meta Pixel.

152. However, the collection and use of this data raises concerns about user privacy and the potential misuse of personal information. For example, when Users browse Defendants' Web Properties, every bit of their activity is tracked and monitored. By analyzing this data using algorithms and machine learning techniques, these entities tracking this information can learn a chilling level of detail about Users' behavioral patterns, preferences, and interests.

153. While this data can be used to provide personalized and targeted content and advertising, it can also be used for more nefarious purposes, such as tracking and surveillance. For example, if an advertiser or social media platform has access to a User's browsing history, search queries, and social media activity, they could potentially build a detailed profile of that User's behavior patterns, including where they go, what they do, and who they interact with.

154. This level of surveillance and monitoring raises important ethical and legal questions about privacy, consent, and the use of personal data. It is important

---

[50] Grace Oldham & Dhruv Mehrotra, *Facebook and Anti-Abortion Clinics Are Collecting Highly Sensitive Info on Would-Be Patients*, THE MARKUP (June 15, 2022), https://themarkup.org/pixel-hunt/2022/06/15/facebook-and-anti-abortion-clinics-are-collecting-highly-sensitive-info-on-would-be-patients.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

for Users to be aware of how their data is being collected and used, and to have control over how their information is shared and used by advertisers and other entities.

155. Moreover, the misuse of this data could potentially lead to the spread of false or misleading information, which could have serious consequences, particularly in the case of health-related information. As an example, the Cambridge Analytica scandal revealed that personal data was misused to target individuals with political propaganda and misinformation.[51]

156. The Cambridge Analytica scandal involved the misuse of personal data collected from Facebook users, which was then used to target individuals with political advertising and propaganda. The scandal highlighted the potential dangers of using personal data for targeted advertising and the need for greater transparency and accountability in the collection and use of personal information.[52] One of the ways that Cambridge Analytica was able to collect personal data was through the use of third-party apps that collected data from users and their friends. This data was then used to build detailed profiles of individuals, which were used to target them with personalized political ads and propaganda.

157. The use of algorithms and machine learning techniques to analyze this data allowed Cambridge Analytica to identify patterns in users' behavior and preferences, which were then used to target them with specific messages and ads.

158. This highlights the potential dangers of using personal data to build detailed profiles of individuals, particularly when that data is collected without their knowledge or consent. It also raises important questions about the ethics of using personal data for political purposes and the need for greater regulation and oversight of data collection and use.

---

[51] Sam Meredith, *Here's Everything You Need to Know about the Cambridge Analytica Scandal*, CNBC (March 23, 2018), https://www.cnbc.com/2018/03/21/facebook-cambridge-analytica-scandal-everything-you-need-to-know.html.

[52] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

159. Finally, as pointed out by the OCR, impermissible disclosures of such data in the healthcare context "may result in identity theft, financial loss, discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or to others identified in the individual's PHI…. This tracking information could also be misused to promote misinformation, identity theft, stalking, and harassment."[53]

160. In conclusion, as Judge Orrick pointed out in a recent decision allowing claims under California and common law against Regents of the University of California for collecting personal medical data via the Meta Pixel to go forward, "[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person" and unauthorized transmission or interception of such data by third parties may constitute a "highly offensive" intrusion of privacy. *Doe v. Regents of Univ. of Cal.*, 23-cv-00598-WHO (N.D. Cal. May 6, 2023).

***Defendants Knew Plaintiffs' Private Information Included Sensitive Medical Information, Including Medical Records.***

161. Defendants were aware that by incorporating the Meta Pixel onto their websites, this would result in the disclosure and use of Plaintiffs' and Class Members' Private Information, including sensitive medical information.

162. By virtue of how the Meta Pixel works, i.e., sending all interactions on a website to Facebook, Defendants were aware that their Users' Private Information would be sent to Facebook when they researched specific medical conditions and/or treatments, looked up providers, made appointments, typed specific medical queries into the search bar, and otherwise interacted with Defendants' Web Properties.

163. Indeed, software companies like MyChart that provide online access to medical records utilized by Defendants have "specifically recommended heightened

_____

[53]     *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates, supra* note 12.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

caution around the use of custom analytics." Despite this, Defendants continued to use the Meta Pixel on their Web Properties.

***Plaintiffs and Class Members Have a Reasonable Expectation of Privacy in Their Private Information, Especially with Respect to Sensitive Medical Information.***

164. Plaintiffs and Class Members have a reasonable expectation of privacy in their Private Information, including personal information and sensitive medical information.

165. Patient PHI specifically is protected by federal law under HIPAA.

166. HIPAA sets national standards for safeguarding protected health information. For example, HIPAA limits the permissible uses of health information and prohibits the disclosure of this information without explicit authorization. *See* 45 C.F.R. § 164.502. HIPAA also requires that covered entities implement appropriate safeguards to protect this information. *See* 45 C.F.R. § 164.530(c)(1).

167. This federal legal framework applies to health care providers, including Defendants.

168. Given the application of HIPAA to the Defendants, Plaintiffs and the members of the Class had a reasonable expectation of privacy over their PHI.

169. Several studies examining the collection and disclosure of consumers' sensitive medical information confirm that the collection and unauthorized disclosure of sensitive medical information from millions of individuals, as Defendants have done here, violates expectations of privacy that have been established as general societal norms.

170. Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' data.

171. For example, a recent study by Consumer Reports shows that 92% of Americans believe that internet companies and websites should be required to obtain

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[54] Moreover, according to a study by Pew Research Center, a majority of Americans, approximately 79%, are concerned about how data is collected about them by companies.[55]

172. Users act consistent with these preferences. Following a new rollout of the iPhone operating software—which asks users for clear, affirmative consent before allowing companies to track users—85% of worldwide users and 94% of U.S. users chose not to share data when prompted.[56]

173. Medical data is particularly even more valuable because unlike other personal information, such as credit card numbers which can be quickly changed, medical data is static. This is why companies possessing medical information, like Defendants, are intended targets of cyber-criminals.[57]

174. Patients using Defendants' Web Properties must be able to trust that the information they input including their physicians, their health conditions and courses of treatment will be protected. Indeed, numerous state and federal laws require this. And these laws are especially important when protecting individuals with particular medical conditions such as HIV or AIDS that can and do subject them to regular discrimination. Furthermore, millions of Americans keep their health information

---

[54] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

[55] *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER (November 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.

[56] Margaret Taylor, *How Apple Screwed Facebook*, WIRED (May 19, 2021), https://www.wired.co.uk/article/apple-ios14-facebook.

[57] Caroline Humer & Jim Finkle, *Your medical record is worth more to hackers than your credit card*, REUTERS (September 24, 2014), https://www.reuters.com/article/us-cybersecurity-hospitals/your-medical-record-is-worth-more-to-hackers-than-your-credit-card-idUSKCN0HJ21I20140924.

CLASS ACTION COMPLAINT

private because it can become the cause of ridicule and discrimination. For instance, despite the anti-discrimination laws, persons living with HIV/AIDS are routinely subject to discrimination in healthcare, employment, and housing.[58]

175. The concern about sharing medical information is compounded by the reality that advertisers view this type of information as particularly high value. Indeed, having access to the data women share with their healthcare providers allows advertisers to obtain data on children before they are even born. As one article put it: "the datafication of family life can begin from the moment in which a parent thinks about having a baby."[59] The article continues, "[c]hildren today are the very first generation of citizens to be datafied from before birth, and we cannot foresee — as yet — the social and political consequences of this historical transformation. What is particularly worrying about this process of datafication of children is that companies like . . . Facebook . . . are harnessing and collecting multiple typologies of children's data and have the potential to store a plurality of data traces under unique ID profiles."[60]

176. Other privacy law experts have expressed concerns about the disclosure to third parties of a users' sensitive medical information. For example, Dena Mendelsohn—the former Senior Policy Counsel at Consumer Reports and current Director of Health Policy and Data Governance at Elektra Labs—explained that having your personal health information disseminated in ways you are unaware of could have serious repercussions, including affecting your ability to obtain life

---

[58] Bebe J. Anderson, JD, *HIV Stigma and Discrimination Persist, Even in Health Care*, AMA J. Ethics (December 2009), https://journalofethics.ama-assn.org/article/hiv-stigma-and-discrimination-persist-even-health-care/2009-12.

[59] Veronica Barassi, *Tech Companies Are Profiling Us From Before Birth*, MIT Press Reader (January 14, 2021), https://thereader.mitpress.mit.edu/tech-companies-are-profiling-us-from-before-birth/.

[60] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

insurance and how much you pay for that coverage, increase the rate you are charged on loans, and leave you vulnerable to workplace discrimination.[61]

177. Defendants surreptitiously collected and used Plaintiffs' and Class Members' Private Information, including highly sensitive medical information, through Meta Pixel in violation of Plaintiffs' and Class Members' privacy interests.

## REPRESENTATIVE PLAINTIFFS' EXPERIENCES

**Plaintiff B.K.**

178.  Plaintiff B.K. began receiving healthcare services from Defendant Desert Regional Medical Center since at least 2011 and accessed those services via Defendant Desert Regional's Website and Patient Portal ("**DRMC Web Properties**").

179.  The California Defendants and Tenet encouraged Plaintiff B.K. to utilize DRMC's website and online portal in order to search for doctors, make appointments, review medical treatments, and to review charts from previous exams.[62]

180. While using DRMC Web Properties, Plaintiff B.K. communicated sensitive – and what she expected to be confidential – personal and medical information to California Defendants and Tenet.

181. Plaintiff B.K. used DRMC Web Properties to research healthcare providers (including breast cancer specialists and primary care doctors) and communicate with them, research particular medical concerns and treatments, fill out forms and questionnaires, schedule and attend appointments including mammograms, and perform other tasks related to her specific medical inquiries and treatment.

---

[61]    Class Action Complaint, *Jane Doe v. Regents of the Univ. of Cal. d/b/a UCSF Medical Center*, CLASS ACTION (Feb. 9, 2023), https://www.classaction.org/media/doe-v-regents-of-the-university-of-california.pdf.
[62]    *See, e.g.*, *Welcome to My Health Rec, Our Patient Portal*, DESERT CARE NETWORK, https://www.desertcarenetwork.com/portal (last visited June 15, 2023) ("My Health Rec is a great way to view, download and transmit your up-to-date health information, all from the convenience and privacy of your own home, or anywhere Internet access is available — 24 hours a day, seven days a week. We recently added opportunities for additional documents you can see online, such as pathology reports, discharge summaries and progress/procedure notes").

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

182.  Plaintiff B.K. also utilized DRMC's Patient Portal to refill prescriptions, look at her bills and payments, to see her test results and notes from her appointments and from her visits to the ER.

183.  While using DRMC's digital services, Plaintiff B.K. communicated and received information regarding her appointments, treatments, medications, and clinical information, including her annual mammograms, surgeries, ER visits, lab work, and scans. As a result of the Meta Pixel California Defendants and Tenet chose to install on their Web Properties, this information was intercepted, viewed analyzed, and used by unauthorized third parties.

184.  Plaintiff B.K. accessed DRMC's Web Properties in connection with receiving healthcare services from DRMC or DRMC's affiliates at DRMC's direction and with DRMC's encouragement.

185.  Plaintiff B.K. has used and continues to use the same devices to maintain and to access an active Facebook account throughout the relevant period in this case.

186.  As a medical patient using DRMC's health services, Plaintiff B.K. reasonably expected that her online communications with DRMC were solely between herself and DRMC, and that such communications would not be transmitted or intercepted by a third party. Plaintiff B.K. also relied on DRMC's Privacy Policies in reasonably expecting DRMC would safeguard her Private Information. But for her status as California Defendants' patient and their representations via their Privacy Policies, Plaintiff B.K. would not have disclosed her Private Information to California Defendants and Tenet.

187.  Plaintiff B.K. is also an active Facebook user and has had a Facebook account since at least 2007.

188.  Plaintiff B.K. used the same e-mail address to sign up for a Facebook account and for DRMC's Patient Portal.

CLASS ACTION COMPLAINT

189. As a result of California Defendants' and Tenet's use of the Meta Pixel, Plaintiff B.K. began receiving ads on Facebook relating to her particular medical conditions and treatments, including breast cancer and hysterectomy.

190. During her time as DRMC's patient, Plaintiff B.K. never consented to the use of her Private Information by third parties or to California Defendants and Tenet enabling third parties, including Facebook, Google, and others to access or interpret such information.

191. Notwithstanding, through Meta Pixel and similar tracking technologies embedded on DRMC's Web Properties, California Defendants and Tenet transmitted Plaintiff B.K.'s Private Information to third parties, including Facebook, Google, and others.

**Plaintiff N.Z.**

192. Plaintiff N.Z. is a frequent user of Defendant JFK Hospital's website and Portal.

193. The California Defendants and Tenet encouraged Plaintiff N.Z. to use Defendant JFK's Hospital website and Patient Portal ("**JFK Hospital Web Properties**") to search for doctors, review medical treatments, make appointments, and review test results.

194. Since at least 2016, Plaintiff N.Z. has been receiving healthcare services from Defendant JFK Hospital and has utilized JFK Hospital Web Properties in connection with those services.

195. While using JFK Hospital Web Properties, Plaintiff N.Z. communicated sensitive – and what she expected to be confidential – personal and medical information to California Defendants and Tenet.

196. Plaintiff N.Z. used JFK Hospital Web Properties to research healthcare providers (including primary care doctors) and communicate with them, research particular medical concerns and treatments, fill out forms and questionnaires,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

schedule and attend appointments, and perform other tasks related to her specific medical inquiries and treatment.

197. Plaintiff N.Z. also utilized JFK Hospital's Portal to refill prescriptions, look at her bills and payments, and see her test results and notes from her appointments.

198. Plaintiff N.Z. also used JFK Hospital's Portal as a proxy for her husband, who is diagnosed with specific medical conditions including diabetes.

199. While using JFK Hospital's services, Plaintiff N.Z. communicated and received information regarding her appointments, treatments, medications, and clinical information, including her lab work and scans. As a result of the Meta Pixel California Defendants and Tenet chose to install on their Web Properties, this information was intercepted, viewed analyzed, and used by unauthorized third parties.

200. Plaintiff N.Z. also accessed JFK Hospital's Web Properties in connection with receiving healthcare services (for herself and her husband) from JFK Hospital or JFK Hospital's affiliates at JFK Hospital's direction and with JFK Hospital's encouragement.

201. Plaintiff has used and continues to use the same devices to maintain and to access an active Facebook account throughout the relevant period in this case.

202. As a medical patient using JFK Hospital's health services, Plaintiff N.Z. reasonably expected that her online communications with JFK Hospital were solely between herself and JFK Hospital, and that such communications would not be transmitted or intercepted by a third party. Plaintiff N.Z. also relied on JFK Hospital's Privacy Policies in reasonably expecting JFK Hospital would safeguard her Private Information. But for her status as California Defendants' patient and California Defendants' representations via its Privacy Policies, Plaintiff N.Z. would not have disclosed her Private Information to Defendant.

203. Plaintiff N.Z. is also an active Facebook user and has had a Facebook account since at least 2012.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

204.  As a result of California Defendants' and Tenet's use of the Meta Pixel, Plaintiff N.Z. began receiving advertisements on Facebook relating to her and her husband's particular medical conditions and treatments.

205.  During her time as JFK Hospital's patient, Plaintiff N.Z. never consented to the use of her or her husband's Private Information by third parties or to California Defendants and Tenet enabling third parties, including Facebook, Google, and others to access or interpret such information.

206.  Notwithstanding, through the Meta Pixel and similar tracking technologies embedded on JFK Hospital's Web Properties, Defendants transmitted Plaintiff N.Z.'s and her husband's Private Information to third parties, including Facebook, Google, and others.

**Plaintiff R.P.**

207.  Plaintiff R.P. began receiving healthcare services from PBGMC in 2019 and continued until mid-2021. Plaintiff R.P. utilized Defendant Palm Beach Gardens Medical Center Website and Patient Portal ("**PBGMC Web Properties**") in connection with said services.

208.  The Florida Defendants and Tenet encouraged Plaintiff R.P. to utilize PBGMC's Web Properties to search for doctors, make appointments, review medical treatments, and to review his medical records.[63]

209.  While using PBGMC Web Properties, Plaintiff R.P. communicated sensitive – and what he expected to be confidential – personal and medical information to Florida Defendants and Tenet.

---

[63]     *See, e.g.*, *Welcome to My Health Rec, Our Patient Portal*, PALM BEACH HEALTH NETWORK, https://www.pbgmc.com/portal (last visited June 15, 2023) ("My Health Rec is a great way to view, download and transmit your up-to-date health information, all from the convenience and privacy of your own home, or anywhere Internet access is available — 24 hours a day, seven days a week. We recently added opportunities for additional documents you can see online, such as pathology reports, discharge summaries and progress/procedure notes").

49

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

210. Plaintiff R.P. used PBGMC Web Properties to research healthcare providers (including heart and lung specialists) and communicate with them, research particular medical concerns and treatments including imaging, fill out forms and questionnaires, schedule and attend appointments including for a cardiac MRI, and perform other tasks related to his specific medical inquiries and treatment.

211. Plaintiff R.P. also utilized PBGMC's Patient Portal to look at his bills and payments, and to see his test results and notes from his appointments.

212. While using PBGMC's digital services, Plaintiff R.P. communicated and received information regarding his appointments, treatments, medications, and clinical information, including his imaging results. As a result of the Meta Pixel Florida Defendants and Tenet chose to install on their Web Properties, this information was intercepted, viewed, analyzed, and used by unauthorized third parties.

213. Plaintiff R.P. accessed PBGMC's Web Properties in connection with receiving healthcare services from PBGMC or PBGMC's affiliates at PBGMC's direction and with PBGMC's encouragement.

214. Plaintiff has used and continues to use the same devices to maintain and to access an active Facebook account throughout the relevant period in this case.

215. As a medical patient using PBGMC's health services, Plaintiff R.P. reasonably expected that his online communications with PBGMC were solely between himself and PBGMC, and that such communications would not be transmitted or intercepted by a third party. Plaintiff R.P. also relied on PBGMC's Privacy Policies and reasonably expected that PBGMC would safeguard his Private Information. But for his status as Florida Defendants' patient and Florida Defendants' representations via its Privacy Policies, Plaintiff R.P. would not have disclosed his Private Information to Florida Defendants and Tenet.

216. Plaintiff R.P. is also an active Facebook user and has had a Facebook account since at least 2009.

CLASS ACTION COMPLAINT

217. Plaintiff R.P. used the same e-mail address to sign up for a Facebook account and for PBGMC's Patient Portal.

218. As a result of Florida Defendants' and Tenet's use of the Meta Pixel, Plaintiff R.P. began receiving advertisements on Facebook relating to his particular medical conditions and treatments.

219. During his time as PBGMC's patient, Plaintiff R.P. never consented to the use of his Private Information by third parties or to Florida Defendants and Tenet enabling third parties, including Facebook, Google, and others to access or interpret such information.

220. Notwithstanding, through the Meta Pixel and similar tracking technologies embedded on PBGMC's Web Properties, Florida Defendants and Tenet transmitted Plaintiff R.P.'s Private Information to third parties, including Facebook, Google, and others.

## TOLLING, CONCEALMENT & ESTOPPEL

221. The applicable statutes of limitation have been tolled as a result of Defendants' knowing and active concealment and denial of the facts alleged herein.

222. Defendants secretly incorporated the Meta Pixel into their Web Properties and patient portals, providing no indication to Users that their User Data, including their Private Information, would be disclosed to unauthorized third parties.

223. Defendants had exclusive knowledge that the Meta Pixel was incorporated on its Web Properties, yet failed to disclose that fact to Users, or inform them that by interacting with their websites Plaintiffs' and Class Members' User Data, including Private Information, would be disclosed to third parties, including Facebook.

224. Plaintiffs and Class Members could not with due diligence have discovered the full scope of Defendants' conduct because the incorporation of Meta Pixels is highly technical and there were no disclosures or other indications that would

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

inform a reasonable consumer that Defendants were disclosing and allowing Facebook to intercept Users' Private Information.

225. The earliest Plaintiffs and Class Members could have known about Defendants' conduct was shortly before the filing of this Complaint.

226. As alleged above, Defendants have a duty to disclose the nature and significance of their data disclosure practices but failed to do so. Defendants are therefore estopped from relying on any statute of limitations under the discovery rule.

## CLASS ALLEGATIONS

227. **Class Definition:** Plaintiffs bring this action on behalf of themselves and on behalf of various classes of persons similarly situated, as defined below, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.:

228. The **Nationwide Class** that Plaintiffs seek to represent is defined as:

> All individuals residing in the United States whose Private Information was disclosed to a third party without authorization or consent through the Meta Pixel on Defendants' Web Properties.

229. The California Class that Plaintiffs B.K. and N.Z. seek to represent is defined as: (collectively "California Class")

> **California Residents Class:** All individuals residing in the State of California whose Private Information was disclosed to a third party without authorization or consent through the Meta Pixel on Defendants' Web Properties.

230. The **Florida Class** that Plaintiff R.P. seeks to represent is defined as:

> All individuals residing in the State of Florida whose Private Information was disclosed to a third party without authorization or consent through the Meta Pixel on Defendants' Web Properties.

231. The Nationwide Class, the California Class, and the Florida Class are referred to collectively as the "Classes." Excluded from the Classes are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any Defendants' officer or director, any successor or assign and any Judge who adjudicates this case, including their staff and immediate family.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

232. **The following people are excluded from the Classes:** (1) any Judge or Magistrate presiding over this action and members of their immediate families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

233. Plaintiffs reserve the right under Federal Rule of Civil Procedure 23 to amend or modify the Classes to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues. Plaintiffs reserve the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

234. The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

235. The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are all satisfied.

236. **Numerosity:** The exact number of Class Members is not available to Plaintiffs, but it is clear that individual joinder is impracticable. Millions of people have used Desert Care Network, Desert Regional Medical Center, Inc., JFK Memorial Hospital, Inc., Palm Beach Health Network, Palm Beach Gardens Medical Center, and Tenet Healthcare Corporation's services since at least 2015. Members of the Class can be identified through Defendants' records or by other means.

237. **Commonality:** Commonality requires that the Class Members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Here, there

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

is a common contention for all Class Members as to whether Defendants disclosed to third parties their Private Information without authorization or lawful authority.

238. **Typicality:** Plaintiffs' claims are typical of the claims of other Class Members in that Plaintiffs and the Class Members sustained damages arising out of Defendants' uniform wrongful conduct and data sharing practices.

239. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs' claims are made in a representative capacity on behalf of the Class Members. Plaintiffs have no interests antagonistic to the interests of the other Class Members. Plaintiffs have retained competent counsel to prosecute the case on behalf of Plaintiffs and the Class. Plaintiffs and Plaintiffs' counsel are committed to vigorously prosecuting this action on behalf of the Class members.

240. The declaratory and injunctive relief sought in this case includes, but is not limited to:

    a.   Entering a declaratory judgment against Defendants—declaring that Defendants' interception of Plaintiffs' and Class Members' Private Information among themselves and other third parties is in violation of the law;

    b.   Entering an injunction against Defendants:

        i.   preventing Defendants from sharing Plaintiffs' and Class Members' Private Information among themselves and other third parties;

        ii.   requiring Defendants to alert and/or otherwise notify all users of its websites and portals of what information is being collected, used, and shared;

        iii.   requiring Defendants to provide clear information regarding their practices concerning data collection from the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

users/patients of Defendants' Web Properties, as well as uses of such data;

    iv. requiring Defendants to establish protocols intended to remove all personal information which has been leaked to Facebook and/or other third parties, and request Facebook/third parties to remove such information;

    v. and requiring Defendants to provide an opt out procedure for individuals who do not wish for their information to be tracked while interacting with Defendants' Web Properties.

241. **Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and Class Members, and those questions predominate over any questions that may affect individual Class Members. Common questions and/or issues for Class members include, but are not necessarily limited to the following:

    i. Whether Defendants' acts and practices violated California's Constitution, Art. 1, § 1;

    ii. Whether Defendants' acts and practices violated California's Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.*;

    iii. Whether Defendants' acts and practices violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*;

    iv. Whether Defendants' unauthorized disclosure of Users' Private Information was negligent;

    v. Whether Defendants owed a duty to Plaintiffs' and Class Members not to disclose their Private Information to unauthorized third parties;

    vi. Whether Defendants breached their duty to Plaintiffs' and Class Members not to disclose their Private Information to unauthorized third parties;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

vii.  Whether Defendants represented to Plaintiffs and the Class that they would protect Plaintiffs' and the Class Members' Private Information;

viii.  Whether Defendants violated Plaintiffs' and Class Members' privacy rights;

ix.  Whether California Defendants' and Tenet's practices violated California's Confidentiality of Medical Information Act, Civ. Code §§ 56, *et seq.*;

x.  Whether California Defendants' and Tenet's practices violated California's Constitution, Art. 1, § 1;

xi.  Whether Florida Defendants' and Tenet's practices violated the Florida Security of Communications Act, Fla. Stat. §§ 934.01 *et seq*.;

xii.  Whether Florida Defendants' and Tenet's practices violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*,;

xiii.  Whether Plaintiffs and Class Members are entitled to actual damages, enhanced damages, statutory damages, and other monetary remedies provided by equity and law;

xiv.  Whether injunctive and declaratory relief, restitution, disgorgement, and other equitable relief is warranted.

242. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class Members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual Class Members to obtain effective relief from Defendants' misconduct. Even if Class Members could mount such individual litigation, it would still not be

56

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

243. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendants misrepresented that they would disclose personal information only for limited purposes that did not include purposes of delivering advertisements or collecting data for commercial use or supplementing consumer profiles created by data aggregators and advertisers;

b. Whether Defendants' privacy policies misrepresented that they collected and shared User information with third-party service providers only for the limited purpose of providing access to its services;

c. Whether Defendants misrepresented that they had in place contractual and technical protections that limit third-party use of User information and that it would seek User consent prior to sharing Private Information with third parties for purposes other than provision of its services;

d. Whether Defendants misrepresented that any information they receive is stored under the same guidelines as any health entity that is subject to the strict patient data sharing and protection practices set forth in the regulations propounded under HIPAA;

e. Whether Defendants misrepresented that they complied with HIPAA's requirements for protecting and handling Users' PHI;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

f. Whether Defendants shared the Private Information that Users provided to Defendants with advertising platforms, including Facebook, without adequate notification or disclosure, and without Users' consent, in violation of health privacy laws and rules and its own privacy policy;

g. Whether Defendants integrated third-party tracking tools, consisting of automated web beacons ("**Pixels**") in their website that shared Private Information and User activities with third parties for unrestricted purposes, which included advertising, data analytics, and other commercial purposes;

h. Whether Defendants shared Private Information and activity information with Facebook using Facebook's tracking Pixels on their websites without Users' consent;

i. Whether Facebook used the information that Defendants shared with it for unrestricted purposes, such as selling targeted advertisements, data analytics, and other commercial purposes.

<u>**COUNT ONE**</u>

<u>**VIOLATION OF THE CONFIDENTIALITY OF MEDICAL**</u>
<u>**INFORMATION ACT CAL. CIV. CODE §§ 56, *et seq.***</u>

(***On behalf of California Plaintiffs and the California Class against***
***California Defendants & Tenet***)

244. Plaintiffs B.K. and N.Z. incorporate paragraphs and herein repeat, reallege, and fully incorporate all allegations in all preceding paragraphs.

245. Desert Regional Medical Center, JFK Memorial Hospital, Desert Care Network ("**California Defendants**") and Tenet are subject to the CMIA pursuant to California Civil Code § 56.10 because they are a "provider of health care" as defined by California Civil Code § 56.06(b); they operate hospitals, provide health care, maintain medical information, offer software to consumers designed to maintain medical information for the purposes of communications with doctors, receipt of diagnosis, treatment, or management of medical conditions.

CLASS ACTION COMPLAINT

246. Section 56.10 states, in pertinent part, that "[n]o provider of health care . . . shall disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization . . . ."

247. Section 56.101 of the CMIA states, in pertinent part, that "[a]ny provider of health care . . . who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties . . ." Cal. Civ. Code §§ 56.10, 56.101.

248. Plaintiffs B.K. and N.Z.'s and California Class Members' Private Information constitutes "medical information" under the CMIA because it consists of individually identifiable information in possession of and derived from a provider of healthcare regarding Plaintiffs' and Class Members' medical history, test results, mental or physical condition, and/or treatment.

249. California Defendants and Tenet violated Cal. Civ. Code § 56.10 because they failed to maintain the confidentiality of Users' medical information, and instead "disclose[d] medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization" by soliciting, intercepting, and receiving Plaintiffs B.K. and N.Z.'s and California Class Members' Private Information, and sharing it with advertisers and for advertising purposes. Specifically, Defendants knowingly, willfully, or negligently disclosed Plaintiffs B.K. and N.Z.'s and California Class Members' medical information to Facebook, allowing Facebook to now advertise and target Plaintiffs and California Class Members, misusing their extremely sensitive Private Information.

250. California Defendants and Tenet violated Cal. Civ. Code § 56.101 because they knowingly, willfully, or negligently failed to create, maintain, preserve, store, abandon, destroy, and dispose of medical information in a manner that preserved its confidentiality by soliciting, intercepting, and receiving Plaintiffs B.K. and N.Z.'s and California Class Members' Private Information, and sharing it with

advertisers and for advertising purposes, Facebook's and California Defendants' and Tenet' financial gain.

251. California Defendants and Tenet intentionally embedded Facebook Pixels, which facilitate the unauthorized sharing of Plaintiffs' and California Class Members' medical information.

252. California Defendants and Tenet violated Cal Civ. Code § 56.36(b) because they negligently released confidential information and records concerning Plaintiffs and California Class Members in violation of their rights under the CMIA.

253. As a direct and proximate result of California Defendants' and Tenet's misconduct, Plaintiffs B.K. and N.Z. and California Class Members had their private communications containing information related to their sensitive and confidential Private Information intercepted, disclosed, and used by third parties.

254. As a result of California Defendants' and Tenet's unlawful conduct, Plaintiffs B.K. and N.Z. and the California Class Members suffered an injury, including violation to their rights of privacy, loss of the privacy of their Private Information, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

255. Plaintiffs B.K. and N.Z. and California Class Members are entitled to: (a) nominal damages of $1,000 per violation; (b) actual damages, in an amount to be determined at trial; (c) reasonable attorneys' fees, and costs.

## **COUNT TWO**

## **VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ("CIPA"), CAL. PENAL CODE § 630, *et seq.***

### *(On behalf of California Plaintiffs and the California Class against California Defendants and Tenet)*

256. Plaintiffs B.K. and N.Z. repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

257. Each Defendant is a person for purposes of Cal. Penal Code §631.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

258. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following: (1) "intentionally taps, or makes any unauthorized connection…with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within [the state of California]," (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained," or (4) ***aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section***" (emphasis added).

259. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

260. California Defendants' and Tenet's Web Properties are a "machine, instrument, contrivance, or ... other manner" used to engage in the prohibited conduct at issue here.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

261. At all relevant times, California Defendants and Tenet entered into contracts with Facebook, in order to track certain activities on their Web Properties. California Defendants and Tenet allowed Facebook to intercept and otherwise track Users' clicks, communications, searches, and other User activities. California Defendants and Tenet activated Facebook Pixel tracking tools, allowing Facebook to intentionally tap, and make unauthorized connections with, the lines of internet communication between Plaintiffs B.K. and N.Z. and California Class Members on the one hand, and California Defendants' and Tenet's Web Properties on the other hand, without consent of all parties to the communication.

262. At all relevant times, by using the Facebook Pixel, Facebook willfully and without the consent of Plaintiffs B.K. and N.Z. and California Class Members, read or attempted to learn the contents or meaning of electronic communications of Plaintiffs B.K. and N.Z. and putative California Class Members on California Defendants' and Tenet's Web Properties. This occurred while the electronic communications were in transit or passing over any wire, line, or cable, or were being sent from or received at any place within California. Facebook intercepted Plaintiffs B.K. and N.Z.'s and California Class Members' communications – including the very terms and phrases they typed into the search bar – without their authorization or consent.

263. By embedding Facebook Pixels on their websites, California Defendants and Tenet aided, agreed with, employed, and conspired with Facebook to wiretap consumers to California Defendants' and Tenet's Web Properties using the Facebook Pixel snipped codes and to accomplish the wrongful conduct at issue here.

264. Plaintiffs B.K. and N.Z. and California Class Members did not consent to the interception, reading, learning, recording, and collection of their electronic communications with California Defendants and Tenet. Accordingly, the interception was unlawful and tortious.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

265.  The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

266.  Unless enjoined, California Defendants and Tenet will continue to commit the illegal acts alleged here. Plaintiffs B.K. and N.Z. continue to be at risk because they frequently use California Defendants' and Tenet's Web Properties to search for information about medical products, health conditions or services. Plaintiffs B.K. and N.Z. continue to desire to use the Defendants' Web Properties for that purpose, including but not limited to investigating health conditions (e.g., diabetes), diagnoses (e.g., COVID-19), procedures, test results, treatment status, the treating physician, medications, and/or allergies.

267.  Plaintiffs B.K. and N.Z. and California Class Members may or are likely to visit California Defendants' and Tenet's Web Properties in the future but have no practical way of knowing whether their website communications will be collected, viewed, accessed, stored, and used by Facebook.

268.  Plaintiffs B.K. and N.Z. and California Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT THREE
## VIOLATION OF THE UNFAIR COMPETITION LAW ("UCL")
## CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*
### *(On behalf of California Plaintiffs and the California Class*
### *against all Defendants)*

269.  Plaintiffs B.K. and N.Z. herein repeat, reallege, and fully incorporate all allegations in all preceding paragraphs.

### A. Unlawful Prong

270.  Defendants' conduct as alleged herein was unfair within the meaning of the UCL. The unfair prong of the UCL prohibits unfair business practices that either

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

offend an established public policy or that are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

271. Defendants' conduct, as alleged herein, was also fraudulent within the meaning of the UCL. Defendants made deceptive misrepresentations and omitted known material facts in connection with the solicitation, interception, disclosure, and use of Plaintiffs' and California Class Members' Private Information. Defendants actively concealed and continued to assert misleading statements regarding their protection and limitation on the use of the Private Information. Meanwhile, Defendants were collecting and sharing Plaintiffs' and California Class Members' Private Information without their authorization or knowledge to profit off of the information, and deliver targeted advertisements to Plaintiffs and California Class Members, among other unlawful purposes.

272. Defendants' conduct, as alleged herein, was unlawful within the meaning of the UCL because they violated regulations and laws as discussed herein, including but not limited to HIPAA, Section 5 of the Federal Trade Commission Act ("**FTCA**"), 15 U.S.C. § 45, and the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq*.

273. Had Plaintiffs B.K. and N.Z. and California Class Members known Defendants would disclose and misuse their Private Information in contravention of Defendants' representations, they would never have used Defendants websites or their MyChart portal and would not have shared their Private Information.

274. Defendants' unlawful actions in violation of the UCL have caused and are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

275. As a direct and proximate result of Defendants' misconduct, Plaintiffs B.K. and N.Z. and California Class Members had their private communications

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

containing information related to their sensitive and confidential Private Information intercepted, disclosed, and used by third parties, including but not limited to Facebook.

276. As a result of Defendants' unlawful conduct, Plaintiffs B.K. and N.Z. and California Class Members suffered an injury, including violation to their rights of privacy, loss of value and privacy of their Private Information, loss of control over their sensitive personal information, and suffered embarrassment and emotional distress as a result of this unauthorized sharing of information.

### B. Unfair Prong

277. Defendants engaged in unfair business practices by disclosing Plaintiffs B.K. and N.Z.'s and California Class Members' Private Information to unrelated third parties, including Facebook, without prior consent despite their promises to keep such information confidential.

278. Defendants' unfair business practices included widespread violations of Plaintiffs B.K. and N.Z.'s and California Class Members' rights to privacy, including their failure to inform the public that using its Web Properties would result in disclosure of highly private information to third parties.

279. Because Defendants are in the business of providing medical and mental healthcare services, Plaintiffs B.K. and N.Z. and California Class Members relied on Defendants to advise them of any potential disclosure of their Private Information.

280. Plaintiffs B.K. and N.Z. and California Class Members were entitled to assume, and did assume, that Defendants would take appropriate measures to keep their Private Information secure and confidential. At no point did Plaintiffs expect to become a commodity on which Defendants and Facebook would trade.

281. Plaintiffs B.K. and N.Z. and the California Class Members reasonably relied upon the representations Defendants made in their Privacy Policy, including those representations concerning the confidentiality of Private Information, such as patient health information.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

282. Defendants were in sole possession of and had a duty to disclose the material information that Plaintiffs B.K. and N.Z.'s and California Class Members' private information was being shared with third parties.

283. Had Defendants disclosed that they shared Private Information with third parties, Plaintiffs B.K. and N.Z. and the California Class would not have used Defendants' services at the level they did.

284. The harm caused by the Defendants' conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendants' legitimate business interests other than Defendants' conduct described herein.

285. Defendants' acts, omissions and conduct also violate the unfair prong of the UCL because those acts, omissions and conduct offended public policy (including the aforementioned federal and state privacy statutes and state consumer protection statutes, such as HIPAA), and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs B.K. and N.Z. and California Class Members.

286. As a direct result of Plaintiffs B.K. and N.Z.'s and California Class Members' reliance on Defendants' representations that Defendants would keep their Private Information confidential and Defendants' express representation that they would not share Private Information with third parties without the Users' express consent, Plaintiffs B.K. and N.Z. and California Class Members shared highly sensitive information through their use of the Web Properties, causing them to suffer damages when Defendants disclosed said information to a third party.

287. As a direct result of Defendants' violations of the UCL, Plaintiffs B.K. and N.Z. and California Class Members have suffered injury in fact and lost money or property, including but not limited to payments to Defendants and/or other valuable consideration. The unauthorized access to Plaintiffs B.K. and N.Z.'s and California

CLASS ACTION COMPLAINT

Class Members' private and personal data also diminished the value of that Private Information.

288. As a direct result of its unfair practices, Defendants has been unjustly enriched and should be required to make restitution to Plaintiffs B.K. and N.Z. and California Class Members pursuant to §§ 17203 and 17204 of the California Business & Professions Code, disgorgement of all profits accruing to Defendants because of their unlawful business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5) and injunctive or other equitable relief.

## COUNT FOUR
## INVASION OF PRIVACY UNDER CALIFORNIA'S
## CONSTITUTION, ART. I, § 1.
### *(On behalf of California Plaintiffs and the California Class against California Defendants and Tenet)*

289. Plaintiffs B.K. and N.Z. repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

290. Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const., Art. I, § 1.

291. The right to privacy in California's Constitution creates a private right of action against private and government entities.

292. Plaintiffs B.K. and N.Z. and California Class Members have and continue to have a reasonable expectation of privacy and interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without their knowledge, authorization, or consent.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

293. At all relevant times, by using Facebook's Meta Pixel to record and communicate patients' FIDs and other individually identifying information alongside their confidential medical communications, the California Defendants and Tenet invaded Plaintiffs B.K. and N.Z.'s and California Class Members' privacy rights under the California Constitution.

294. Plaintiffs B.K. and N.Z. and California Class Members had a reasonable expectation that their communications, identity, health information, and other data would remain confidential, and that the California Defendants and Tenet would not install wiretaps on their Web Properties to secretly transmit communications to a third party.

295. Plaintiffs B.K. and N.Z. and California Class Members did not authorize the California Defendants and Tenet to record and transmit Plaintiffs B.K. and N.Z.'s and California Class Members' Private Information – including private medical communications alongside their personally identifiable health information – to a third party, Facebook. *See* Figures 2-17 of Defendants' Web Properties above.

296. This invasion of privacy is serious in nature, scope, and impact because it relates to patients' private medical communications. Moreover, it constitutes an egregious breach of the societal norms underlying the privacy right.

297. As a result of the California Defendants' and Tenet's actions, Plaintiffs B.K. and N.Z. and California Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

298. Plaintiffs B.K. and N.Z. and California Class Members have been damaged as a direct and proximate result of the California Defendants' and Tenet's invasion of their privacy and are entitled to just compensation, including monetary damages.

299. Plaintiffs B.K. and N.Z. and California Class Members seek appropriate relief for their injuries, including but not limited to damages that will reasonably compensate Plaintiffs B.K. and N.Z. and Class Members for the harm to their privacy

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

interests as a result of the intrusion(s) upon Plaintiffs B.K. and N.Z.'s and California Class Members' privacy.

300. Plaintiffs B.K. and N.Z. and California Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of the California Defendants' and Tenet's conduct, injuring Plaintiffs and California Class Members in conscious disregard of their rights.

301. Plaintiffs B.K. and N.Z. seek all other relief as the Court may deem just, proper, and available for invasion of privacy under the California Constitution, on behalf of the California Class.

**COUNT FIVE**

**INVASION OF PRIVACY**

**INTRUSION UPON SECLUSION**

*(On behalf Plaintiffs and the Nationwide Class against all Defendants)*

302. Plaintiffs herein repeat, reallege, and fully incorporate all allegations in all preceding paragraphs.

303. Plaintiffs and Nationwide Class Members had a reasonable and legitimate expectation of privacy in the Private Information that Defendants failed to adequately protect against disclosure from unauthorized parties.

304. Defendants owed a duty to Plaintiffs and Nationwide Class Members to keep their Private Information confidential.

305. Defendants failed to protect and release to unknown and unauthorized third parties the Private Information of Plaintiffs and Nationwide Class Members.

306. By failing to keep Plaintiffs' and Nationwide Class Members' Private Information confidential and safe from misuse, Defendants knowingly sharing highly sensitive Private Information with Facebook, Defendants unlawfully invaded Plaintiffs' and Nationwide Class Members' privacy by, among others: (i) intruding into Plaintiffs' and Nationwide Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) failing to adequately secure their

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

Private Information from disclosure to unauthorized persons; and (iii) enabling and facilitating the disclosure of Plaintiffs' and Class Members' Private Information without authorization or consent.

307. Plaintiffs' and Nationwide Class Members' expectation of privacy was and is especially heightened given Defendants' consistent representations that Users' information would remain confidential and would not be disclosed to anyone without User consent.

308. Defendants' privacy policy specifically provides, "The Facility is required by law to ***protect the privacy of your medical information***…" and "Your written authorization ("Your Marketing Authorization") also must be obtained prior to using your PHI to send you any marketing materials."[64]

309. Defendants knew, or acted with reckless disregard of the fact that a reasonable person in Plaintiffs' and Nationwide Class Members' position would consider their actions highly offensive.

310. Defendants' unauthorized surreptitious recording, monitoring, and sharing of the Users' activities, searches, researching diagnosis and treatment, searching for doctors and medical specialists violated expectations of privacy that have been established by social norms.

311. As a proximate result of such unauthorized disclosures, Plaintiffs' and Nationwide Class Members' reasonable expectations of privacy in their Private Information was unduly frustrated and thwarted and caused damages to Plaintiffs and Nationwide Class Members.

312. Plaintiffs and Nationwide Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional natura of Defendants' conduct, directed at injuring Plaintiffs and Nationwide Class Members in conscious disregard of their rights.

---

[64] *Notice of Privacy Practices*, *supra* note 35.

CLASS ACTION COMPLAINT

313. Plaintiffs seek injunctive relief on behalf of the Nationwide Class, restitution, as well as any and all other relief that may be available at law or equity. Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause irreparable injury to Plaintiffs and Nationwide Class Members. Plaintiffs and Nationwide Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the Nationwide Class.

## COUNT SIX

## NEGLIGENCE

### *(On behalf Plaintiffs and the Nationwide Class against all Defendants)*

314. Plaintiffs herein repeat, reallege, and fully incorporate all allegations in all preceding paragraphs.

315. Defendants owed a duty to Plaintiffs and the Nationwide Class to exercise due care in collecting, storing, safeguarding, and preventing any disclosure of their Private Information. This duty included but was not limited to: (a) preventing Plaintiffs' and Nationwide Class Members' Private Information from being to be disclosed to unauthorized third parties; and (b) destroying Plaintiffs' and Nationwide Class Members' Private Information within an appropriate amount of time after it was no longer required by Defendants.

316. Defendants' duties to use reasonable care arose from several sources, including those described below. Defendants had a common law duty to prevent foreseeable harm to others, including Plaintiffs and Nationwide Class Members, who were the foreseeable and probable victims of any data misuse, such as disclosure of Private Information to unauthorized parties.

317. Defendants had a special relationship with Plaintiffs and Nationwide Class Members, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants were in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs

71

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

and Nationwide Class Members resulting from unauthorized disclosure of their Private Information to third parties such as Facebook. Plaintiffs and Nationwide Class Members were compelled to entrust Defendants with their Private Information. At relevant times, Plaintiffs and Nationwide Class Members understood that Defendants would take adequate data storage practices to safely store their Private Information. Only Defendants had the ability to protect Plaintiffs' and Nationwide Class Members' Private Information collected and stored on Defendants' websites.

318. Defendants' duty to use reasonable measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of [PHI]." 45 C.F.R. § 164.530(c)(1).

319. Defendants' conduct as described above constituted an unlawful breach of their duty to exercise due care in collecting, storing, and safeguarding Plaintiffs' and the Nationwide Class Members' Private Information by failing to protect this information.

320. Plaintiffs and Nationwide Class Members trusted Defendants and in doing so provided Defendants with their Private Information, based upon Defendants' representations that they would "take reasonable, industry standard precautions to keep the Sites and their systems secure and to prevent personal information from being made available to unauthorized persons or entities."[65] Defendants failed to do so.

321. Defendants breached their duty in this relationship to collect and safely store Plaintiffs' and Nationwide Class Members' Private Information.

322. Plaintiffs' and the Nationwide Class Members' Private Information would have remained private and secure had it not been for Defendants' wrongful and negligent breach of their duties. Defendants' negligence was, at least, a substantial

---

[65] *Notice of Privacy Practices*, *supra* note 35.

CLASS ACTION COMPLAINT

factor in causing Plaintiffs' and Nationwide Class Members' Private Information to be improperly accessed, disclosed, and otherwise compromised, and in causing Plaintiffs and the Nationwide Class Members other injuries because of the unauthorized disclosures.

323. The damages suffered by Plaintiffs and the Nationwide Class Members were the direct and reasonably foreseeable result of Defendants' negligent breach of their duties to maintain Users' Private Information. Defendants knew or should have known that their unauthorized disclosure of highly sensitive Private Information was a breach of their duty to collect and safely store such information.

324. Defendants' negligence directly caused significant harm to Plaintiffs and the Nationwide Class. Specifically, Plaintiffs and Nationwide Class Members are now subject to their sensitive information being accessed by unauthorized parties, which may lead to significant harms.

325. Plaintiffs hereby incorporate all other paragraphs as if fully stated herein.

326. Defendants had a fiduciary duty to protect the confidentiality of their communications with Plaintiffs and Nationwide Class Members by virtue of the explicit privacy representations Defendants made on their websites to Plaintiffs and members of the Nationwide Class.

327. Defendants had information relating to Plaintiffs and Nationwide Class Members that they knew or should have known to be confidential.

328. Plaintiffs' and Nationwide Class Members' communications with Defendants about sensitive Private Information and their status as patients of Defendants were not matters of general knowledge.

329. Defendants breached their fiduciary duty of confidentiality by designing their data protection systems in a way to allow for a data breach of a massive caliber.

330. At no time did Plaintiffs or Nationwide Class Members give informed consent to Defendants' conduct.

CLASS ACTION COMPLAINT

331. As a direct and proximate cause of Defendants' actions, Plaintiffs and Nationwide Class Members suffered damage in that the information they intended to remain private is no longer so and their Private Information was disclosed to, tracked, and intercepted by third-party Internet tracking companies, including Facebook, without their knowledge or consent.

## COUNT SEVEN

## VIOLATION OF FLORIDA SECURITY OF COMMUNICATIONS ACT
### ("FSCA") Fla. Stat. §§ 934.01 *et seq.*
### *(On behalf of Plaintiff R.P. and the Florida Class*
### *against Florida Defendants and Tenet)*

332. Plaintiff R.P. repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the Florida Class.

333. Where there is a reasonable expectation of privacy, absent the consent of all parties, the FSCA prohibits, among other things, the intentional interception or procurement of another person to intercept any wire, oral or electronic communication. Fla. Stat. §§ 934.03(1), 934.03(2)(d).

334. Any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, a wire, electronic or oral communication in violation of the FSCA is subject to a civil action for, among other things: (a) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (b) punitive damages; and (c) reasonable attorneys' fees and other litigation costs reasonably incurred. Fla. Stat. § 934.10.

335. Under the FSCA, "wire communication" means "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception including the use of such connection in a switching station furnished or operated by any person engaged in providing or operating such facilities

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

74

for the transmission of intrastate, interstate, or foreign communications or communications affecting intrastate, interstate, or foreign commerce." Fla. Stat. § 934.02(1).

336. Under the FSCA, "intercept" is defined as the "[a]ural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Fla. Stat. § 934.02(3).

337. Under the FSCA, "contents" in the context of "any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication." Fla. Stat. § 934.02(7).

338. Under the FSCA, "person" is defined as, inter alia, "any individual, partnership, association, joint stock company, trust, or corporation." Fla. Stat. § 934.02(5).

339. With some exclusions that do not impact the Florida Plaintiff's claims, under the FSCA, "electronic communication" is defined as "[a]ny transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system that affects intrastate, interstate, or foreign commerce . . ." Fla. Stat. 934.02(12).

340. The FSCA prohibits: (1) the interception or procurement of another to intercept any wire, oral or electronic communication; (2) the intentional disclosure of the contents of any wire, oral or electronic communication that the discloser knew or should have known was obtained through the interception of a wire, oral or electronic communication; and (3) the intentional use of the contents of any wire, oral or electronic communication that the discloser knew or should have known was obtained through the interception of a wire, oral or electronic communication. Fla. Stat. 934.03(1).

341. Any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, a wire, oral or electronic communication in violation of

75

CLASS ACTION COMPLAINT

the FSCA is subject to a civil action for: (1) actual damages, not less than liquidated damages computed at a rate of $100 per day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. Fla. Stat. 934.10.

342. At all relevant times, Defendants Pam Beach Gardens Medical Center, Palm Beach Health Network ("**Florida Defendants**") and Tenet procured Facebook to contemporaneously track and intercept Plaintiff R.P.'s and Florida Class Members' internet communications—communications include communications with doctors, receipt of diagnosis, treatment, or management of medical conditions—while navigating the Web Properties.

343. The Florida Defendants and Tenet procured Facebook to contemporaneously intercept these communications without authorization and consent from Plaintiff R.P. and Florida Class Members.

344. The Florida Defendants and Tenet, when procuring Facebook to intercept Plaintiff R.P.'s and Florida Class Members' communications, intended Facebook to contemporaneously learn the meaning of the content of Plaintiff R.P.'s and Florida Class Members' communications with Defendant.

345. Plaintiff R.P. and Florida Class Members had a justified and reasonable expectation under the circumstances that their electronic communications would not be intercepted.

346. Plaintiff R.P. and Florida Class Members were not aware that their electronic communications were being intercepted by Facebook and did not consent to the interception.

347. In connection with procuring Facebook's contemporaneous interception of Plaintiff R.P.'s and Florida Class Members' communications with the Florida Defendants and Tenet, the Florida Defendants and Tenet embedded the Meta Pixel on the Web Properties.

CLASS ACTION COMPLAINT

348. The Meta Pixel constitutes an electronic or other device through which the contents of a wire, oral and electronic communication can be acquired, including the contents of Plaintiff R.P.'s and Florida Class Members' communications with the Florida Defendants and Tenet via the Web Properties.

349. The Florida Defendants' and Tenet's disclosures of Plaintiffs' and Florida Class Members' Private Information were made without their knowledge, consent, or authorization, and were unprivileged.

350. The harm arising from a breach of provider-patient confidentiality includes erosion of the essential confidential relationship between the healthcare provider and the patient.

351. The Florida Defendants and Tenet willfully, knowingly, intentionally, and voluntarily engaged in the aforementioned acts when they incorporated the Meta Pixel on their Web Properties, with knowledge of the Pixel's purpose and functionality, and further utilized the benefits that Pixel provides website owners to the detriment of Plaintiff R.P. and the Florida Class Members.

352. Plaintiff R.P. and the Florida Class Members could not have avoided the harms described herein through the exercise of ordinary diligence.

353. As a result of the Florida Defendants' and Tenet's actions, Plaintiff R.P. and Florida Class Members have suffered harm and injury.

354. The Florida Defendants' and Tenet's unlawful conduct is ongoing. Thus, injunctive and declaratory relief is necessary and appropriate to prevent further violations.

355. Plaintiff R.P. and Florida Class Members have been damaged as a direct and proximate result of the Florida Defendants' and Tenet's invasion of their privacy and are entitled to just compensation, including monetary damages.

356. Plaintiff R.P. and the Florida Class Members seek appropriate relief for these injuries, including but not limited to damages that will reasonably compensate

them for the harm to their privacy interests as a result of the Florida Defendants' and Tenet's violation of the Florida Security of Communications Act.

357.  Plaintiff R.P. and Florida Class Members seek all other relief as the Court may deem just and proper, including all available monetary relief, injunctive and declaratory relief, any applicable penalties, and reasonable attorneys' fees and costs.

## COUNT EIGHT

## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. §§ 501.201, *et seq*.

### *(On behalf of Plaintiff R.P. and the Florida Class against Florida Defendants and Tenet)*

358. Plaintiff R.P. repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the Florida Class.

359. Florida Statutes Section 501.204 provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."

360.  An act or practice is "deceptive" if it is likely to mislead a person, acting reasonably in the circumstances, to the person's detriment.

361.  An act or practice is "unfair" if it "offends established public policy" and is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). "[A]n unfair practice is one which causes substantial injury to a consumer which the consumer could not have reasonably avoided and which is not outweighed by countervailing benefits to the consumer or to competition." *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017).

362. FDUTPA is, "a consumer protection law intended to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

the course of any trade or commerce." *Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1319 (S.D. Fla. 2004); FLA. STAT. § 501.202.  In the interests of consumer protection, FDUTPA should be "liberally construed."  *Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001).

363. Plaintiff R.P. and the Florida Class are "consumers" and "interested persons" as defined in Fla. Stat. 501.203(6)- (7).

364. The Florida Defendants and Tenet engaged in unfair business practices by disclosing Plaintiff R.P.'s and Florida Class Members' Private Information to unrelated third parties, including Facebook, without prior consent despite their promises to keep such information confidential.

365. The unfair business practices by the Florida Defendants and Tenet included widespread violations of Plaintiff R.P.'s and Florida Class Members' rights to privacy, including their failure to inform the public that using their Web Properties would result in disclosing very private information to a third party.

366. Further, the Florida Defendants and Tenet failed to issue a notice to Plaintiff R.P. and Florida Class Members' that their Private Information was impermissibly being disclosed to an unauthorized third party. In fact, the Florida Defendants and Tenet *never* disclosed to Plaintiff R.P. or Florida Class Members that they shared their sensitive and confidential communications and Private Information with Facebook and other third parties.[66]

---

[66]    In contrast to Defendants, in recent months several medical providers which have installed the Meta Pixel on their web properties have provided their patients with notices of data breaches caused by the Pixel transmitting PHI to third parties. *See*, *e.g.*, *Cerebral, Inc. Notice of HIPAA Privacy Breach*, available at https://cerebral.com/static/hippa_privacy_breach-4000c6eb21449c2ecd8bd13706750cc2.pdf (last visited June 5, 2023); Annie Burky, *Advocate Aurora says 3M patients' health data possibly exposed through tracking technologies*, FIERCE HEALTHCARE (Oct. 20, 2022), https://www.fiercehealthcare.com/health-tech/advocate-aurora-health-data-breach-revealed-pixels-protected-health-information-3; *Novant Health Notifies Patients of Potential Data Privacy Incident*, PR NEWSWIRE (August 19, 2022), https://www.prnewswire.com/news-releases/novant-health-notifies-patients-of-potential-data-privacy-incident-301609387.html.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

367. Plaintiff R.P. and the Florida Class Members reasonably relied upon the representations the Florida Defendants and Tenet made in their Privacy Policy, including those representations concerning the confidentiality of patient information.

368. The Florida Defendants and Tenet were in sole possession of and had a duty to disclose the material information that Plaintiff R.P.'s and Florida Class Members' Private Information was being shared with a third party.

369. Had the Florida Defendants and Tenet disclosed that they shared Private Information with third parties, Plaintiff R.P. and the Florida Class would not have used their services at the level that they did.

370. As a direct and proximate cause of the Florida Defendants' and Tenet's actions, Plaintiff R.P. and Florida Class Members suffered damage in that the information they intended to remain private is no longer so and their Private Information was disclosed to, tracked, and intercepted by the third-party Internet tracking companies without their knowledge or consent.

371. The harm caused by the Florida Defendants' and Tenet's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further the Florida Defendants' and Tenet's legitimate business interests other than the wrongful conduct described herein.

372. The Florida Defendants and Tenet knew or should have known of their deceptive, unfair, and unlawful conduct of disclosing Plaintiff R.P.'s and Florida Class Members' Private Information to unauthorized third parties.

373. The Florida Defendants and Tenet have exclusive knowledge about the integrity of their representations to keep users' information confidential and yet the Florida Defendants and Tenet failed to maintain Plaintiff R.P.'s and Florida Class Members' privacy, and protect their Private Information from disclosure to third parties, including Facebook.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

374. All of the conduct alleged herein occurs and continues to occur in the Florida Defendants' and Tenet's businesses and is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

375. Pursuant to Florida Statutes Section 501.211(2), Plaintiff R.P. and the Florida Class seek actual damages, plus attorneys' fees and costs.

376. Pursuant to Florida Statutes Section 501.211(1), Plaintiff R.P. and the Florida Class seek declaratory judgment that the above-described wrongful acts violate the FDUTPA.

377. Plaintiff R.P. and the Florida Class also seek injunctive relief in the form of an order against the Florida Defendants and Tenet to prevent them from sharing Plaintiff R.P.'s and the Florida Class Members' Private Information among themselves and other third parties.

## COUNT NINE
## BREACH OF IMPLIED CONTRACT
### *(On behalf of Plaintiffs and the Nationwide Class against all Defendants)*

378. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein and bring this claim individually and on behalf of the proposed Nationwide Class.

379. When Plaintiffs and Nationwide Class Members provided their Private Information to Defendants in exchange for services, they entered into implied contracts by which Defendants agreed to safeguard and not disclose such Private Information without consent.

380. Plaintiffs and Nationwide Class Members accepted Defendants' offers of services and provided their Private Information to Defendants via the Web Properties.

381. Plaintiffs and Nationwide Class Members would not have entrusted Defendants with their Private Information in the absence of an implied contract between them that included Defendants' promise not to disclose Private Information without consent.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

382.  Defendants breached these implied contracts by disclosing Plaintiffs' and Nationwide Class Members' Private Information to third parties, including Facebook.

383.  As a direct and proximate result of Defendants' breaches of these implied contracts, Plaintiffs and Nationwide Class Members sustained damages as alleged herein. Plaintiffs and Nationwide Class Members would not have used Defendants' services, or would have paid substantially less for these services, had they known their Private Information would be disclosed.

384.  Plaintiffs and Nationwide Class Members are entitled to compensatory and consequential damages as a result of Defendants' breach of implied contract.

## COUNT TEN
## LARCENY/RECEIPT OF STOLEN PROPERTY (VIOLATION OF CALIFORNIA PENAL CODE § 496(a) and (c)
### *(On behalf of California Plaintiffs and California Class against California Defendants and Tenet)*

385.  Plaintiffs B.K. and N.Z. repeat the allegations contained in the foregoing paragraphs as if fully set forth herein and bring this claim individually and on behalf of the proposed California Class.

386. Courts recognize that internet users have a property interest in their personal information and data. *See Calhoun v. Google, LLC,* 526 F. Supp. 3d 605, at *21 (N.D. Cal. Mar. 17, 2021) (recognizing property interest in personal information and rejecting Google's argument that "the personal information that Google allegedly stole is not property"); *In re Experian Data Breach Litigation,* 2016 U.S. Dist. LEXIS 184500, at *5 (C.D. Cal. Dec. 29, 2016) (loss of value of PII is a viable damages theory); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.,* 440 F. Supp. 3d 447, 460 (D. Md. 2020) ("The growing trend across courts that have considered this issue is to recognize the lost property value of this [personal] information."); *Simona Opris v. Sincera,* 2022 U.S. Dist. LEXIS 94192, at *20 (E.D. Pa. 2022) (collecting cases).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

387. Cal. Penal Code §496(c) permits "any" person who has been injured by a violation of section 496(a) to recover three times the amount of actual damages, costs of suit and attorney's fees in a civil suit.

388. Penal Code § 496(a) creates an action against "any" person who (1) receives "any" property that has been stolen or obtained in any manner constituting theft, knowing the property to be stolen or obtained, or (2) conceals, sells, withholds, or aids in concealing or withholding "any" property from the owner, knowing the property to be so stolen or illegally obtained.

389. Under Penal Code § 1.07(a)(38), "person" means "an individual, corporation, or association." Thus, California Defendants and Tenet are persons under section 496(a).

390. As set forth herein, the Users' Private Information was stolen or obtained by theft, without limitation, under Penal Code §484, by false or fraudulent representations or pretenses. At no point did the California Defendants and Tenet have the Plaintiff B.K.'s or N.Z.'s consent to duplicate their searches, and send them to Facebook.

391. California Defendants and Tenet meet the grounds for liability of section 496(a) because they, and each of them:

    a.    knew the Private Information was stolen or obtained by theft and/or false pretenses; and, with such knowledge,

    b.    transmitted such information to unauthorized third parties, like Facebook.

392. California Defendants and Tenet violated the second ground for liability of section 496(a) because they, and each of them:

    a.    knew the Private Information was stolen or obtained by theft; and, with such knowledge,

    b.    concealed, withheld, or aided in concealing or withholding said data from their rightful owners by unlawfully tracking the data and disclosing it to unauthorized third parties, like Facebook.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

393.  As a direct and proximate result of the acts and omissions described above, Plaintiff B.K. and N.Z. and California Class Members were injured by the California Defendants' and Tenet's violations of section 496(a).

394.  Pursuant to California Penal Code § 496(c), the California Plaintiffs seek actual damages, treble damages, costs of suit, and reasonable attorneys' fees.

## COUNT ELEVEN

## UNJUST ENRICHMENT

*(On behalf of Plaintiffs and Nationwide Class against all Defendants)*

395.  Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

396.  By virtue of the unlawful, unfair and deceptive conduct alleged herein, Defendants knowingly realized hundreds of millions of dollars in revenue from the use of the Private Information of Plaintiffs and Classes Members for profit by way of targeted advertising related to Users' respective medical conditions and treatments sought.

397.  This Private Information, the value of the Private Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by Plaintiffs and Class Members.

398.  As a result of Defendants' conduct, Plaintiffs and Class Members suffered actual damages in the loss of value of their Private Information and the lost profits from the use of their Private Information.

399.  It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) it has obtained from and/or at the expense of Plaintiffs and Class Members.

400.  Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by Plaintiffs and Class Members through Defendants' obtaining the Private Information and the value thereof, and profiting

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

from the unlawful, unauthorized and impermissible use of the Private Information of Plaintiffs and Class Members.

401.  Plaintiffs and Class Members are therefore entitled to recover the amounts realized by Defendants at the expense of Plaintiffs and Class Members.

402.  Plaintiffs and the Class Members have no adequate remedy at law and are therefore entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the Proposed Classes defined herein, respectfully request:

A.   That this Action be maintained as a Class Action, that Plaintiffs be named as Class Representatives of the Class, that the undersigned be named as Lead Class Counsel of the Class, and that notice of this Action be given to Class Members;

B.   That the Court enter an order:

a. Preventing Defendants from sharing Plaintiffs' and Class Members' Private Information among themselves and other third parties;

b. Requiring Defendants to alert and/or otherwise notify all users of their websites and portals of what information is being collected, used, and shared;

c. Requiring Defendants to provide clear information regarding their practices concerning data collection from the users/patients of Defendants' Web Properties, as well as uses of such data;

d. Requiring Defendants to establish protocols intended to remove all personal information which has been leaked to

CLASS ACTION COMPLAINT

Facebook and/or other third parties, and request Facebook/third parties to remove such information;

e. Requiring Defendants to provide an opt out procedures for individuals who do not wish for their information to be tracked while interacting with Defendants' Web Properties;

f. Mandating the proper notice be sent to all affected individuals, and posted publicly;

g. Requiring Defendants to delete, destroy, and purge the Private Information of Users unless Defendants can provide reasonable justification for the retention and use of such information when weighed against the privacy interests of Users;

h. Requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted.

C. That the Court award Plaintiffs and the Class Members damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

D. That the Court issue appropriate equitable and any other relief (including monetary damages, restitution, and/or disgorgement) against Defendants to which Plaintiffs and the Class are entitled, including but not limited to restitution and an Order requiring Defendants to cooperate and financially support civil and/or criminal asset recovery efforts;

E. Plaintiffs and the Class be awarded with pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law);

F. Plaintiffs and the Class be awarded with the reasonable attorneys' fees and costs of suit incurred by their attorneys;

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

G.    Plaintiffs and the Class be awarded with treble and/or punitive damages insofar as they are allowed by applicable laws; and

H.    Any and all other such relief as the Court may deem just and proper under the circumstances.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial on all triable issues.

DATED: June 23, 2023                    **CLARKSON LAW FIRM, P.C.**

*/s/ Yana Hart*
Ryan Clarkson, Esq.
Yana Hart, Esq.
Tiara Avaness, Esq.
Valter Malkhasyan, Esq.
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (231) 788-4070

87
CLASS ACTION COMPLAINT