**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Tiara Avaness (SBN 343928)
*tavaness@clarksonlawfirm.com*
Valter Malkhasyan (SBN 348491)
*vmalkhasyan@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**ALMEIDA LAW GROUP LLC**
John R. Parker, Jr. (SBN 257761)
*jrparker@almeidalawgroup.com*
3550 Watt Avenue, Suite 140
Sacramento, CA 95821
Tel: (916) 616-2936

*Counsel for Plaintiffs & the Proposed Classes*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.K., N.Z., individually, and on behalf of all others similarly situated, | Case No.: 2:23-cv-05021-SPG-PD |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| DESERT CARE NETWORK, DESERT REGIONAL MEDICAL CENTER, INC., JFK MEMORIAL HOSPITAL, INC., and TENET HEALTHCARE CORPORATION, | 1. VIOLATION OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CAL. CIV. CODE SECTION 56, *et seq.* |
| Defendants. | 2. VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C. SECTION 2511(1), *et seq.* |
| | 3. VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C. SECTION 2511(3)(a), *et seq.* |

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4. VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT, CAL. PENAL CODE SECTION 630, *et seq.*

5. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE SECTION 17200, *et seq.*

6. INVASION OF PRIVACY UNDER CALIFORNIA CONSTITUTION

7. INVASION OF PRIVACY - INTRUSION UPON SECLUSION

8. BREACH OF IMPLIED CONTRACT

9. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1750, *et seq.*

10. VIOLATION OF CALIFORNIA PENAL CODE SECTION 496(a) and (c)

11. NEGLIGENCE

12. BREACH OF CONFIDENCE

13. BREACH OF FIDUCIARY DUTY

14. UNJUST ENRICHMENT

**<u>DEMAND FOR JURY TRIAL</u>**

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs B.K. ("**B.K**") and N.Z. ("**N.Z.**") (collectively, "**Plaintiffs**"), individually and on behalf of all others similarly situated bring this action against Defendants: (1) Desert Care Network; (2) Desert Regional Medical Center, Inc. ("**DRMC**"); (3) JFK Memorial Hospital, Inc. ("**JFK Hospital**"); and (4) Tenet Healthcare Corporation ("**Tenet**") (collectively, "**Defendants**").

Plaintiffs' allegations are based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein, after a reasonable opportunity for discovery.

## **INTRODUCTION**

1.     Defendants are hospitals and networks which operate within the vast Tenet Healthcare Corp. systems, providing healthcare services to patients in California.

2.     Tenet is a network of over four hundred sixty-five (465) surgical hospitals and ambulatory surgery centers, sixty-one (61) acute care facilities, and approximately one hundred and ten (110) additional outpatient centers that provide a wide range of medical services to patients across the U.S., including the Desert Care Network.[1]

3.     The Desert Care Network is a network of hospitals and medical centers, including DRMC and JFK Hospital, that offers a range of medical services to patients in the Coachella Valley region. DRMC is a large tertiary hospital that provides advanced medical services to patients in the Coachella Valley area. JFK Hospital affords medical care to patients in the Coachella Valley region.

4.     Defendants have disregarded the privacy rights of millions of visitors to and users of their websites ("**Users**" or "**Class Members**") by intentionally, willfully,

---

[1]     *Who We Are*, TENETHEALTH, www.tenethealth.com/about (last visited September 25, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

recklessly and/or negligently failing to implement adequate and reasonable measures to ensure that that the Users' personally identifiable information ("**PII**") and protected health information ("**PHI**") (collectively, "**Private Information**") was safeguarded. Instead, Defendants allowed unauthorized third parties, including Meta Platforms, Inc. d/b/a Facebook ("**Facebook**") to intercept the Users' clicks, communications on, and visits of Defendants' websites, including https://www.desertcarenetwork.com/ (the "**Websites**"), and their "My Health Rec" Patient Portal, available via Tenet Health at https://cernerhealth.com/ (the "**Portal**") (and collectively with the Websites, the "**Web Properties**").

5.    Unbeknownst to Users and without Users' authorization or informed consent, Defendants installed Facebook's Meta Pixel ("**Meta Pixel**" or "**Pixel**") and other third-party tracking technology, in their Web Properties in order to intercept and send Private Information to third parties such as Facebook and/or Google LLC.

6.    These Pixels collect Users' confidential and private PHI—including but not limited to details about their medical conditions, treatments and providers sought, and appointments—and send it to Facebook without prior, informed consent. These Pixels are snippets of code that track Users as they navigate through a website— logging which pages they visit, each button they click, and what information they provide in online forms. More specifically, the Meta Pixel sends information to Facebook via scripts running in a person's internet browser so each data packet comes labeled with a specific internet protocol ("**IP**") address that can be used in combination with other data to identify an individual or household. Additionally, if the person has an active Facebook account, the IP address is paired with their personal unique Facebook ID ("**FID**"), which Facebook uses to identify that individual.

7.    Plaintiffs and Class Members who visited and used Defendants' Web Properties understandably thought they were communicating with only their trusted healthcare providers, and reasonably believed that their sensitive and private PHI would be guarded with the utmost care. In browsing Defendants' Web Properties –

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

2

FIRST AMENDED CLASS ACTION COMPLAINT

1  be it to make an appointment, locate a doctor with a specific specialty, find sensitive
2  information about their diagnosis, or investigate treatment for their diagnosis –
3  Plaintiffs and Class Members did not expect that every search (including exact words
4  and phrases they typed into Defendants' Web Properties' search bars), page visit, or
5  even their access/interactions on Defendants' online portals would be intercepted,
6  captured, or otherwise shared with Facebook in order to target Plaintiffs and Class
7  Members, in conscious disregard of their privacy rights.

8       8.    Defendants encouraged Plaintiffs and Class Members to access and use
9  various digital tools via their Web Properties to, among other things, receive
10 healthcare services, in order to gain additional insights into their Users, improve their
11 return on marketing dollars and, ultimately, increase their revenue.

12      9.    In exchange for installing the Pixels, Facebook provides Defendants with
13 analytics about the advertisements they have placed as well as tools to target people
14 who have visited their Web Properties.

15      10.   While the information captured and disclosed without permission may
16 vary depending on the Pixel(s) embedded, these "data packets" can be extensive,
17 transmitting, for example, not just the name of the physician and her field of medicine,
18 but also the first name, last name, email address, phone number, zip code, and city of
19 residence entered in the booking form. That data is linked to a specific IP address.
20 The amalgamation of these data points and unique identifying information results in
21 an egregious, unauthorized dissemination of highly sensitive Private Information
22 unique to each individual User.

23      11.   The Meta Pixel can track and log each page a user visits, what buttons they
24 click, as well as specific information they input into a website. In addition, if the
25 person is (or recently has) logged into Facebook when they visit a particular website
26 when a Meta Pixel is installed, some browsers will attach third-party cookies—
27 another tracking mechanism—that allow Facebook to link Pixel data to specific
28 Facebook accounts.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

3

**FIRST AMENDED CLASS ACTION COMPLAINT**

12.    Alarmingly, the use of Meta Pixels on Defendants' Web Properties tracks extremely sensitive PHI such as health conditions (e.g., diabetes), diagnoses (e.g., COVID-19 or AIDS), procedures, test results, treatment status, the treating physician, allergies, and PII.

13.    Plaintiffs had their Private Information, including sensitive medical information, harvested by Facebook through the Meta Pixel tracking tool without their consent when they entered their information into Defendants' Web Properties, and continued to have their privacy violated when their Private Information was used to turn a profit by way of targeted advertising related to their respective medical conditions and treatments sought.

14.    Defendants that knew by embedding the Meta Pixel—a proprietary tracking and advertising tool developed by Facebook—on their Web Properties, they were permitting Facebook to collect and use Plaintiffs' and Class Members' Private Information, including sensitive medical information.

15.    Defendants (or any third parties) did not obtain Plaintiffs' and Class Members' prior consent before sharing their sensitive, confidential communications and Private Information with third parties such as Facebook.

16.    Defendants' actions constitute an extreme invasion of Plaintiffs and Class Members' right to privacy and violate federal and state statutory and common law as well as Defendants' own Privacy Policies that affirmatively and unequivocally state that any personal information provided to Defendants will remain secure and protected.[2]

17.    As a result of Defendants' conduct, Plaintiffs and Class Members have suffered numerous injuries, including: (i) invasion of privacy; (ii) lack of trust in communicating with doctors online; (iii) emotional distress and heightened concerns related to the release of Private Information to third parties;  (iv) loss of the benefit of

---

[2]    *Notice of Privacy Practices*, DESERT CARE NETWORK, https://www.desertcarenetwork.com/notice-of-privacy-practices (last accessed Sept. 25, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

the bargain; (v) diminution of value of the Private Information; (vi) statutory damages and (vii) continued and ongoing risk to their Private Information. Plaintiffs and Class Members have a substantial risk of future harm, and thus injury in fact, due to the continued and ongoing risk of misuse of their Private Information that was shared by Defendants with third parties.

18. Plaintiffs seek, on behalf of themselves and a class of similarly situated persons, to remedy these harms and therefore assert the following statutory and common law claims against Defendants: (i) Violation of the California Confidentiality of Medical Information Act ("**CMIA**"), Cal. Civ. Code § 56, *et seq.*; (ii) Violation of Electronic Communications Privacy Act, 18 U.S.C. §2511(1), *et seq.*; (iii) Violation of Electronic Communications Privacy Act, 18 U.S.C. §2511(3)(a), *et seq.*, (iv) Violation of the California Invasion of Privacy Act ("**CIPA**"), Cal. Penal Code § 630, *et seq.*; (v) Violation of California's Unfair Competition Law ("**UCL**"), Cal. Bus. & Prof. Code § 17200, *et seq.* – Unlawful and Unfair Business Practices; (vi) Invasion of Privacy under the California Constitution; (vii) Common Law Invasion of Privacy; (viii) Common Law Breach of Implied Contract ; (ix) Violation of California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (x) Violation of California Penal Code § 496, *et seq.*; (xi) Negligence; (xii) Common Law Breach of Confidence; (xiii) Common Law Breach of Fiduciary Duty; and (xiv) Common Law Unjust Enrichment.

## **PARTIES**

19. Plaintiff B.K. was a California resident at all relevant times, including at least until May 2022.

20. Plaintiff N.Z. is and at all relevant times was, a California resident.

21. Defendant Desert Care Network is a for-profit organization incorporated in Delaware with its principal place of business located at 1445 Ross Ave., Ste., 1400, Dallas, TX 75202.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

FIRST AMENDED CLASS ACTION COMPLAINT

22.    Defendant Desert Regional Medical Center, Inc., is a for-profit company incorporated in California with its principal place of business located at 14201 Dallas Parkway, Dallas, TX 75254.

23.    Defendant JFK Memorial Hospital, Inc., is a for-profit company incorporated in California with its principal place of business located at 14201 Dallas Parkway, Dallas, TX 75254.

24.    Defendant Tenet Healthcare Corporation is a for-profit company incorporated in Nevada with its principal place of business located at 14201 Dallas Parkway, Dallas, TX 75254.

## JURISDICTION & VENUE

25.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than one hundred (100) putative class members defined below, and minimal diversity exists because a significant portion of putative class members are citizens of a state different from the citizenship of at least one Defendant.

26.    Pursuant to 28 U.S.C. Section 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. The Plaintiffs are citizens of California, reside in this District, and used Defendants' Web Properties within this District. Moreover, Defendants receive substantial compensation from offering healthcare services in this District, and Defendants made numerous misrepresentations which had a substantial effect in this District, including, but not limited to, representing that they will only disclose Private Information provided to them under certain circumstances, ***which do not*** include disclosure of Private Information for marketing purposes.

27.    Defendants are subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendants and California. Defendants are authorized to conduct and are conducting business in California.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

28.     Specifically, this Court has personal jurisdiction over Tenet, because (1) Tenet both purposely directed its activities towards citizens of the state of California and purposely availed itself of the privilege of conducting activities within the state of California, thereby invoking the benefits and protections of California law; (2) Plaintiffs' and the Class Members' claims both arise out of and relate to Tenet Healthcare Corporation's California-related activities.

29.     Tenet owns and operates multiple websites that are accessible and marketed to California citizens, including https://www.tenethealthcentralcoast.com/ and https://www.tenethealthpacificcoast.com/, which contain source code that surreptitiously intercepts, records, and discloses patients' Private Information to third parties without patients' consent. These websites direct California patients and other citizens to do business with Tenet-owned hospitals located in California, including both DRMC hospitals and JFK Hospital. Likewise, Tenet owns Desert Care Network's website, https://www.desertcarenetwork.com/. Further, the websites of the California hospitals all bear a similar format in design and structure, which indicates a centralized control exerted by Tenet over these platforms.

30.     Tenet acted intentionally by installing source code on the above websites that resulted in the unauthorized disclosure of patients' personal health information to third parties. The websites that Tenet owns and operates are specifically targeted at California citizens, to which Tenet's agents and employees direct California patients. The websites are interactive—they contain numerous interactive features: i.e., features where a user can exchange information with the host computer. These interactive features include search functions, "Find A Doctor" functions, bill pay functions, patient portals, and online appointment making features that are designed to encourage users to provide Tenet Healthcare with PHI and PII that Tenet then barters to third parties in violation of numerous California laws. Tenet uses these websites to sell medical services to California citizens. Indeed, the websites are replete with marketing and advertising materials that are designed to encourage

FIRST AMENDED CLASS ACTION COMPLAINT

California citizens to visit and obtain services in California from "Tenet Healthcare" branded hospitals located in California. In other words, Tenet specifically targeted California citizens with websites designed to obtain (and disclose) their personal healthcare information.

31.    Tenet violated California law by surreptitiously intercepting, recording, and disclosing patients' personal health information to Facebook and other third parties for its own commercial gain, including enhanced advertising and website analytics benefits that it received from Facebook in return for access to patients' Private Information. The fact that Tenet targeted California citizens with its websites indicates that Tenet knows about its California user base and that Tenet exploits that base for commercial gain by exploiting California citizens' personal health information without those citizens' knowledge or consent.

32.    Furthermore, Tenet, directly and indirectly, benefits from payments received from patients using its extensive network of hospitals and healthcare facilities in California, including DRMC and JFK Hospital, is inextricably intertwined in the operations and financial gains of its subsidiaries. This direct benefit establishes a causal link between Tenet's financial interests and the actions of its subsidiaries. In fact, Tenet contracts with various insurance companies in California, to ensure that its hospitals are within various California networks, in order to direct California patients to Tenet and its California hospitals. Furthermore, Tenet receives payments from patients and patients' insurance companies in California, for the medical services provided to patients in California. Patients in California would not have used Tenet and its California hospitals and their services, had they known their health information would be shared with third parties, including Facebook.

33.    As described below, it is widely known and understood by corporate healthcare entities that installing tracking pixels on websites results in the disclosure of substantial information about those websites' users. While patients who use such websites, especially websites on which they communicate with their doctors, do not

8

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

1  expect to be tracked by Defendants or other third-party entities, healthcare businesses
2  using pixels are well aware of how activating pixels allow to track patients' data,
3  which is used by Facebook.

4      34.    Indeed, the very purpose of installing tracking pixels is to share user
5  information with third parties. Given these facts, it was certainly foreseeable to Tenet
6  that its conduct would harm California citizens' statutorily protected rights against
7  the unauthorized disclosure of their Private Information to third parties.

8      35.    As Tenet's 2022 annual report confirms, California citizens are integral
9  to Tenet's business model and profitability. Tenet's 2022 annual report states, for
10  example, that "Approximately, half of the outpatient centers in our Hospital
11  Operations segment at December 31, 2022 were in Texas and California, the same
12  states where we had the largest concentrations of licensed hospital beds." Tenet owns,
13  operates, and receives monetary and non-monetary benefits from approximately 13
14  California hospitals, including Doctors Medical Center of Modesto, Doctors Hospital
15  of Manteca, Emmanuel Medical Center, Fountain Valley Regional Hospital and
16  Medical Center, Hi-Desert Medical Center, John F. Kennedy Memorial Hospital,
17  Lakewood Regional Medical Center, Los Alamitos Medical Center, Placentia Linda
18  Hospital, San Ramon Regional Medical Center, Tenet Health Central Coast Sierra
19  Vista Regional Medical Center, and Tenet Health Central Coast Twin Cities
20  Community Hospital. Tenet owns and operates "Tenet Healthcare" branded websites
21  that advertise services for each of these hospitals and result in the unauthorized
22  disclosure of patient personal health information to third parties. Because Tenet's
23  actions resulted in the unauthorized disclosure of the personal health information of
24  hundreds of thousands California citizens, a jurisdictionally significant amount of the
25  harm caused by Tenet took place in California.

26  ///

27  ///

28  ///

9

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FACTUAL BACKGROUND

36.    Investigative journalists have published several reports detailing the seemingly ubiquitous use of tracking technologies on hospitals', health care providers' and telehealth companies' digital properties to surreptitiously capture and to disclose their Users' Private Information. Specifically, and for example, The Markup reported that 33 of the largest 100 hospital systems in the country utilized the Meta Pixel to send Facebook a packet of data whenever a person clicked a button to schedule a doctor's appointment.[3] Estimates are that over 664 hospital systems and providers utilize some form of tracking technology on their digital properties.[4]

37.    Entities collecting and disclosing Users' Private Information face significant legal exposure under the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**"), which applies specifically to healthcare providers, health insurance providers and healthcare data clearinghouses.[5]

38.    The HIPAA privacy rule sets forth policies to protect all individually identifiable health information that is held or transmitted.[6] This is information that can be used to identify, contact, or locate a single person or can be used with other

---

[3]    Todd Feathers, *et al.*, *Facebook Is Receiving Sensitive Medical Information from Hospital Websites*, THE MARKUP (June 16, 2022), https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites.

[4]    Dave Muoio & Annie Burky, *Advocate Aurora, WakeMed get served class action over Meta's alleged patient data mining*, FIERCE HEALTHCARE (November 4, 2022), https://www.fiercehealthcare.com/health-tech/report-third-top-hospitals-websites-collecting-patient-data-facebook.

[5]    Alfred Ng & Simon Fondrie-Teitler, *This Children's Hospital Network Was Giving Kids' Information to Facebook*, THE MARKUP (June 21, 2022), https://themarkup.org/pixel-hunt/2022/06/21/this-childrens-hospital-network-was-giving-kids-information-to-facebook (stating that "[w]hen you are going to a covered entity's website, and you're entering information related to scheduling an appointment, including your actual name, and potentially other identifying characteristics related to your medical condition, there's a strong possibility that HIPAA is going to apply in those situations").

[6]    The HIPAA Privacy Rule protects all electronically protected health information    covered entities like Defendants "create[], receive[], maintain[], or transmit[]" in electronic form. *See* 45 C.F.R. § 160.103.

10

FIRST AMENDED CLASS ACTION COMPLAINT

sources to identify a single individual. When PII is used in conjunction with one's physical or mental health or condition, health care, or one's payment for that health care, it becomes PHI.

39.    The unilateral disclosure of such Private Information is unquestionably a violation of HIPAA, among other statutory and common laws. And, while some hospitals and other disclosing entities attempt to seek refuge in the argument that these third parties allegedly do not store this Private Information, that argument is unavailing as the violation lies in the unlawful transmission of that data. As the Office for Civil Rights (OCR) at the U.S. Department of Health and Human Services (HHS) reminded entities regulated under HIPAA in its recently issued *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* bulletin:

> ***Regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.***[7]

OCR makes it clear that information that is routinely collected by vendors on public-facing websites, apps and web-based assets may be PHI as well, including unique identifiers such as IP addresses, device IDs, or email addresses.[8]

***Defendants' Method of Transmitting Plaintiffs' & Class Members' Private Information via the Meta Pixel.***

40.    Web browsers are software applications that allow consumers to navigate the web and view and exchange electronic information and communications over the

---

[7]    *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates,* U.S. DEP'T OF HEALTH AND HUM. SERVICES, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last accessed Sept. 25, 2023) (emphasis added).

[8]    *See id.*; *see also* Mason Fitch, *HHS Bulletin Raises HIPAA Risks for Online Tracking Vendors*, LAW360 (December 13, 2022), https://www.law360.com/articles/1557792/hhs-bulletin-raises-hipaa-risks-for-online-tracking-vendors?copied=1 (last accessed Sept. 25, 2023).

11

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

internet. Each "client device" (such as computer, tablet, or smart phone) accesses web content through a web browser (*e.g.*, Google's Chrome browser, Mozilla's Firefox browser, Apple's Safari browser and Microsoft's Edge browser).

41.    Every website is hosted by a computer "server" that holds the website's contents and through which the entity in charge of the website exchanges communications with Internet users' client devices via web browsers.

42.    Web communications consist of HTTP Requests and HTTP Responses, and any given browsing session may consist of thousands of individual HTTP Requests and HTTP Responses, along with corresponding cookies:

- **HTTP Request**: an electronic communication sent from the client device's browser to the website's server. GET Requests are one of the most common types of HTTP Requests.  In addition to specifying a particular URL (i.e., web address), GET Requests can also send data to the host server embedded inside the URL, and can include cookies.[9]

- **Cookies**: a small text file that can be used to store information on the client device which can later be communicated to a server or servers.  Cookies are sent with HTTP Requests from client devices to the host server.  Some cookies are "third-party cookies" which means they can store and communicate data when visiting one website to an entirely different website.[10]

- **HTTP Response**: an electronic communication that is sent as a reply to the client device's web browser from the host server in response to an HTTP Request. HTTP Responses may consist of a web page, another kind of file, text information, or error codes, among other data.[11]

43.    A patient's HTTP Request essentially asks the Defendants' Websites to retrieve certain information (such as a physician's "Book an Appointment" page), and the HTTP Response renders or loads the requested information in the form of "Markup" (the pages, images, words, buttons, and other features that appear on the

---

[9]    *An overview of HTTP*, MDN WEB DOCS, https://developer.mozilla.org/en-US/docs/Web/HTTP/Overview (last accessed Sept. 25, 2023).
[10]    *HTTP cookies*, MDN WEB DOCS, https://developer.mozilla.org/en-US/docs/Web/HTTP/Cookies (last accessed Sept. 25, 2023).
[11]    *An overview of HTTP*, *supra* note 13. One browsing session may consist of hundreds or thousands of individual HTTP Requests and HTTP Responses. *HTTP Messages*, MDN WEB DOCS, https://developer.mozilla.org/en-US/docs/Web/HTTP/Messages (last accessed Sept. 25, 2023).

12

FIRST AMENDED CLASS ACTION COMPLAINT

patient's screen as they navigate Defendants' Websites).

44.    Every website is comprised of Markup and "Source Code." Source Code is a set of instructions that commands the website visitor's browser to take certain actions when the web page first loads or when a specified event triggers the code.

45.    Source Code may also command a web browser to send data transmissions to third parties in the form of HTTP Requests quietly executed in the background without notifying the web browser's User.  The Pixel incorporated by Defendants uses Source Code that does just that.  The Pixel acts much like a traditional wiretap.

46.    When patients visit Defendants' Web Properties via an HTTP Request to Defendants' server, that server sends an HTTP Response including the Markup that displays the Webpage visible to the User and Source Code, including Defendants' Pixel.

47.    Thus, Defendants are, in essence, handing patients a tapped device and once the Webpage is loaded into the User's browser, the software-based wiretap is quietly waiting for private communications on the Webpage to trigger the tap, which intercepts those communications—intended only for Defendants—and transmits those communications to third parties, including Facebook.  Such conduct occurs on a continuous, and not sporadic, basis.

48.    Third parties, like Facebook, place third-party cookies in the web browsers of Users logged into their services.

49.    These cookies uniquely identify the User and are sent with each intercepted communication to ensure the third-party can uniquely identify the patient associated with the Private Information intercepted.

50.    With substantial work and technical know-how, internet users can sometimes circumvent this browser-based wiretap technology. This is why third parties bent on gathering Private Information, like Facebook, implement workarounds that cannot be evaded by savvy users.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

51.    Facebook's workaround, for example, is called CAPI, which is an "effective" workaround because it does not intercept data communicated from the User's browser. Instead, CAPI "is designed to create a direct connection between [Web hosts'] marketing data and [Facebook]."[12]

52.    Thus, the communications between patients and Defendants, which are necessary to use Defendants' Websites, are actually received by Defendants and stored on their server before CAPI collects and sends the Private Information contained in those communications directly from Defendants to Facebook.

53.    Client devices do not have access to host servers and thus cannot prevent (or even detect) this transmission.

54.    While there is no way to confirm with certainty that a Web host like Defendants has implemented workarounds like CAPI without access to the host server, companies like Facebook instruct Defendants to "[u]se the CAPI in addition to the [] Pixel, and share the same events using both tools," because such a "redundant event setup" allows Defendants "to share website events [with Facebook] that the pixel may lose."[13]

55.    The third parties to whom a website transmits data through Pixels and associated workarounds do not provide any substantive content relating to the User's communications. Instead, these third parties are typically procured to track User data and communications for marketing purposes of the website owner (i.e., to bolster profits).

56.    Thus, without any knowledge, authorization, or action by a User, a website owner like Defendants can use its source code to commandeer the User's computing device, causing the device to contemporaneously and invisibly redirect the

---

[12]    Michael Mata, *Stop Data Loss with Facebook Server-Side Tracking*, MADGICX (March 18, 2022), https://madgicx.com/blog/facebook-server-side-tracking.

[13]    *See Best practices for Conversions API*, META, https://www.facebook.com/business/help/308855623839366?id=818859032317965 (last accessed Sept. 25, 2023).

14

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

Users' communications to third parties.

57.    In this case, Defendants employed the Tracking Pixel and CAPI to intercept, duplicate and re-direct Plaintiffs' and Class Members' Private Information to Facebook.

58.    For example, when a patient visits www.desertcarenetwork.com and enters "I have AIDS" into the search bar, the patient's browser automatically sends an HTTP Request to Defendants' web server. The Defendants' web server automatically returns an HTTP Response, which loads the Markup for that particular webpage as depicted below in *Figure 1*.[14]

***Figure 1***



59.    The patient visiting this particular web page only sees the Markup, not the Defendants' Source Code or underlying HTTP Requests and Responses.

60.    In reality, Defendants' Source Code and underlying HTTP Requests and Responses share the patient's personal information with Facebook, including the fact that the patient is looking for treatment for his AIDS diagnosis—along with the

---

[14]    Image depicted in Figure 1 was taken from https://www.desertcarenetwork.com/search?indexCatalogue=desert-care-search&searchQuery=I+have+AIDS&wordsMode=AllWords.

FIRST AMENDED CLASS ACTION COMPLAINT

patient's unique Facebook identifiers.

*Figure 2. An HTTP single communication session sent from the device to Facebook that reveals the User's exact search terms (I have AIDS) typed into the search bar, along with the User's unique Facebook personal identifier (the c_user field).[15]*



/// 

/// 

/// 

/// 

/// 

---

[15]    One of the user's personal identifiers from Facebook, the FID (represented as the c_user cookie highlighted in the image above), has been redacted to preserve the User's anonymity.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

*Figure 3. An easier-to-read representation of data sent to Facebook when a User enters search terms into Defendants' search bar.*



61.    Similarly, if a User types "hysterectomy" into Defendants' search bar, Defendants share that information with Facebook, along with the User's personal identifiers:

*Figures 4 and 5. An HTTP single communication session sent from the device to Facebook that reveals the User's exact search terms ("hysterectomy") along with the User's unique Facebook personal identifier (the c_user field)*[16]



[16]    Images depicted in Figures 4 and 5 were taken from https://www.desertcarenetwork.com/search?indexCatalogue=desert-care-search&searchQuery= hysterectomy&wordsMode=AllWords.

17

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 | F: (213) 788-4070 | clarksonlawfirm.com

62.    In addition to controlling a website's Markup, Source Code executes a host of other programmatic instructions and can command a website visitor's browser to send data transmissions to third parties via Pixels or web bugs,[17] effectively open a spying window through which the webpage can funnel the visitor's data, actions, and communications to third parties.

63.    Looking to the previous example, Defendants' Source Code manipulates the patient's browser by secretly instructing it to duplicate the patient's communications (HTTP Requests) and sending those communications to Facebook.

64.    This occurs because the Pixel embedded in Defendants' Source Code is programmed to automatically track and transmit a patient's communications, and this occurs contemporaneously, invisibly, and without the patient's knowledge.

65.    Thus, without Users' consent, Defendants effectively use this Source Code to commandeer patients' computing devices, thereby re-directing their Private Information to unauthorized third parties.

---

[17]    These Pixels or web bugs are tiny image files that are invisible to website users. They are purposefully designed in this manner, or camouflaged, so that users remain unaware of them.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

66.    The information that Defendants' Pixel sends to Facebook may include, among other things, patients' PII, PHI, and other confidential information.

67.    Consequently, when Plaintiffs and Class Members visit Defendants' Websites and communicate their Private Information, it is transmitted to Facebook, including, but not limited to, patient status, health conditions experienced and treatments sought, physician selected, appointments sought, specific button/menu selections, sensitive demographic information such as sexual orientation, and exact words and phrases typed into the search bar.

***Defendants' Pixel Tracking Practices caused Plaintiffs' and Class Members' Private Information to be sent to Facebook.***

68.    Defendants utilize Facebook's Business Tools and intentionally install the Pixel and/or CAPI on their Web Properties to secretly track patients by recording their activity and experiences in violation of its common law, contractual, statutory, and regulatory duties and obligations.

69.    Defendants' web pages contain a unique identifier which indicates that the Pixel is being used on a particular webpage.[18]

70.    The Pixels allow Defendants to optimize the delivery of advertisements, measure cross-device conversions, create custom audiences, and decrease advertising and marketing costs.

71.    However, Defendants' Web Properties do not rely on the Pixel to function.

72.    While seeking and using Defendants' services as a medical provider, Plaintiffs and Class Members communicated their Private Information to Defendants via their Web Properties.

---

[18]    Defendants' Websites have multiple Meta Pixels installed on various web pages, including those identified as 249180606346420, 345595210061334, and 515825092623456 on https://www.desertcarenetwork.com/. These same Pixels are embedded across different websites for various hospitals and networks within Defendant Tenet's healthcare system.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

73.    Defendants did not disclose to Plaintiffs and Class Members that their Private Information would be shared with Facebook as it was communicated to Defendants. Rather, Defendants represented the opposite. This prevents the provision of any informed consent by Plaintiffs or Class Members to Defendants for the challenged conduct described herein.

74.    Plaintiffs and Class Members never consented, agreed, authorized, or otherwise permitted Defendants to disclose their Private Information to Facebook (or any other third-party), nor did they intend for Facebook to be a party to their communications with Defendants.    Defendants do not employ any form or click system whereby Plaintiffs and Class Members provide their affirmative consent to Defendants agreeing, authorizing, or otherwise permitting Defendants to disclose their Private Information to Facebook (or any other third-party).

75.    Defendants' Pixels and CAPI sent sensitive Private Information to Facebook, including but not limited to Plaintiffs' and Class Members': (i) status as medical patients; (ii) health conditions; (iii) sought treatment or therapies; (iv) terms and phrases entered into Defendants' search bar; (v) sought providers and their specialties; (vi) selected locations or facilities for treatment; and (vii) web pages viewed.

76.    Importantly, the Private Information Defendants' Pixels sent to Facebook was sent alongside Plaintiffs' and Class Members' personal identifiers, including patients' IP address and cookie values thereby allowing individual patients' communications with Defendants, and the Private Information contained in those communications, to be linked to their unique Facebook accounts.

77.    Through the Source Code deployed by Defendants, the cookies that they use to help Facebook identify patients include but are not necessarily limited to cookies named: "c_user," "datr," "fr," and "fbp."[19]

---

[19]    Defendants' Websites track and transmit data via first-party and third-party cookies. C_user, datr, and fr cookies are third-party cookies. The fbp cookie is a

FIRST AMENDED CLASS ACTION COMPLAINT

78.    The "*c_user*" cookie or FID is a type of third-party cookie assigned to each person who has a Facebook account, and it is composed of a unique and persistent set of numbers.

79.    A User's FID is linked to their Facebook profile, which generally contains a wide range of demographics and other information about the User, including pictures, personal interests, work history, relationship status, and other details. Because the User's Facebook Profile ID uniquely identifies an individual's Facebook account, Facebook—or any ordinary person—can easily use the Facebook Profile ID to quickly and easily locate, access, and view the user's corresponding Facebook profile.

80.    The "*datr*" cookie identifies the patient's specific web browser from which the patient is sending the communication. It is an identifier that is unique to the patient's specific web browser and is therefore a means of identification for Facebook users. Facebook keeps a record of every datr cookie identifier associated with each of its users, and a Facebook user can obtain a redacted list of all datr cookies associated with his or her Facebook account from Facebook.

81.    The "*fr*" cookie is a Facebook identifier that is an encrypted combination of the c_user and datr cookies.[20]

***Defendants' Pixel Disseminates Patient Information Via Their Websites.***

82.    By way of example, if a patient uses https://www.desertcarenetwork.com/ to look for medical treatments, they may select "Oncology" under the "Services" tab, which takes them to the list of services offered by Defendants to Users in need of cancer treatments. On those pages the user can further narrow their search results by

Facebook identifier that is set by Facebook source code and associated with Defendants' use of the Facebook Pixel. The fbp cookie emanates from Defendants' Websites as a putative first party cookie, but is transmitted to Facebook through cookie syncing technology that hacks around the same-origin policy.

[20]    *See* Gunes Acar et al., *Facebook Tracking Through Social Plug-ins: Technical Report prepared for the Belgian Privacy Commission* 16 (March 27, 2015), https://securehomes.esat.kuleuven.be/~gacar/fb_tracking/fb_pluginsv1.0.pdf.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

21

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

1    services offered by Defendants.

2    83.   The User's selections and filters are transmitted to Facebook via the Meta

3    Pixels, even if they contain the User's treatment, procedures, medical conditions, or

4    related queries, without alerting the User, and the images below confirm that the

5    communications Defendants send to Facebook contain the User's Private Information

6    and personal identifiers, including but not limited to their IP address, Facebook ID,

7    and datr and fr cookies, along with the search filters the User selected.

8    84.   For example, a cancer patient can search for various oncology care

9    options, from mammograms and radiation oncology to resources intended to help

10   patients navigate a cancer diagnosis, clinical research, support groups, and oncology

11   classes.[21]

12   85.   From the moment the patient begins searching for cancer their selections

13   or search parameters are automatically transmitted by the Pixel to Facebook along

14   with the User's unique personal identifiers, as evidenced by Figures 6 and 7 below.

15   ///

16

17   ///

18

19   ///

20

21   ///

22

23   ///

24

25   ///

26

27   _____

[21]  *See Oncology: Advanced Procedures for Complete Cancer Care*, DESERT
28   CARE  NETWORK,  https://www.desertcarenetwork.com/services/oncology  (last
     accessed Sept. 25, 2023).

22

FIRST AMENDED CLASS ACTION COMPLAINT

*Figure 6. Defendants' transmission to Facebook of User's search parameters showing  treatment sought ("infusion services").*



86.   The first line of highlighted text, "id: 345595210061334," refers to the Defendants' Pixel ID for this particular Webpage and confirms that the Defendants have downloaded the Pixel into their Source Code on this particular Webpage.

87.   In the second line of text, "ev:" is an abbreviation for event, and "Microdata" is the type of event. Here, this event means that Defendants' Pixel is sending all the meta information about the webpage which can include information like page title, URL, and page description.

88.   The remaining lines of text identify the User as a patient: (i) seeking medical care from Defendants via www.desertcarenetwork.com; (ii) who has cancer; and (iii) who is searching for infusion services.

89.   Finally, the last line of highlighted text ("GET"), demonstrates that Defendants' Pixel sent the User's communications, and the Private Information contained therein, alongside the User's personal identifiers, including Facebook ID

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

and other cookies. This is further evidenced by the image below, which was collected during the same browsing session as the previous image.

***Figure 7. Defendants' transmission to Facebook of User's search parameters showing treatment sought ("infusion services") and the User's unique Facebook ID.***



90.    As mentioned above, if the patient selects other cancer services, such as "Breast Health" or "Cancer Patient Resources," those search parameters are also automatically transmitted to Facebook by Defendants' Pixels, along with the patient's personal identifiers. In addition to sharing patient's conditions and selected treatments via PageView and Microdata events, Defendants' Pixels also share the text of buttons clicked by the patient via the "SubscribedButtonClick" event.

91.    For example, if a patient clicks on the button "Schedule Your Mammogram," Defendants send that information to Facebook via the "SubscribedButtonClick" event, which shares the inner text of the button the User

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

clicked to schedule the procedure:

*Figures 8 and 9. HTTP communication sessions sent from the User's device to Facebook revealing the inner text of the button clicked by the User, and their personal identifiers.*

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

92.    This action takes the User to one of Defendants' web pages for mammograms                        (in                        this                        example, https://www.desertcarenetwork.com/services/diagnostic-imaging/mammogram/mammo-mondays) where the User can click on the button "Schedule A Mammogram Now" and fill out a form with to request an appointment.

93.    Defendants' Pixels also share that information with Facebook, including via a "Lead" event:

***Figures 10 and 11. HTTP communication sessions sent from the User's device to Facebook revealing the User is trying to schedule an appointment for a mammogram, and their personal identifiers.***





94.    As another example, if a User interested in a particular procedure reviews

**FIRST AMENDED CLASS ACTION COMPLAINT**

Defendants' resources for prospective patients, Defendants also share that information with Facebook, as images below demonstrate:

**Figures 12 and 13. HTTP communication sessions sent from the User's device to Facebook revealing the inner text of the button clicked by the User interested in bariatric surgery (for weight loss).**



▼ Query String Parameters    view source    view URL-encoded

id: 515825092623456

ev: SubscribedButtonClick

dl: https://www.desertcarenetwork.com/services/bariatric-surgery/bariatric-resources

rl: https://www.desertcarenetwork.com/services/bariatric-surgery

if: false

ts: 1685715281747

cd[buttonFeatures]: {"classList":"no-underline text-purple-100 group-hover:underline group-hover:text-purple-200","destination":"javascript:void(0)","id":"lnk_expandable_dbec12fe-ee7b-419a-b7a3-c9357026921d","imageUrl":"","innerText":"How much time will I need to recover after surgery? How long will it be before I can return to work?","numChildButtons":0,"tag":"a","type":null,"name":""}

cd[buttonText]: How much time will I need to recover after surgery? How long will it be before I can return to work?

cd[formFeatures]: []

cd[pageFeatures]: {"title":"\n\tBariatric Resources | Desert Care Network\n"}



▼ Request Headers

:Authority:        www.facebook.com

:Method:          GET

:Path:            /tr/?id=515825092623456&ev=SubscribedButtonClick&dl=https%3A%2F%2Fwww.desertcarenetwork.com%2Fservices%2Fbariatric-surgery%2Fbariatric-resources&rl=https%3A%2F%2Fwww.desertcarenetwork.com%2Fservices%2Fbariatric-surgery&if=false&ts=1685715281747&cd[buttonFeatures]=%7B%22classList%22%3A%22no-underline%20text-purple-100%20group-hover%3Aunderline%20group-hover%3Atext-purple-200%22%2C%22destination%22%3A%22javascript%3Avoid(0)%22%2C%22id%22%3A%22lnk_expandable_dbec12fe-ee7b-419a-b7a3-c9357026921d%22%2C%22imageUrl%22%3A%22%22%2C%22innerText%22%3A%22How%20much%20time%20will%20I%20need%20to%20recover%20after%20surgery%3F%20How%20long%20will%20it%20be%20before%20I%20can%20return%20to%20work%3F%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22a%22%2C%22type%22%3Anull%2C%22name%22%3A%22%22%7D&cd[buttonText]=How%20much%20time%20will%20I%20need%20to%20recover%20after%20surgery%3F%20How%20long%20will%20it%20be%20before%20I%20can%20return%20to%20work%3F%20&cd[formFeatures]=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22%5Cn%5CtBariatric%20Resources%20%7C%20Desert%20Care%20Network%5Cn%22%7D&sw=1664&sh=1110&v=2.9.104&r=stable&ec=2&o=30&cs_est=true&it=1685678234526&coo=false&es=automatic&tm=3&rqm=GET

:Scheme:          https

Accept:           image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8

Accept-Encoding:  gzip, deflate, br

Accept-Language:  en-US,en;q=0.9,ru;q=0.8

Cookie:           datr=Qtl1Y1IVd2UWOuuBmn2Mb8vC; sb=GrxtY1jj9lKWnpCg7UAhiJMv; c_user=540                        ;
                  usida=eyJ2ZXliOjEsImIkIjoiQXJ2ajZoMm9tcGRlMSIsInRpbWUiOjE2ODU1NDk4OT0sJ9; dpr=1.5;
                  xs=7%3A_7bqKp6s0g6FyQ%3A2%3A1677887050%3A-1%3A3A3037%3A3%3AAcUqKVOX5uChe_cAbiTvqSAm_lOsvqSlzbb1sv50kaLo;
                  fr=0o6UBBVDuufDNIJE7.AWUx48uMd3UL-JThkMvMDAXm_9o.Bkd4Ys.-f.AAA.0.0.Bkd4Ys.AWX4xihj-5k

Referer:          https://www.desertcarenetwork.com/services/bariatric-surgery/bariatric-resources

95. Additionally, a patient can use Defendants' Websites such as

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

1  https://www.desertcarenetwork.com/ to search for a provider based on their name
2  and/or specialty.

3      96.    These search terms are also transmitted via the Facebook Pixel:

4  **_Figures 14 and 15. Defendants' transmission to Facebook of User's search_**
5  **_parameters showing search terms ("Amir Lavaf, MD" and "Radiation Oncologist")_**
6  **_and the User's c_user information from search results via Defendants' search bar._**





97.    This information is automatically sent from the User's device to

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

Facebook, and it reveals the User's FID (c_user field) along with each search filter the User selected.

98.   By way of another example, Defendant Desert Care Network also shares Private Information collected on webpages specifically dedicated to patients, which discloses Private Information such as patients' gender affiliation:

***Figures 16 and 17. HTTP communication sessions sent from the User's device to Facebook revealing the inner text of the button clicked by a patient interested in support services for LGBTQ patients.***



///

///

///

///

///

///

///

///

///

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

29
FIRST AMENDED CLASS ACTION COMPLAINT

99.    Finally, Defendants' Websites also share with Facebook each time a website user wants to register for the patient portal or the fact that a patient is trying to access the patient portal.

100.  A User who accesses Defendants' Websites while logged into Facebook will transmit the c_user cookie to Facebook, which contains that user's unencrypted Facebook ID, and other personal cookie values including the datr and fr cookies.

101.  When accessing www. www.desertcarenetwork.com, for example, Facebook receives as many as seven (7) cookies:

***Figure 18***

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

120. When a User's browser has recently logged out of their Facebook account, Facebook compels the User's browser to send a smaller set of cookies:[22]

***Figure 19***

| fr | 00Zp... | .facebook.com |
|----|---------|---------------|
| wd | 1156... | .facebook.com |
| sb | qqAz... | .facebook.com |
| datr | Malz... | .facebook.com |

121. The fr cookie contains, at least, an encrypted Facebook ID and browser identifier.[23] Facebook, at a minimum, uses the fr cookie to identify Users.[24]

122. At each stage, Defendant Desert Care Network also utilized the _fbp cookie, which attaches to a browser as a first-party cookie, and which Facebook uses to identify a browser and a User:[25]

***Figure 20***

| Name | Value | Domain | Path | Expires / Max-... |
|------|-------|--------|------|-------------------|
| _fbp | fb.1.1680025245129.1009717946 | .desertcarenetwork.com | / | 2023-08-31T1... |

123. The fr cookie expires after ninety (90) days unless the User's browser logs back into Facebook.[26] If that happens, the time resets, and another ninety (90) days begins to accrue.

124. The _fbp cookie expires after ninety (90) days unless the User's browser accesses the same website.[27] If that happens, the time resets, and another ninety (90) days begins to accrue.

---

[22]    The screenshot below serves as an example and demonstrates the types of data transmitted during an HTTP single communication session. Not pictured here and in the preceding image is the _fbp cookie, which is transmitted as a first-party cookie.

[23]    Data Protection Commissioner, *Facebook Ireland Ltd: Report of Re-Audit* 33 (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf (last accessed Sept 25, 2023)..

[24]    *Cookies Policy*, Meta, https://www.facebook.com/policy/cookies/ (last accessed Sept 25, 2023).

[25]    *Id.*

[26]    *Id.*

[27]    *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

125. The Facebook Tracking Pixel uses both first- and third-party cookies. A first-party cookie is "created by the website the user is visiting"—i.e., Defendant.[28]

126. A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—i.e., Facebook.[29]

127. The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

128. Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to FIDs and corresponding Facebook profiles.

129. As shown in the figures above, Defendants sent these identifiers with the event data.

130. Plaintiffs never consented, agreed, authorized, or otherwise permitted Defendants to disclose their Private Information, nor did they authorize any assistance with intercepting their communications.

131. Plaintiffs were never provided with any written notice that Defendants disclosed its Website users' Private Information nor were they provided any means of opting out of such disclosures.

132. Despite this, Defendants knowingly and intentionally disclosed Plaintiffs' Private Information to Facebook.

***Defendants Violate Their Promises to Users and Patients to Protect Their Confidentiality.***

133. Hospitals, including Defendants, possess the capability to activate tracking Pixels on their websites to monitor and analyze every activity of their

---

[28] *First-Party Cookie*, PCMAG.COM, https://www.pcmag.com/encyclopedia/term/first-party-cookie (last accessed Sept 25, 2023). This is confirmable by using developer tools to inspect a website's cookies and track network activity.

[29] *Third-Party Cookie*, PCMAG.COM, https://www.pcmag.com/encyclopedia/term/third-party-cookie (last accessed Sept 25, 2023). This is also confirmable by tracking network activity.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

visitors. When such Pixel technology is enabled, these hospitals, by default, agree with Facebook's terms (by using Meta's Business Tools the health care provider or covered entity "represent[s] and warrant[s] that [it has] provided robust and sufficiently prominent notice to users regarding the Business Tool Data collection, sharing and usage"[30]) which necessitate an assertion from the hospitals: that they have secured explicit consent from their patients, including Plaintiffs, to relay their tracking data, communications, diagnosis, and other pertinent medical details to Facebook.

134.  After obtaining detailed and sensitive personal data of Plaintiffs and Class Members from the Defendants' Websites, Facebook groups individuals based on specific medical conditions, diagnosis, and other content of patients' communications with the hospitals. These categorizations lead to the creation of distinct "bundles" of users, such as "pregnant mothers", "individuals with diabetes", "persons diagnosed with breast cancer," and other categories. Leveraging these highly specific and sensitive categorizations, Facebook then uses them not only for internal marketing purposes, but also external marketing purposes – allowing to use this data by third parties, such as drug manufacturers, or even companies of products who target the individuals within these categories. This allows hospitals, Facebook, and other third parties to obtain data on users and send targeted advertisements directly to them based on their medical conditions. Such a calculated use of personal medical information for targeted advertising not only exploits the data gathered from Defendants' platforms but also raises concerns about the privacy of affected individuals, making them subjects of hyper-targeted advertising campaigns based on their personal health conditions.

135.  Defendants do not have the legal right to use or share Plaintiffs' and Class Members' data, as this information is protected by the HIPAA Privacy Rule. The

---

[30]  *Meta, Data Policy: Information from Partners, vendors and third parties* (Jan. 1, 2023), https://www.facebook.com/privacy/policy?subpage=1.subpage.4-InformationFromPartnersVendors.

FIRST AMENDED CLASS ACTION COMPLAINT

Privacy Rule does not permit the use and disclosure of Private Information to Facebook for use in targeted advertising.[31]

136. Beyond Defendants' legal obligations to protect the confidentiality of individuals' Private Information, Defendants' privacy policies and online representations affirmatively and unequivocally state that any personal information provided to Defendants will remain secure and protected.[32]

137. Further, Defendants represent to Users that they will only disclose Private Information provided to them under certain circumstances, ***none of which apply here***.[33] Defendants' privacy policies do ***not*** permit Defendants to use and disclose Plaintiffs' and Class Members' Private Information for marketing purposes.

138. In fact, Defendants acknowledge in their (identical) Notices of Privacy Practices that they must obtain Users' "written authorization"[34] to use their PHI to send them any marketing materials.

139. Moreover, Defendants represent that they will not disclose Users' PHI without their authorization "in exchange for direct or indirect payment except in limited circumstances permitted by law. These circumstances include public health activities; research; treatment of the individual; sale, transfer, merger or consolidation of the Facility; services provided by a business associate, pursuant to a business associate agreement; providing an individual with a copy of their PHI; and other purposes deemed necessary and appropriate by the U.S. Department of Health and Human Services (HHS)."[35]

140. Upon information and belief, Defendants do not have a business associate agreement with Facebook, and none of the "limited circumstances" listed above apply

---

[31]    *See* 45 C.F.R. § 164.502.
[32]    *Notice of Privacy Practices*, DESERT CARE NETWORK, https://www.desertcarenetwork.com/notice-of-privacy-practices (last accessed Sept 25, 2023).
[33]    *See id.*
[34]    *See id.*
[35]    *See id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

here.

141. Further, in their (identical) Privacy Policies Defendants represent:

"***We do not sell personal information that we have collected from consumers to any third parties***."

"We may collect certain information by automated means. This information includes cookies, sensors, geo location, pixel tags, IP addresses, mobile device information and other similar technology. ***This information does not identify you, but is statistical data that provides generic information about your use of the Sites.***"

"We take reasonable, industry standard precautions to keep the Sites and their systems secure and to prevent personal information from being made available to unauthorized persons or entities." [36]

142. Finally, in their Notices of Privacy Practices, Defendants acknowledge that they are "required by law to protect the privacy of [Users'] medical information" and "to notify [them] if there is a breach or impermissible access, use or disclosure of [their] medical information."[37]

143. Defendants failed to issue a notice that Plaintiffs and Class Members' Private Information had been impermissibly disclosed to an unauthorized third party. In fact, Defendants ***never*** disclosed to Plaintiffs or Class Members that they shared their sensitive and confidential communications, data, and Private Information with Facebook and other third parties.[38]

---

[36] *Privacy Policy*, DESERT CARE NETWORK, https://www.desertcarenetwork.com/privacy-policy (last accessed Sept 25, 2023).

[37] *Notices of Privacy Practices*, *supra* note 35.

[38] In contrast to Defendants, in recent months several medical providers which have installed the Meta Pixel on their Web Properties have provided their patients with notices of data breaches caused by the Pixel transmitting PHI to third parties. *See*, *e.g.*, *Cerebral, Inc. Notice of HIPAA Privacy Breach*, https://cerebral.com/static/hippa_privacy_breach-4000c6eb21449c2ecd8bd13706750cc2.pdf (last accessed Sept 25, 2023); Annie Burky, *Advocate Aurora says 3M patients' health data possibly exposed through tracking technologies,* FIERCE HEALTHCARE (October 20, 2022), https://www.fiercehealthcare.com/health-tech/advocate-aurora-health-data-breach-revealed-pixels-protected-health-information-3 (last accessed Sept 25, 2023); *Novant Health Notifies Patients of Potential Data Privacy Incident*, PR NEWSWIRE (August 19, 2022), https://www.prnewswire.com/news-releases/novant-health-notifies-patients-of-potential-data-privacy-incident-301609387.html.

35

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050   F: (213) 788-4070 | clarksonlawfirm.com

144. Defendants have unequivocally failed to adhere to a single promise vis-à-vis their duty to safeguard Private Information of their Users. Defendants have made these privacy policies and commitments available on their websites. Defendants included these privacy policies and commitments to maintain the confidentiality of their Users' sensitive information as terms of their contracts with those Users, including contracts entered with Plaintiffs and the Class Members. In these contract terms and other representations to Plaintiffs and Class Members and the public, Defendants promised to take specific measures to protect Plaintiffs' and Class Members' Private Information, consistent with industry standards and federal and state law. However, they failed to do so.

145. Even non-Facebook users can be individually identified via the information gathered on the Digital Platforms, like an IP address or personal device identifying information. This is precisely the type of information for which HIPAA requires the use of de-identification techniques to protect patient privacy.[39]

146. In fact, in an action currently pending against Facebook related to use of their Pixel on healthcare provider web properties, Facebook explicitly stated it requires Pixel users to "post a prominent notice on every page where the Pixel is embedded and to link from that notice to information about exactly how the Pixel works and what is being collected through it, so it is not invisible."[40] Defendants did not post such a notice.

---

[39] *Guidance Regarding Methods for De-identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule*, U.S. DEP'T OF HEALTH AND HUM. SERVICES, https://www.hhs.gov/hipaa/for-professionals/privacy/special-topics/de-identification/index.html (last accessed Sept 25, 2023).

[40] *See* **Exhibit A** attached, Transcript of the argument on Plaintiff's Motion for Preliminary Injunction in *In re Meta Pixel Healthcare Litig.*, Case No. CV-22-03580-WHO (N.D. Cal. Nov. 9, 2022) (Hon. J. Orrick), at 19:12-18.

36

**FIRST AMENDED CLASS ACTION COMPLAINT**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

147. Facebook further stated that "most providers [...] will not be sending [patient information] to Meta because it violates Meta's contracts for them to be doing that."[41]

148. Despite a lack of disclosure, Defendants allowed third parties to "listen in" on patients' confidential communications and to intercept and use for advertising purposes the very information they promised to keep private, in order to bolster their profits.

***Plaintiffs and Class Members Reasonably Believed That Their Confidential Medical Information Would Not Be Shared with Third Parties.***

149. Plaintiffs and Class Members were aware of Defendants' duty of confidentiality when they sought medical services from Defendants.

150. Indeed, at all times when Plaintiffs and Class Members provided their Private Information to Defendants, they each had a reasonable expectation that the information would remain confidential and that Defendants would not share the Private Information with third parties for a commercial purpose, unrelated to patient care.

151. Personal data privacy and obtaining consent to share Private Information are material to Plaintiffs and Class Members.

152. Plaintiffs and Class Members relied to their detriment on Defendants' uniform representations and omissions regarding protection privacy, limited uses, and lack of sharing of their Private Information.

153. Now that their sensitive personal and medical information is in possession of third parties, Plaintiffs and Class Members face a constant threat of continued harm – including bombardment of targeted advertisements based on the unauthorized disclosure of their personal data. Collection and sharing of such sensitive information without consent or notice poses a great threat to individuals by subjecting them to the never-ending threat of identity theft, fraud, phishing scams, and harassment.

---

[41]    *Id.* at 7:20-8:11.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

***Plaintiffs and Class Members Have No Way of Determining Widespread Usage of Invisible Pixels.***

154. Plaintiffs and Class Members have no idea that Defendants are collecting and utilizing their Private Information, including sensitive medical information, when they engage with Defendants' Websites which have Meta Pixels secretively incorporated in the background.

155. Plaintiffs and Class Members do not realize that tracking Pixels exist because they are invisibly embedded within Defendants' web pages that users might interact with.[42] Patients and users of Defendants' Websites do not receive any alerts during their uses of Defendants' Web Properties stating that Defendants track and share sensitive medical data with Facebook, allowing Facebook and other third parties to subsequently target all users of Defendants' Websites for marketing purposes.

156. Plaintiffs and Class Members trusted Defendants' Websites when inputting sensitive and valuable Private Information. Had Defendants disclosed to Plaintiffs and Class Members that every click, every search, and every input of sensitive information was being tracked, recorded, collected, and ***disclosed*** to third parties, Plaintiffs and Class Members would not have trusted Defendants' Websites to input such sensitive information.

157. Defendants knew or should have known that Plaintiffs and Class Members would reasonably rely on and trust Defendants' promises regarding the tracking privacy and uses of their Private Information. Furthermore, any person visiting a health website has a reasonable understanding that medical providers must adhere to strict confidentiality protocols and are bound not to share any medical information without their consent.

---

[42] FTC Office of Technology, *Lurking Beneath the Surface: Hidden Impacts of Pixel Tracking*, FED. TRADE COMM'N (March 16, 2023), https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2023/03/lurking-beneath-surface-hidden-impacts-pixel-tracking (last accessed Sept 25, 2023).

38

FIRST AMENDED CLASS ACTION COMPLAINT

158. By collecting and sharing Users' Private Information with Facebook and other unauthorized third parties, Defendants caused harm to Plaintiffs, Class Members, and all affected individuals.

159. Furthermore, once Private Information is shared with Facebook, such information may not be effectively removed, even though it includes personal and private information.

160. Plaintiffs fell victim to Defendants' unlawful collection and sharing of their sensitive medical information using the Meta Pixel tracking code on their websites.

***Facebook Use of Tracking Pixels in Advertising Business.***

161. Facebook is one of the largest advertising companies in the country, with over 2.9 billion active users.[43]

162. Realizing the value of having direct access to millions of consumers, in 2007, Facebook began monetizing its platform by launching "Facebook Ads," proclaiming it to be a "completely new way of advertising online" that would allow "advertisers to deliver more tailored and relevant ads."[44]

163. Given the highly specific data used to target specific users, it is no surprise that millions of companies and individuals utilize Facebook's advertising services. Meta generates almost all of its revenue from selling advertisement placements:

| Year | Total Revenue | Ad Revenue | % Ad Revenue |
|------|---------------|------------|--------------|
| 2023 Q1 | $28.65 billion | $28.101 billion | 98.1% |
| 2022 | $116.61 billion | $113.64 billion | 97.5% |
| 2021 | $117.93 billion | $114.93 billion | 97.46% |
| 2020 | $85.97 billion | $84.17 billion | 97.90% |
| 2019 | $70.70 billion | $69.66 billion | 98.52% |
| 2018 | $55.84 billion | $55.01 billion | 98.51% |

[43] S. Dixon, *Facebook Users by Country 2023*, STATISTA (February 24, 2023), www.statista.com/statistics/268136/top-15-countries-based-on-number-of-facebook-users/ (last accessed Sept 25, 2023).

[44] *Facebook Unveils Facebook Ads*, META (November 6, 2007), https://about.fb.com/news/2007/11/facebook-unveils-facebook-ads/ (last accessed Sept 25, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

164.  One of its most powerful advertising tools is Meta Pixel, formerly known as Facebook Pixel, which launched in 2015.

165. Ad Targeting has been extremely successful due, in large part, to Facebook's ability to target people at a granular level. "Among many possible target audiences, Facebook offers advertisers, [for example,] 1.5 million people 'whose activity on Facebook suggests that they're more likely to engage with/distribute liberal political content' and nearly seven million Facebook users who 'prefer high-value goods in Mexico.'"[45]

166. Acknowledging that micro-level targeting is highly problematic, in November of 2021 Facebook announced that it was removing options that "relate to topics people may perceive as sensitive," such as "Health causes (e.g., 'Lung cancer awareness', 'World Diabetes Day', 'Chemotherapy'), Sexual orientation (e.g., 'same-sex marriage' and 'LGBT culture')", "Religious practices and groups (e.g., 'Catholic Church' and 'Jewish holidays')," as well as "Political beliefs, social issues, causes, organizations, and figures."

167. For Facebook, Pixel acts as a conduit of information, sending the information it collects to Facebook through scripts running in the User's internet browser. The information is sent in data packets labeled with PII, including the User's IP address.

168. If the User has a Facebook account, the Private Information collected is linked to the individual Users' Facebook account. For example, if the User is logged into their Facebook account when the User visits a website where the Meta Pixel is installed, many common browsers will attach third-party cookies allowing Facebook to link the data collected by Meta Pixel to the specific Facebook user.

---

[45]    Natasha Singer, *What You Don't Know about How Facebook Uses Your Data*, N.Y. TIMES (April 11, 2018), https://www.nytimes.com/2018/04/11/technology/facebook-privacy-hearings.html (last accessed Sept 25, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT

169. Alternatively, Facebook can link the data to a users' Facebook account through the "Facebook Cookie." The Facebook Cookie is a workaround to recent cookie-blocking techniques, including one developed by Apple, Inc., to track users.[46]

170. Facebook can also link Private Information to Facebook accounts through identifying information collected through Meta Pixel through what Facebook calls "Advanced Matching."[47] There are two forms of Advanced Matching: manual matching and automatic matching. Using Manual Advanced Matching the website developer manually sends data to Facebook to link users. Using Automatic Advanced Matching, the Meta Pixel scours the data it receives to search for recognizable fields, including name and email address to match users to their Facebook accounts.[48]

171. A recent investigation revealed that the Meta Pixel was installed inside password-protected patient portals of at least seven health systems.[49] When a User navigates through their patient portal, the Meta Pixel sends Facebook sensitive data including but not limited to, the User's medication information, prescriptions, descriptions of their issues, notes, test results, and details about upcoming doctor's appointments.

172. David Holtzman, a health privacy consultant was "deeply troubled" by the results of The Markup's investigation and indicated "it is quite likely a HIPAA violation" by the hospitals, such as Defendants.[50]

---

[46]    Maciej Zawadziński & Michal Wlosik, *What Facebook's First-Party Cookie Means for AdTech,* CLEAR CODE (June 8, 2022), https://clearcode.cc/blog/facebook-first-party-cookie-adtech/ (last accessed Sept 25, 2023).

[47] Illia Lahunou, *What is Advanced Matching in Facebook Pixel and How it Works,* VERFACTO, https://www.verfacto.com/blog/ecommerce/advanced-matching-facebook-pixel/ (last accessed Sept 25, 2023); *see also About advanced matching for web,* META, https://www.facebook.com/business/help/611774685654668?id=1205376682832142 (last accessed Sept 25, 2023).

[48]    *Id.*

[49]    *See* Feathers, *et al.*, *supra* note 3.

[50]    *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

173. Laura Lazaro Cabrera, a legal officer at Privacy International, indicated that Facebook's access to use even only some of these data points—such as just the URL—is problematic. She explained, "Think about what you can learn from a URL that says something about scheduling an abortion' . . . 'Facebook is in the business of developing algorithms. They know what sorts of information can act as a proxy for personal data."[51]

174. When Users visit websites that have incorporated the Meta Pixel, the Pixel collects information about Users' activity on that website. This information is then shared with Facebook and, in tandem with data from the Users' Facebook profile such as their age, gender, and interests, can be used to target the user with advertisements on Facebook and other websites that use the Meta Pixel.

175. However, the collection and use of this data raises concerns about user privacy and the potential misuse of personal information. For example, when Users browse Defendants' Web Properties, every bit of their activity is tracked and monitored. By analyzing this data using algorithms and machine learning techniques, these entities tracking this information can learn a chilling level of detail about Users' behavioral patterns, preferences, and interests.

176. While this data can be used to provide personalized and targeted content and advertising, it can also be used for more nefarious purposes, such as tracking and surveillance. For example, if an advertiser or social media platform has access to a User's browsing history, search queries, and social media activity, they could potentially build a detailed profile of that User's behavior patterns, including where they go, what they do, and who they interact with.

---

[51]    Grace Oldham & Dhruv Mehrotra, *Facebook and Anti-Abortion Clinics Are Collecting Highly Sensitive Info on Would-Be Patients*, THE MARKUP (June 15, 2022), https://themarkup.org/pixel-hunt/2022/06/15/facebook-and-anti-abortion-clinics-are-collecting-highly-sensitive-info-on-would-be-patients (last accessed Sept 25, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

177. This level of surveillance and monitoring raises important ethical and legal questions about privacy, consent, and the use of personal data. It is important for Users to be aware of how their data is being collected and used, and to have control over how their information is shared and used by advertisers and other entities.

178. Moreover, the misuse of this data could potentially lead to the spread of false or misleading information, which could have serious consequences, particularly in the case of health-related information. As an example, the Cambridge Analytica scandal revealed that personal data was misused to target individuals with political propaganda and misinformation.[52]

179. The Cambridge Analytica scandal involved the misuse of personal data collected from Facebook users, which was then used to target individuals with political advertising and propaganda. The scandal highlighted the potential dangers of using personal data for targeted advertising and the need for greater transparency and accountability in the collection and use of personal information.[53] One of the ways that Cambridge Analytica was able to collect personal data was through the use of third-party apps that collected data from users and their friends. This data was then used to build detailed profiles of individuals, which were used to target them with personalized political ads and propaganda.

180. The use of algorithms and machine learning techniques to analyze this data allowed Cambridge Analytica to identify patterns in users' behavior and preferences, which were then used to target them with specific messages and ads.

181. This highlights the potential dangers of using personal data to build detailed profiles of individuals, particularly when that data is collected without their knowledge or consent. It also raises important questions about the ethics of using

---

[52] Sam Meredith, *Here's Everything You Need to Know about the Cambridge Analytica Scandal*, CNBC (March 23, 2018), https://www.cnbc.com/2018/03/21/facebook-cambridge-analytica-scandal-everything-you-need-to-know.html (last accessed Sept 25, 2023).

[53] *Id.*

43

<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

1    personal data for political purposes and the need for greater regulation and oversight

2    of data collection and use.

3        182. Finally, as pointed out by the OCR, impermissible disclosures of such

4    data in the healthcare context "may result in identity theft, financial loss,

5    discrimination, stigma, mental anguish, or other serious negative consequences to the

6    reputation, health, or physical safety of the individual or to others identified in the

7    individual's PHI…. This tracking information could also be misused to promote

8    misinformation, identity theft, stalking, and harassment."[54]

9        183. In conclusion, as Judge Orrick pointed out in a recent decision allowing

10    claims under California and common law against Regents of the University of

11    California for collecting personal medical data via the Meta Pixel to go forward,

12    "[p]ersonal medical information is understood to be among the most sensitive

13    information that could be collected about a person" and unauthorized transmission or

14    interception of such data by third parties may constitute a "highly offensive" intrusion

15    of privacy. *Doe v. Regents of Univ. of Cal.*, 23-cv-00598-WHO (N.D. Cal. May 6,

16    2023).

17    ***Defendants Knew Plaintiffs' Private Information Included Sensitive Medical***

18    ***Information, Including Medical Records.***

19        184. Defendants were aware that by incorporating the Meta Pixel onto their

20    websites, this would result in the disclosure and use of Plaintiffs' and Class Members'

21    Private Information, including sensitive medical information.

22        185. By virtue of how the Meta Pixel works, i.e., sending all interactions on a

23    website to Facebook, Defendants were aware that their Users' Private Information

24    would be sent to Facebook when they researched specific medical conditions and/or

25    treatments, looked up providers, made appointments, typed specific medical queries

26    into the search bar, and otherwise interacted with Defendants' Web Properties.

27

28    [54]    *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates, supra* note 12.

44

**FIRST AMENDED CLASS ACTION COMPLAINT**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

186. Indeed, software companies like MyChart that provide online access to medical records utilized by Defendants have "specifically recommended heightened caution around the use of custom analytics." Despite this, Defendants continued to use the Meta Pixel on their Web Properties.

187. At all times relevant herein Meta notified its partners, including Defendants, to have the rights to collect, use, and share user data before providing any data to Meta.[55] Although Meta's intent is questionable, Defendants had been on notice of this Pixel-tracking ever since they activated such Pixel technology on their websites.

> **Information from partners.**
> Advertisers, app developers, and publishers can send us information through Meta Business Tools they use, including our social plug-ins (such as the Like button), Facebook Login, our APIs and SDKs, or the Meta pixel. These partners provide information about your activities off of our Products—including information about your device, websites you visit, purchases you make, the ads you see, and how you use their services —whether or not you have an account or are logged into our Products. For example, a game developer could use our API to tell us what games you play, or a business could tell us about a purchase you made in its store. We also receive information about your online and offline actions and purchases from third-party data providers who have the rights to provide us with your information.
>
> Partners receive your data when you visit or use their services or through third parties they work with. We require each of these partners to have lawful rights to collect, use and share your data before providing any data to us. Learn more about the types of partners we receive data from.
>
> To learn more about how we use cookies in connection with Meta Business Tools, review the Facebook Cookies Policy and Instagram Cookies Policy.

---

[55] *See In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, 2022 U.S. Dist. LEXIS 230754, at *13-14 (N.D. Cal. Dec. 22, 2022).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

188. Meta changed this provision again in July 2022, while still requiring partners to have the right to share patient information with Meta:[56]

**How do we collect or receive this information from partners?**

Partners use our Business Tools, integrations and Meta Audience Network technologies to share information with us.

These Partners collect your information when you visit their site or app or use their services, or through other businesses or organizations they work with. We require Partners to have the right to collect, use and share your information before giving it to us.

189. Defendants had the explicit option to disable the Pixel technology on their Web Properties, but chose not to exercise this option, thereby continuing to share data with Facebook despite the availability of preventive measures.

190. Meta advised third party entities, like Defendants, to refrain from sending any information they did not have the legal right to send and expressly emphasized not to transmit health information. Yet, Defendants, in direct contravention of these disclosures, and more importantly despite Defendants' promises to keep all health-related data about patients confidential, continued to employ Pixel tracking on their websites, thereby sharing sensitive patient data without proper authorization or consent.

***Plaintiffs and Class Members Have a Reasonable Expectation of Privacy in Their Private Information, Especially with Respect to Sensitive Medical Information.***

191. Plaintiffs and Class Members have a reasonable expectation of privacy in their Private Information, including personal information and sensitive medical information.

192. Patient PHI specifically is protected by federal law under HIPAA.

---

[56]    Meta, *Data Policy: Information from Partners, vendors and third parties* (Jan. 1, 2023), https://www.facebook.com/privacy/policy?subpage=1.subpage.4-InformationFromPartnersVendors.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

193. HIPAA sets national standards for safeguarding protected health information. For example, HIPAA limits the permissible uses of health information and prohibits the disclosure of this information without explicit authorization. *See* 45 C.F.R. § 164.502. HIPAA also requires that covered entities implement appropriate safeguards to protect this information. *See* 45 C.F.R. § 164.530(c)(1).

194. This federal legal framework applies to health care providers, including Defendants.

195. Given the application of HIPAA to the Defendants, Plaintiffs and the members of the Class had a reasonable expectation of privacy over their PHI.

196. Several studies examining the collection and disclosure of consumers' sensitive medical information confirm that the collection and unauthorized disclosure of sensitive medical information from millions of individuals, as Defendants have done here, violates expectations of privacy that have been established as general societal norms.

197. Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' data.

198. For example, a recent study by Consumer Reports shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[57] Moreover, according to

---

[57] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/ (last accessed Sept 25, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

a study by Pew Research Center, a majority of Americans, approximately 79%, are concerned about how data is collected about them by companies.[58]

199. Users act consistent with these preferences. Following a new rollout of the iPhone operating software—which asks users for clear, affirmative consent before allowing companies to track users—85% of worldwide users and 94% of U.S. users chose not to share data when prompted.[59]

200. Medical data is particularly even more valuable because unlike other personal information, such as credit card numbers which can be quickly changed, medical data is static. This is why companies possessing medical information, like Defendants, are intended targets of cyber-criminals.[60]

201. Patients using Defendants' Web Properties must be able to trust that the information they input including their physicians, their health conditions and courses of treatment will be protected. Indeed, numerous state and federal laws require this. And these laws are especially important when protecting individuals with particular medical conditions such as HIV or AIDS that can and do subject them to regular discrimination. Furthermore, millions of Americans keep their health information private because it can become the cause of ridicule and discrimination. For instance, despite the anti-discrimination laws, persons living with HIV/AIDS are routinely subject to discrimination in healthcare, employment, and housing.[61]

---

[58]  *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER (November 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/ (last accessed Sept 25, 2023).

[59]  Margaret Taylor, *How Apple Screwed Facebook*, WIRED (May 19, 2021), https://www.wired.co.uk/article/apple-ios14-facebook (last accessed Sept 25, 2023).

[60]  Caroline Humer & Jim Finkle, *Your medical record is worth more to hackers than your credit card*, REUTERS (September 24, 2014), https://www.reuters.com/article/us-cybersecurity-hospitals/your-medical-record-is-worth-more-to-hackers-than-your-credit-card-idUSKCN0HJ21I20140924 (last accessed Sept 25, 2023).

[61]  Bebe J. Anderson, JD, *HIV Stigma and Discrimination Persist, Even in Health Care*, AMA J. ETHICS (December 2009), https://journalofethics.ama-assn.org/article/hiv-stigma-and-discrimination-persist-even-health-care/2009-12.

48

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

202.  The concern about sharing medical information is compounded by the reality that advertisers view this type of information as particularly high value. Indeed, having access to the data women share with their healthcare providers allows advertisers to obtain data on children before they are even born. As one article put it: "the datafication of family life can begin from the moment in which a parent thinks about having a baby."[62] The article continues, "[c]hildren today are the very first generation of citizens to be datafied from before birth, and we cannot foresee — as yet — the social and political consequences of this historical transformation. What is particularly worrying about this process of datafication of children is that companies like . . . Facebook . . . are harnessing and collecting multiple typologies of children's data and have the potential to store a plurality of data traces under unique ID profiles."[63]

203.  Other privacy law experts have expressed concerns about the disclosure to third parties of a users' sensitive medical information. For example, Dena Mendelsohn—the former Senior Policy Counsel at Consumer Reports and current Director of Health Policy and Data Governance at Elektra Labs—explained that having your personal health information disseminated in ways you are unaware of could have serious repercussions, including affecting your ability to obtain life insurance and how much you pay for that coverage, increase the rate you are charged on loans, and leave you vulnerable to workplace discrimination.[64]

204.  A 2021 report by Invisibly found that personal medical information is one of the most valuable pieces of information within the market for data. The report noted that "[i]t's worth acknowledging that because health care records often feature a more

---

[62]    Veronica Barassi, *Tech Companies Are Profiling Us From Before Birth*, MIT PRESS READER (January 14, 2021), https://thereader.mitpress.mit.edu/tech-companies-are-profiling-us-from-before-birth/ (last accessed Sept 25, 2023).

[63]    *Id.*

[64]    Class Action Complaint, *Jane Doe v. Regents of the Univ. of Cal. d/b/a UCSF Medical Center*, CLASS ACTION (Feb. 9, 2023), https://www.classaction.org/media/doe-v-regents-of-the-university-of-california.pdf.

49

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

complete collection of the PII User's identity, background, and personal identifying information (PII), health care records have proven to be of particular value for data thieves. While a single social security number might go for $0.53, a complete health care record sells for $250 on average.[65]

| Record Type | Average Price |
|---|---|
| Health Care Record | $250.15 |
| Payment Card Details | $5.40 |
| Banking Records | $4.12 |
| Access Credentials | $0.95 |
| Social Security Number | $0.53 |
| Credit Record | $0.31 |
| Basic PII | $0.03 |

205. Defendants surreptitiously collected and used Plaintiffs' and Class Members' Private Information, including highly sensitive medical information, through Meta Pixel in violation of Plaintiffs' and Class Members' privacy interests.

## **REPRESENTATIVE PLAINTIFFS' EXPERIENCES**

**Plaintiff B.K.**

206. Plaintiff B.K. began receiving healthcare services from Defendant Desert Regional Medical Center since at least 2011 and accessed those services via

---

[65] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD DIGITAL ECONOMY PAPERS, NO. 220 (Apr. 2, 2013) https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en (last visited September 27, 2023).

50

FIRST AMENDED CLASS ACTION COMPLAINT

Defendant Desert Regional's Website and Patient Portal ("**DRMC Web Properties**").

207. The Defendants encouraged Plaintiff B.K. to utilize DRMC's website and online portal in order to search for doctors, make appointments, review medical treatments, and to review charts from previous exams.[66]

208. While using DRMC Web Properties, Plaintiff B.K. communicated sensitive – and what she expected to be confidential – personal and medical information to Defendants.

209. Plaintiff B.K. used DRMC Web Properties to research healthcare providers (including breast cancer specialists and primary care doctors) and communicate with them, research particular medical concerns and treatments, fill out forms and questionnaires, schedule and attend appointments including mammograms, and perform other tasks related to her specific medical inquiries and treatment.

210. Plaintiff B.K. also utilized DRMC's Patient Portal to refill prescriptions, look at her bills and payments, to see her test results and notes from her appointments and from her visits to the ER.

211. While using DRMC's digital services, Plaintiff B.K. communicated and received information regarding her appointments, treatments, medications, and clinical information, including her annual mammograms, surgeries, ER visits, lab work, and scans. As a result of the Meta Pixel that Defendants chose to install on their Web Properties, this information was intercepted, viewed analyzed, and used by unauthorized third parties.

---

[66] *See, e.g.*, *Welcome to My Health Rec, Our Patient Portal*, DESERT CARE NETWORK, https://www.desertcarenetwork.com/portal (last accessed Sept 25, 2023) ("My Health Rec is a great way to view, download and transmit your up-to-date health information, all from the convenience and privacy of your own home, or anywhere Internet access is available — 24 hours a day, seven days a week. We recently added opportunities for additional documents you can see online, such as pathology reports, discharge summaries and progress/procedure notes").

51

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

212. Plaintiff B.K.'s interactions with DRMC's Web Properties were not merely browsing generic web pages. Plaintiff B.K actively sought specific medical expertise related to breast cancer and other of her health concerns. These queries and forms reveal sensitive insights about her personal health situation, predispositions, concerns, and decisions related to her medical conditions.

213. Plaintiff B.K. accessed DRMC's Web Properties in connection with receiving healthcare services from DRMC or DRMC's affiliates at DRMC's direction and with DRMC's encouragement.

214. Plaintiff B.K. has used and continues to use the same devices to maintain and to access an active Facebook account throughout the relevant period in this case.

215. As a medical patient using DRMC's health services, Plaintiff B.K. reasonably expected that her online communications with DRMC were solely between herself and DRMC, and that such communications would not be transmitted or intercepted by a third party. Plaintiff B.K. also relied on DRMC's Privacy Policies in reasonably expecting DRMC would safeguard her Private Information. But for her status as Defendants' patient and their representations via their Privacy Policies, Plaintiff B.K. would not have disclosed her Private Information to Defendants.

216. Plaintiff B.K. is also an active Facebook user and has had a Facebook account since at least 2007.

217. Plaintiff B.K. used the same e-mail address to sign up for a Facebook account and for DRMC's Patient Portal.

218. As a result of Defendants' use of the Meta Pixel, Plaintiff B.K. began receiving ads on Facebook relating to her particular medical conditions and treatments, including breast cancer and hysterectomy.

219. During her time as DRMC's patient, Plaintiff B.K. never consented to the use of her Private Information by third parties or to Defendants enabling third parties, including Facebook and others to access or interpret such information.

220. Notwithstanding, through Meta Pixel and similar tracking technologies embedded on DRMC's Web Properties, Defendants transmitted Plaintiff B.K.'s Private Information to third parties, including Facebook and others.

**Plaintiff N.Z.**

221. Plaintiff N.Z. is a frequent user of Defendant JFK Hospital's website and Portal.

222. Defendants encouraged Plaintiff N.Z. to use Defendant JFK's Hospital website and Patient Portal ("**JFK Hospital Web Properties**") to search for doctors, review medical treatments, make appointments, and review test results.

223. Since at least 2016, Plaintiff N.Z. has been receiving healthcare services from Defendant JFK Hospital and has utilized JFK Hospital Web Properties in connection with those services.

224. While using JFK Hospital Web Properties, Plaintiff N.Z. communicated sensitive – and what she expected to be confidential – personal and medical information to Defendants.

225. Plaintiff N.Z. used JFK Hospital Web Properties to research healthcare providers (including primary care doctors) and communicate with them, research particular medical concerns and treatments, fill out forms and questionnaires, schedule and attend appointments, and perform other tasks related to her specific medical inquiries and treatment.

226. Plaintiff N.Z. also utilized JFK Hospital's Portal to refill prescriptions, look at her bills and payments, and see her test results and notes from her appointments.

227. Plaintiff N.Z. also used JFK Hospital's Portal as a proxy for her husband, who is diagnosed with specific medical conditions including diabetes.

228. While using JFK Hospital's services, Plaintiff N.Z. communicated and received information regarding her appointments, treatments, medications, and clinical information, including her lab work and scans. As a result of the Meta Pixel

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

Defendants chose to install on their Web Properties, this information was intercepted, viewed analyzed, and used by unauthorized third parties.

229.  Plaintiff N.Z. also accessed JFK Hospital's Web Properties in connection with receiving healthcare services (for herself and her husband) from JFK Hospital or JFK Hospital's affiliates at JFK Hospital's direction and with JFK Hospital's encouragement.

230.  Plaintiff N.Z.'s interactions with JFK Hospital's Web Properties were not merely browsing generic web pages. Plaintiff N.Z. actively sought specific medical expertise related to her and her husband's medical conditions, including diabetes.

231.  Plaintiff N.Z. has used and continues to use the same devices to maintain and to access an active Facebook account throughout the relevant period in this case.

232.  As a medical patient using JFK Hospital's health services, Plaintiff N.Z. reasonably expected that her online communications with JFK Hospital were solely between herself and JFK Hospital, and that such communications would not be transmitted or intercepted by a third party. Plaintiff N.Z. also relied on JFK Hospital's Privacy Policies in reasonably expecting JFK Hospital would safeguard her Private Information. But for her status as Defendants' patient and Defendants' representations via its Privacy Policies, Plaintiff N.Z. would not have disclosed her Private Information to Defendant.

233.  Plaintiff N.Z. is also an active Facebook user and has had a Facebook account since at least 2012.

234.  As a result of Defendants' use of the Meta Pixel, Plaintiff N.Z. began receiving advertisements on Facebook relating to her and her husband's particular medical conditions and treatments.

235.  During her time as JFK Hospital's patient, Plaintiff N.Z. never consented to the use of her or her husband's Private Information by third parties or to Defendants enabling third parties, including Facebook, Google, and others to access or interpret such information.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

236. Notwithstanding, through the Meta Pixel and similar tracking technologies embedded on JFK Hospital's Web Properties, Defendants transmitted Plaintiff N.Z.'s and her husband's Private Information to third parties, including Facebook, Google, and others.

## TOLLING, CONCEALMENT & ESTOPPEL

237. The applicable statutes of limitation have been tolled as a result of Defendants' knowing and active concealment and denial of the facts alleged herein.

238. Defendants secretly incorporated the Meta Pixel into their Web Properties and patient portals, providing no indication to Users that their User Data, including their Private Information, would be disclosed to unauthorized third parties.

239. Defendants had exclusive knowledge that the Meta Pixel was incorporated on its Web Properties, yet failed to disclose that fact to Users, or inform them that by interacting with their websites Plaintiffs' and Class Members' User Data, including Private Information, would be disclosed to third parties, including Facebook.

240. Plaintiffs and Class Members could not with due diligence have discovered the full scope of Defendants' conduct because the incorporation of Meta Pixels is highly technical and there were no disclosures or other indications that would inform a reasonable consumer that Defendants were disclosing and allowing Facebook to intercept Users' Private Information.

241. The earliest Plaintiffs and Class Members could have known about Defendants' conduct was approximately in April or May of 2023. Nevertheless, at all material times herein, Defendants falsely represented to Plaintiffs that their health information is not and will not be disclosed to any third party.

242. As alleged above, Defendants have a duty to disclose the nature and significance of their data disclosure practices but failed to do so. Defendants are therefore estopped from relying on any statute of limitations under the discovery rule.
///

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

# CLASS ALLEGATIONS

243. **Class Definition:** Plaintiffs bring this action on behalf of themselves and on behalf of various classes of persons similarly situated, as defined below, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.:

244. The **Nationwide Class** that Plaintiffs seek to represent is defined as:

> All individuals residing in the United States whose Private Information was disclosed to a third party without authorization or consent through the Meta Pixel on Defendants' Web Properties.

245. The California Sub-Class that Plaintiffs seek to represent is defined as:

> **California Sub-Class:** All individuals residing in the State of California whose Private Information was disclosed to a third party without authorization or consent through the Meta Pixel on Defendants' Web Properties.

246. The Nationwide Class, and the California Sub-Class are referred to collectively as the "Classes." Excluded from the Classes are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any Defendants' officer or director, any successor or assign and any Judge who adjudicates this case, including their staff and immediate family.

247. **The following people are excluded from the Classes:** (1) any Judge or Magistrate presiding over this action and members of their immediate families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

248. Plaintiffs reserve the right under Federal Rule of Civil Procedure 23 to amend or modify the Classes to include a broader scope, greater specificity, further

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

division into subclasses, or limitations to particular issues. Plaintiffs reserve the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

249.  The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

250. The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are all satisfied.

251. **Numerosity:** The exact number of Class Members is not available to Plaintiffs, but it is clear that individual joinder is impracticable. Millions of people have used Desert Care Network, Desert Regional Medical Center, Inc., and JFK Memorial Hospital, Inc.'s services since at least 2015. Members of the Class can be identified through Defendants' records or by other means.

252. **Commonality:** Commonality requires that the Class Members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Here, there is a common contention for all Class Members as to whether Defendants disclosed to third parties their Private Information without authorization or lawful authority.

253. **Typicality:** Plaintiffs' claims are typical of the claims of other Class Members in that Plaintiffs and the Class Members sustained damages arising out of Defendants' uniform wrongful conduct and data sharing practices.

254.  **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs' claims are made in a representative capacity on behalf of the Class Members. Plaintiffs have no interests antagonistic to the interests of the other Class Members. Plaintiffs have retained competent counsel to prosecute the case on behalf of Plaintiffs and the Class. Plaintiffs and Plaintiffs' counsel are committed to vigorously prosecuting this action on behalf of the Class members.

255. The declaratory and injunctive relief sought in this case includes, but is not limited to:

    a.   Entering a declaratory judgment against Defendants—declaring that Defendants' interception of Plaintiffs' and Class Members' Private Information among themselves and other third parties is in violation of the law;

    b.   Entering an injunction against Defendants:

        i.   preventing Defendants from sharing Plaintiffs' and Class Members' Private Information among themselves and other third parties;

        ii.   requiring Defendants to alert and/or otherwise notify all users of its websites and portals of what information is being collected, used, and shared;

        iii.   requiring Defendants to provide clear information regarding their practices concerning data collection from the users/patients of Defendants' Web Properties, as well as uses of such data;

        iv.   requiring Defendants to establish protocols intended to remove all personal information which has been leaked to Facebook and/or other third parties, and request Facebook/third parties to remove such information;

        v.   and requiring Defendants to provide an opt out procedure for individuals who do not wish for their information to be tracked while interacting with Defendants' Web Properties.

256. **Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and Class Members, and those questions predominate over any questions that may affect individual Class Members. Common questions and/or issues for Class members include, but are not necessarily limited to the following:

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

FIRST AMENDED CLASS ACTION COMPLAINT

i.  Whether Defendants' acts and practices violated California's Constitution, Art. 1, § 1;

ii. Whether Defendants' acts and practices violated California's Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.*;

iii. Whether Defendants' acts and practices violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*;

iv. Whether Defendants' unauthorized disclosure of Users' Private Information was negligent;

v.  Whether Defendants owed a duty to Plaintiffs' and Class Members not to disclose their Private Information to unauthorized third parties;

vi. Whether Defendants breached their duty to Plaintiffs' and Class Members not to disclose their Private Information to unauthorized third parties;

vii. Whether Defendants represented to Plaintiffs and the Class that they would protect Plaintiffs' and the Class Members' Private Information;

viii. Whether Defendants violated Plaintiffs' and Class Members' privacy rights;

ix. Whether Defendants' practices violated California's Confidentiality of Medical Information Act, Civ. Code §§ 56, *et seq.*;

x.  Whether Defendants' practices violated California's Constitution, Art. 1, § 1;

xi. Whether Plaintiffs and Class Members are entitled to actual damages, enhanced damages, statutory damages, and other monetary remedies provided by equity and law;

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

xii.  Whether injunctive and declaratory relief, restitution, disgorgement, and other equitable relief is warranted.

257.  **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class Members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual Class Members to obtain effective relief from Defendants' misconduct. Even if Class Members could mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

258.  Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.  Whether Defendants misrepresented that they would disclose personal information only for limited purposes that did not include purposes of delivering advertisements or collecting data for commercial use or supplementing consumer profiles created by data aggregators and advertisers;

b.  Whether Defendants' privacy policies misrepresented that they collected and shared User information with third-party service providers only for the limited purpose of providing access to its services;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

c. Whether Defendants misrepresented that they had in place contractual and technical protections that limit third-party use of User information and that it would seek User consent prior to sharing Private Information with third parties for purposes other than provision of its services;

d. Whether Defendants misrepresented that any information they receive is stored under the same guidelines as any health entity that is subject to the strict patient data sharing and protection practices set forth in the regulations propounded under HIPAA;

e. Whether Defendants misrepresented that they complied with HIPAA's requirements for protecting and handling Users' PHI;

f. Whether Defendants shared the Private Information that Users provided to Defendants with advertising platforms, including Facebook, without adequate notification or disclosure, and without Users' consent, in violation of health privacy laws and rules and its own privacy policy;

g. Whether Defendants integrated third-party tracking tools, consisting of automated web beacons ("**Pixels**") in their website that shared Private Information and User activities with third parties for unrestricted purposes, which included advertising, data analytics, and other commercial purposes;

h. Whether Defendants shared Private Information and activity information with Facebook using Facebook's tracking Pixels on their websites without Users' consent;

i. Whether Facebook used the information that Defendants shared with it for unrestricted purposes, such as selling targeted advertisements, data analytics, and other commercial purposes.

///

///

///

///

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

## COUNT ONE

## VIOLATION OF THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT CAL. CIV. CODE §§ 56, *et seq.*

### (*On behalf of Plaintiffs and the Nationwide Class*)

259.  Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

260.  Defendants are subject to the CMIA pursuant to California Civil Code § 56.10 because they are a "provider of health care" as defined by California Civil Code § 56.06(b); they operate hospitals, provide health care, maintain medical information, offer software to consumers designed to maintain medical information for the purposes of communications with doctors, receipt of diagnosis, treatment, or management of medical conditions.

261.  Section 56.10 states, in pertinent part, that "[n]o provider of health care . . . shall disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization . . . ."

262.  Section 56.101 of the CMIA states, in pertinent part, that "[a]ny provider of health care . . . who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties . . ." Cal. Civ. Code §§ 56.10, 56.101.

263.  Plaintiffs' and California Sub-Class Members' Private Information constitutes "medical information" under the CMIA because it consists of individually identifiable information in possession of and derived from a provider of healthcare regarding Plaintiffs' and California Sub-Class Members' medical history, test results, mental or physical condition, and/or treatment.

264.  Defendants violated Cal. Civ. Code § 56.10 because they failed to maintain the confidentiality of Users' medical information, and instead "disclose[d] medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization" by

soliciting, intercepting, and receiving Plaintiffs' and California Sub-Class Members' Private Information, and sharing it with advertisers and for advertising purposes. Specifically, Defendants knowingly, willfully, or negligently disclosed Plaintiffs' and California Sub-Class Members' medical information to Facebook, allowing Facebook to now advertise and target Plaintiffs and California Sub-Class Members, misusing their extremely sensitive Private Information.

265. Defendants violated Cal. Civ. Code § 56.101 because they knowingly, willfully, or negligently failed to create, maintain, preserve, store, abandon, destroy, and dispose of medical information in a manner that preserved its confidentiality by soliciting, intercepting, and receiving Plaintiffs' and California Sub-Class Members' Private Information, and sharing it with advertisers and for advertising purposes, Facebook's and Defendants' financial gain.

266. Defendants intentionally embedded Facebook Pixels, which facilitate the unauthorized sharing of Plaintiffs' and California Sub-Class Members' medical information.

267. Defendants violated Cal Civ. Code § 56.36(b) because they negligently released confidential information and records concerning Plaintiffs and California Sub-Class Members in violation of their rights under the CMIA.

268. As a direct and proximate result of Defendants' misconduct, Plaintiffs and California Sub-Class Members had their private communications containing information related to their sensitive and confidential Private Information intercepted, disclosed, and used by third parties.

269. As a result of Defendants' unlawful conduct, Plaintiffs and the California Sub-Class Members suffered an injury, including violation to their rights of privacy, loss of the privacy of their Private Information, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

270.  Plaintiffs and California Sub-Class Members are entitled to: (a) nominal damages of $1,000 per violation; (b) actual damages, in an amount to be determined at trial; (c) reasonable attorneys' fees, and costs.

## COUNT TWO

## VIOLATIONS OF ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA") 18 U.S.C. § 2511(1), *et seq.*

## Unauthorized Interception, Use, and Disclosure

### *(On behalf Plaintiffs and the Nationwide Class)*

271. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

272.  The ECPA protects both sending and receipt of communications.

273.  18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

274. The transmissions of Plaintiffs' Private Information to Defendants' Web Properties qualify as "communications" under the ECPA's definition of 18 U.S.C. § 2510(12).

275. **Electronic Communications.** The transmission of Private Information between Plaintiffs and Class Members and Defendants' Web Properties with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

276. **Content.** The ECPA defines content, when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

277.  Defendants' intercepted communications include, but are not limited to, communications to/from Plaintiffs and Class Members regarding PII and PHI, diagnosis of certain conditions, treatment/medication for such conditions, and scheduling of appointments, including annual mammograms, surgeries, ER visits, lab work, and scans. Furthermore, Defendants intercepted the "contents" of Plaintiffs' communications in at least the following forms:

a.    The parties to the communications;

b.    The precise text of patient search queries;

c.    Personally identifying information such as patients' IP addresses, Facebook IDs, browser fingerprints, and other unique identifiers;

d.    The precise text of patient communications about specific doctors;

e.    The precise text of patient communications about specific medical conditions, including but not limited to breast cancer, hysterectomy, and diabetes;

f.    The precise text of information generated when patients requested or made appointments,

g.    The precise text of patient communications about specific treatments;

h.    The precise text of patient communications about scheduling appointments with medical providers;

i.    The precise text of patient communications about billing and payment;

j.    The precise text of specific buttons on Defendants' Websites that patients click to exchange communications, including Log-Ins, Registrations, Requests for Appointments, Search, and other buttons;

k.    The precise dates and times when patients click to Log-In on Defendants' Websites;

l.    The precise dates and times when patients visit Defendants' Websites;

m.    Information that is a general summary or informs third parties of the general subject of communications that Defendants send back to patients in

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

response to search queries and requests for information about specific doctors, conditions, treatments, billing, payment, and other information

278.  **<u>Interception</u>**. The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device" and "contents … include any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(4), (8).

279.  **<u>Electronical, Mechanical or Other Device</u>**. The ECPA defines "electronic, mechanical, or other device" as "any device … which can be used to intercept a[n] … electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

a.      Plaintiffs' and Class Members' browsers;

b.      Plaintiffs' and Class Members' computing devices;

c.      Defendants' web-servers; and

d.      The Pixel code deployed by Defendants to effectuate the sending and acquisition of patient communications.

280.  By utilizing and embedding the Pixel on their Web Properties, Defendants intentionally intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Plaintiffs and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

281.  Specifically, Defendants intercepted Plaintiffs' and Class Members' electronic communications via the Pixel, which tracked, stored, and unlawfully disclosed Plaintiffs' and Class Members' Private Information to third parties such as Facebook.

282.  By intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiffs and Class Members to affiliates and other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendants violated 18 U.S.C. § 2511(1)(c).

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

283.  By intentionally using, or endeavoring to use, the contents of the electronic communications of Plaintiffs and Class Members, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendants violated 18 U.S.C. § 2511(1)(d).

284.  <u>Unauthorized Purpose</u>. Defendants intentionally intercepted the contents of Plaintiffs' and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State—namely, invasion of privacy, among others.

285.  The ECPA provides that a "party to the communication" may liable where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C § 2511(2)(d).

286.  Defendants are not a party to the communications based on their unauthorized duplication and transmission of communications with Plaintiffs and the Nationwide Class. However, even assuming Defendants are a party, Defendants' simultaneous, unknown duplication, forwarding, and interception of Plaintiffs' and Class Members' Private Information does not qualify for the party exemption.

287.  Defendants' acquisition of patient communications that were used and disclosed to Facebook was done for purposes of committing criminal and tortious acts in violation of the laws of the United States and individual States nationwide as set forth herein, including:

a.     Criminal violation of HIPAA, 42 U.S.C. § 1320d-6;

b.     Invasion of privacy;

c.     Breach of confidence;

d.     Breach of fiduciary duty;

e.     California Invasion of Privacy Act, §§ 630, *et seq.*;

f.     California Confidentiality of Medical Information Act, Cal. Civ. Code §§

67

FIRST AMENDED CLASS ACTION COMPLAINT

1        56, *et seq.*;

2        288. Defendants' conduct violated 42 U.S.C. § 1320d-6 in that it: Used and

3   caused to be used cookie identifiers associated with specific patients without patient

4   authorization; and disclosed individually identifiable health information to Facebook

5   without patient authorization.

6        289.  The penalty for violation is enhanced where "the offense is committed with

7   intent to sell, transfer, or use individually identifiable health information for commercial

8   advantage, personal gain, or malicious harm." 42 U.S.C. § 1320d-6.

9        290. Defendants' conduct would be subject to the enhanced provisions of 42

10  U.S.C. § 1320d-6 because Defendants' use of the Facebook source code was for

11  Defendants' commercial advantage to increase revenue from existing patients and gain

12  new patients.

13       291. Defendants are not exempt from ECPA liability under 18 U.S.C. §

14  2511(2)(d) on the ground that they were participants in Plaintiffs' and Class Members'

15  communications about their Private Information on their Web Properties, because they

16  used their participation in these communications to improperly share Plaintiffs' and

17  Class Members' Private Information with Facebook and third-parties that did not

18  participate in these communications, that Plaintiffs and Class Members did not know

19  third parties were receiving their information, and that Plaintiffs and Class Members did

20  not consent to receive this information.

21       292.  As such, Defendants cannot viably claim any exception to ECPA liability.

22       293. Courts around the country have uniformly held that a health care

23  provider's use of the Meta Pixel on its website without patient authorization is

24  actionable in tort or contract or a statutory violation. *See Doe v. Mercy Health*, Case

25  No. A 2002633 (Hamilton County, Ohio); *Doe v. Partners Health*, Case No. 1984-

26  CV-01651 (Suffolk County, Massachusetts); *Doe v. Sutter Health*, Case No. 34-2019-

27  00258072-CU-BT-GDS (Sacramento County, California); *Doe v. University*

28

68

FIRST AMENDED CLASS ACTION COMPLAINT

*Hospitals*, Case No. CV-20-9333357 (Cuyahoga County, Ohio); *Doe v. Sutter Health*, Case No. 34-2019-00258072-CU-BT-GDS (Sacramento County, California).

294. Plaintiffs and Class Members have suffered damages as a direct and proximate result of Defendants' invasion of privacy in that:

a. Learning that Defendants have intruded upon, intercepted, transmitted, shared, and used their Private Information (including information about their medical symptoms, conditions, and concerns, medical appointments, healthcare providers and locations, medications and treatments, and health insurance and medical bills) for commercial purposes has caused Plaintiffs and the Class Members to suffer emotional distress;

b. Defendants received substantial financial benefits from their use of Plaintiffs' and the Class Members' Private Information without providing any value or benefit to Plaintiffs or the Class Members;

c. Defendant received substantial, quantifiable value from their use of Plaintiffs' and the Class Members' Private Information, such as understanding how people use their Web Properties and determining what ads people see on their Web Properties, without providing any value or benefit to Plaintiffs or the Class Members;

d. Defendants have failed to provide Plaintiffs and the Class Members with the full value of the medical services for which they paid, which included a duty to maintain the confidentiality of their patient information; and

e. The diminution in value of Plaintiffs' and Class Members' Private Information and the loss of privacy due to Defendants making sensitive and confidential information, such as patient status, medical treatment, and appointments that Plaintiffs and Class Members intended to remain private no longer private.

295. Defendants intentionally used the wire or electronic communications to increase their profit margins. Defendants specifically used the Pixel to track and utilize Plaintiffs' and Class Members' Private Information for financial gain.

296. Defendants were not acting under color of law to intercept Plaintiffs' and the Class Members' wire or electronic communication.

297. Plaintiffs and Class Members did not authorize Defendants to acquire the content of their communications for purposes of invading their privacy via the Pixel.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

298.  Any purported consent that Defendants received from Plaintiffs and Class Members was not valid.

299.  In sending and in acquiring the content of Plaintiffs' and Class Members' communications relating to the browsing of Defendants' Web Properties, Defendants' purpose was tortious, criminal, and designed to violate federal and state legal provisions including a knowing intrusion into a private, place, conversation, or matter that would be highly offensive to a reasonable person.

300.  As a result of Defendants' violation of the ECPA, Plaintiffs and the Class are entitled to all damages available under 18 U.S.C. § 2520, including statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

## COUNT THREE

## VIOLATIONS OF ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA") 18 U.S.C. § 2511(3)(a), *et seq.*

## Unauthorized Divulgence by Electronic Communications Service

### (*On Behalf of Plaintiffs and the Nationwide Class*)

301.  Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

302.  The ECPA Wiretap statute provides that "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient." 18 U.S.C. § 2511(3)(a).

303.  Electronic Communication Service. An "electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050   F: (213) 788-4070 | clarksonlawfirm.com

304. Defendants' Websites are an electronic communication service. The websites provide to users thereof the ability to send or receive electronic communications. In the absence of Defendants' Websites, internet users could not send or receive communications regarding Plaintiffs' and Nationwide Class Members' Private Information.

305. <u>Intentional Divulgence</u>. Defendants intentionally designed and implemented the Pixel within their Web Properties, and were or should have been aware that, if misconfigured, it could divulge Plaintiffs' and Nationwide Class Members' Private Information.

306. <u>While in Transmission</u>. Upon information and belief, Defendants' divulgence of the contents of Plaintiffs' and Nationwide Class Members' communications was contemporaneous with their exchange with Defendants' Web Properties, to which they directed their communications.

307. Defendants divulged the contents of Plaintiffs' and Nationwide Class Members' electronic communications to third parties like Facebook without authorization.

308. <u>Exceptions do not apply</u>. In addition to the exception for communications directly to an ECS or an agent of an ECS, the Wiretap Act states that "[a] person or entity providing electronic communication service to the public may divulge the contents of any such communication as follows:

a.    "as otherwise authorized in section 2511(2)(a) or 2517 of this title;"

b.    "with the lawful consent of the originator or any addressee or intended recipient of such communication;"

c.    "to a person employed or authorized, or whose facilities are used, to forward such communication to its destination;" or,

d.    "which were inadvertently obtained by the service provider and which appear to pertain to the commission of a crime, if such divulgence is made to a law enforcement agency." 18 U.S.C. § 2511(3)(b).

71

309. Section 2511(2)(a)(i) provides:
It shall not be unlawful under this chapter for an operator
of a switchboard, or an officer, employee, or agent of a
provider of wire or electronic communication service,
whose facilities are used in the transmission of a wire or
electronic communication, to intercept, disclose, or use that
communication in the normal course of his employment
while engaged in any activity which is a necessary incident
to the rendition of his service or to the protection of the
rights or property of the provider of that service, except
that a provider of wire communication service to the public
shall not utilize service observing or random monitoring
except for mechanical or service quality control checks.

310. Defendants' divulgence of the contents of Plaintiffs' and Nationwide
Class Members' communications on Defendants' Websites to Facebook was not
authorized by 18 U.S.C. § 2511(2)(a)(i) in that it was neither: (1) a necessary incident
to the rendition of Defendants' services; nor (2) necessary to the protection of the
rights or property of Defendants.

311. Section 2517 of the ECPA relates to investigations by government
officials and has no relevance here.

312. Defendants' divulgence of the contents of user communications on
Defendants' browsers through the Pixel code was not done "with the lawful consent
of the originator or any addresses or intended recipient of such communication[s]."
As alleged above: (a) Plaintiffs and Nationwide Class Members did not authorize
Defendants to divulge the contents of their communications; and (b) Defendants did
not procure the "lawful consent" from the Web Properties with which Plaintiffs and
Nationwide Class Members were exchanging information.

313. Moreover, Defendants divulged the contents of Plaintiffs' and
Nationwide Class Members' communications through the Pixel to individuals who
are not "person[s] employed or whose facilities are used to forward such
communication to its destination."

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

314. The contents of Plaintiffs' and Nationwide Class Members' communications did not appear to pertain to the commission of a crime and Defendants did not divulge the contents of their communications to a law enforcement agency.

315. As a result of the above actions and pursuant to 18 U.S.C. § 2520, the Court may assess statutory damages; preliminary and other equitable or declaratory relief as may be appropriate; punitive damages in an amount to be determined by a jury; and reasonable attorney fees and other litigation costs reasonably incurred.

**COUNT FOUR**

**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ("CIPA"), CAL. PENAL CODE § 630, *et seq*.**

***(On behalf of Plaintiffs and the California Sub-Class)***

316. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

317. Each Defendant is a person for purposes of Cal. Penal Code §631.

318. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following: (1) "intentionally taps, or makes any unauthorized connection…with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within [the state of California]," (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained," or (4)

FIRST AMENDED CLASS ACTION COMPLAINT

*aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section*" (emphasis added).

319. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

320. Defendants' Web Properties are a "machine, instrument, contrivance, or ... other manner" used to engage in the prohibited conduct at issue here.

321. At all relevant times, Defendants entered into contracts with Facebook, in order to track certain activities on their Web Properties. Defendants allowed Facebook to intercept and otherwise track Users' clicks, communications, searches, and other User activities. Defendants activated Facebook Pixel tracking tools, allowing Facebook to intentionally tap, and make unauthorized connections with, the lines of internet communication between Plaintiffs and California Sub-Class Members on the one hand, and Defendants' Web Properties on the other hand, without consent of all parties to the communication.

322. At all relevant times, by using the Facebook Pixel, Facebook willfully and without the consent of Plaintiffs and California Sub-Class Members, read or attempted to learn the contents or meaning of electronic communications of Plaintiffs and putative California Sub-Class Members on Defendants' Web Properties. This occurred while the electronic communications were in transit or passing over any wire, line, or cable, or were being sent from or received at any place within California.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

Facebook    intercepted    Plaintiffs'    and    California    Sub-Class    Members'
communications – including the very terms and phrases they typed into the search bar
– without their authorization or consent.

323. Defendants knowingly installed Pixel tracking technology on their
websites, which systematically transmitted all communications between Plaintiffs
and the Defendants websites to Meta. Indeed, Meta released an explicit statement to
the Court on November 9, 2022, that it neither desired nor intended to possess health
information data. In April 2018, Meta proactively added a clause to its user contract
specifying that it requires each of its partners, including Defendants, to have "lawful"
rights to collect, use, and share user data before providing any data to Meta.

324. Defendants had the explicit option to disable the Pixel technology on their
Web Properties, but chose not to exercise this option, thereby continuing to share data
with Facebook despite the availability of preventive measures.

325. These assertions highlight that Meta advised third party entities, like
Defendants, to refrain from sending any information they did not have the legal right
to send and expressly emphasized not to transmit health information. Yet, Defendants,
in direct contravention of these advisories and in a clear display of intent, continued
to employ Pixel tracking on their websites, thereby sharing sensitive patient data
without proper authorization or consent.

326. Additionally, by embedding Facebook Pixels on their websites,
Defendants aided, agreed with, employed, and conspired with Facebook to wiretap
consumers to Defendants' Web Properties using the Facebook Pixel snipped codes
and to accomplish the wrongful conduct at issue here.

327. Plaintiffs and California Sub-Class Members did not consent to the
interception, reading, learning, recording, and collection of their electronic
communications with Defendants. Accordingly, the interception was unlawful and
tortious.

FIRST AMENDED CLASS ACTION COMPLAINT

328.  Defendants both intercepted and aided Facebook in the interception of "contents" of Plaintiffs' communications in at least the following forms:

a.      The parties to the communications;

b.      The precise text of patient search queries;

c.      Personally identifying information such as patients' IP addresses, Facebook IDs, browser fingerprints, and other unique identifiers;

d.      The precise text of patient communications about specific doctors;

e.      The precise text of patient communications about specific medical conditions, including but not limited to breast cancer, hysterectomy, and diabetes;

f.      The precise text of information generated when patients requested or made appointments;

g.      The precise text of patient communications about specific treatments;

h.      The precise text of patient communications about scheduling appointments with medical providers;

i.      The precise text of patient communications about billing and payment;

j.      The precise text of specific buttons on Defendants' Websites that patients click to exchange communications, including Log-Ins, Registrations, Requests for Appointments, Search, and other buttons;

k.      The precise dates and times when patients click to Log-In on Defendants' Websites;

l.      The precise dates and times when patients visit Defendants' Websites;

m. Information that is a general summary or informs third parties of the general subject of communications that Defendants send back to patients in response to search queries and requests for information about specific doctors, conditions, treatments, billing, payment, and other information; and

n.      Any other content that Defendants have aided third parties in scraping from webpages or communication forms at Web Properties.

FIRST AMENDED CLASS ACTION COMPLAINT

329. Defendants gave substantial assistance to Facebook in violating the privacy rights of Defendants' patients, despite the fact that Defendants' conduct constituted a breach of the duties of confidentiality that medical providers owe their patients. Defendants knew that the installation of the Meta Pixel on their website would result in the unauthorized disclosure of their patients' communications to Facebook, yet nevertheless did so anyway.

330. The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

331. Unless enjoined, Defendants will continue to commit the illegal acts alleged here. Plaintiffs continue to be at risk because they frequently use Defendants' Web Properties to search for information about medical products, health conditions or services. Plaintiffs continue to desire to use the Defendants' Web Properties for that purpose, including but not limited to investigating health conditions (e.g., diabetes), diagnoses (e.g., COVID-19), procedures, test results, treatment status, the treating physician, medications, and/or allergies.

332. Plaintiffs and California Sub-Class Members may or are likely to visit Defendants' Web Properties in the future but have no practical way of knowing whether their website communications will be collected, viewed, accessed, stored, and used by Facebook.

333. Plaintiffs and California Sub-Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

334. In addition to statutory damages, Defendants' breach caused Plaintiffs and Class Members, at minimum, the following damages: (1) Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private; and (2) Defendants took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs' and Class Members' knowledge or informed consent and without sharing the benefit of such value.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

**COUNT FIVE**

**VIOLATION OF THE UNFAIR COMPETITION LAW ("UCL")**

**CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *et seq*.**

*(On behalf of Plaintiffs and the California Sub-Class)*

335. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

### A. Unlawful Prong

336. Defendants' conduct as alleged herein was unfair within the meaning of the UCL. The unfair prong of the UCL prohibits unfair business practices that either offend an established public policy or that are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

337. Defendants' conduct, as alleged herein, was also fraudulent within the meaning of the UCL. Defendants made deceptive misrepresentations and omitted known material facts in connection with the solicitation, interception, disclosure, and use of Plaintiffs' and California Sub-Class Members' Private Information. Defendants actively concealed and continued to assert misleading statements regarding their protection and limitation on the use of the Private Information. Meanwhile, Defendants were collecting and sharing Plaintiffs' and California Sub-Class Members' Private Information without their authorization or knowledge to profit off of the information and deliver targeted advertisements to Plaintiffs and California Sub-Class Members, among other unlawful purposes.

338. Defendants' conduct, as alleged herein, was unlawful within the meaning of the UCL because they violated regulations and laws as discussed herein, including but not limited to HIPAA, Section 5 of the Federal Trade Commission Act ("**FTCA**"), 15 U.S.C. § 45, and the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq*.

339. Had Plaintiffs and California Sub-Class Members known Defendants would disclose and misuse their Private Information in contravention of Defendants'

78

representations, they would never have used Defendants websites or their MyChart portal and would not have shared their Private Information.

340. Defendants' unlawful actions in violation of the UCL have caused and are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

341. As a direct and proximate result of Defendants' misconduct, Plaintiffs and California Sub-Class Members had their private communications containing information related to their sensitive and confidential Private Information intercepted, disclosed, and used by third parties, including but not limited to Facebook.

342. As a result of Defendants' unlawful conduct, Plaintiffs and California Sub-Class Members suffered an injury, including violation to their rights of privacy, loss of value and privacy of their Private Information, loss of control over their sensitive personal information, and suffered embarrassment and emotional distress as a result of this unauthorized sharing of information.

**B. Unfair Prong**

343. Defendants engaged in unfair business practices by disclosing Plaintiffs' and California Sub-Class Members' Private Information to unrelated third parties, including Facebook, without prior consent despite their promises to keep such information confidential.

344. Defendants' unfair business practices included widespread violations of Plaintiffs' and California Sub-Class Members' rights to privacy, including their failure to inform the public that using its Web Properties would result in disclosure of highly private information to third parties.

345. Because Defendants are in the business of providing medical and mental healthcare services, Plaintiffs and California Sub-Class Members relied on Defendants to advise them of any potential disclosure of their Private Information.

FIRST AMENDED CLASS ACTION COMPLAINT

346. Plaintiffs and California Sub-Class Members were entitled to assume, and did assume, that Defendants would take appropriate measures to keep their Private Information secure and confidential. At no point did Plaintiffs expect to become a commodity on which Defendants and Facebook would trade.

347. Plaintiffs and the California Sub-Class Members reasonably relied upon the representations Defendants made in their Privacy Policy, including those representations concerning the confidentiality of Private Information, such as patient health information.

348. Defendants were in sole possession of and had a duty to disclose the material information that Plaintiffs' and California Sub-Class Members' private information was being shared with third parties.

349. Had Defendants disclosed that they shared Private Information with third parties, Plaintiffs and the California Sub-Class would not have used Defendants' services at the level they did.

350. The harm caused by the Defendants' conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendants' legitimate business interests other than Defendants' conduct described herein.

351. Defendants' acts, omissions and conduct also violate the unfair prong of the UCL because those acts, omissions and conduct offended public policy (including the aforementioned federal and state privacy statutes and state consumer protection statutes, such as HIPAA), and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and California Sub-Class Members.

352. As a direct result of Plaintiffs and California Sub-Class Members' reliance on Defendants' representations that Defendants would keep their Private Information confidential and Defendants' express representation that they would not share Private Information with third parties without the Users' express consent,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

Plaintiffs and California Sub-Class Members shared highly sensitive information through their use of the Web Properties, causing them to suffer damages when Defendants disclosed said information to a third party.

353. As a direct result of Defendants' violations of the UCL, Plaintiffs and California Sub-Class Members have suffered injury in fact and lost money or property, including but not limited to payments to Defendants and/or other valuable consideration. The unauthorized access to Plaintiffs' and California Sub-Class Members' private and personal data also diminished the value of that Private Information.

354. As a direct result of its unfair practices, Defendants has been unjustly enriched and should be required to make restitution to Plaintiffs and California Sub-Class Members pursuant to §§ 17203 and 17204 of the California Business & Professions Code, disgorgement of all profits accruing to Defendants because of their unlawful business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5) and injunctive or other equitable relief.

## COUNT SIX

## INVASION OF PRIVACY UNDER CALIFORNIA'S CONSTITUTION, ART. I, § 1.

### *(On behalf of Plaintiffs and the California Sub-Class)*

355. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

356. Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const., Art. I, § 1.

357. The right to privacy in California's Constitution creates a private right of action against private and government entities.

FIRST AMENDED CLASS ACTION COMPLAINT

358.  Plaintiffs and California Sub-Class Members have and continue to have a reasonable expectation of privacy and interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without their knowledge, authorization, or consent.

359. At all relevant times, by using Facebook's Meta Pixel to record and communicate individually identifying information alongside their confidential medical communications, the Defendants invaded Plaintiffs' and California Sub-Class Members' privacy rights under the California Constitution.

360. Plaintiffs B.K. and N.Z. and California Sub-Class Members had a reasonable expectation that their communications, identity, health information, and other data would remain confidential, and that the Defendants would not install wiretaps on their Web Properties to secretly transmit communications to a third party.

361. Plaintiffs B.K. and N.Z. and California Sub-Class Members did not authorize the Defendants to record and transmit Plaintiffs B.K. and N.Z.'s and California Sub-Class Members' Private Information – including private medical communications alongside their personally identifiable health information – to a third party, Facebook. *See* Figures 2-17 of Defendants' Web Properties above.

362. This invasion of privacy is serious in nature, scope, and impact because it relates to patients' private medical communications. Moreover, it constitutes an egregious breach of the societal norms underlying the privacy right.

363.  As a result of the Defendants' actions, Plaintiffs and California Sub-Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

FIRST AMENDED CLASS ACTION COMPLAINT

364. Plaintiffs and California Sub-Class Members have been damaged as a direct and proximate result of the Defendants' invasion of their privacy and are entitled to just compensation, including monetary damages.

365. Plaintiffs and California Sub-Class Members seek appropriate relief for their injuries, including but not limited to damages that will reasonably compensate Plaintiffs and Sub-Class Members for the harm to their privacy interests as a result of the intrusion(s) upon Plaintiffs and California Sub-Class Members' privacy.

366. Plaintiffs and California Sub-Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of the Defendants' conduct, injuring Plaintiffs and California Sub-Class Members in conscious disregard of their rights.

367. Plaintiffs seek all other relief as the Court may deem just, proper, and available for invasion of privacy under the California Constitution, on behalf of the California Sub-Class.

## **COUNT SEVEN**
## **INVASION OF PRIVACY**
## **INTRUSION UPON SECLUSION**
### *(On behalf Plaintiffs and the Nationwide Class)*

368. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

369. Plaintiffs and Nationwide Class Members had a reasonable and legitimate expectation of privacy in the Private Information that Defendants failed to adequately protect against disclosure from unauthorized parties.

370. Defendants owed a duty to Plaintiffs and Nationwide Class Members to keep their Private Information confidential.

371. Defendants failed to protect and release to unknown and unauthorized third parties the Private Information of Plaintiffs and Nationwide Class Members.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

372. By failing to keep Plaintiffs' and Nationwide Class Members' Private Information confidential and safe from misuse, Defendants knowingly sharing highly sensitive Private Information with Facebook, Defendants unlawfully invaded Plaintiffs' and Nationwide Class Members' privacy by, among others: (i) intruding into Plaintiffs' and Nationwide Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) failing to adequately secure their Private Information from disclosure to unauthorized persons; and (iii) enabling and facilitating the disclosure of Plaintiffs' and Class Members' Private Information without authorization or consent.

373. Plaintiffs' and Nationwide Class Members' expectation of privacy was and is especially heightened given Defendants' consistent representations that Users' information would remain confidential and would not be disclosed to anyone without User consent.

374. Defendants' privacy policy specifically provides, "The Facility is required by law to ***protect the privacy of your medical information***…" and "Your written authorization ("Your Marketing Authorization") also must be obtained prior to using your PHI to send you any marketing materials."[67]

375. Defendants knew, or acted with reckless disregard of the fact that a reasonable person in Plaintiffs' and Nationwide Class Members' position would consider their actions highly offensive.

376. Defendants' unauthorized surreptitious recording, monitoring, and sharing of the Users' activities, searches, researching diagnosis and treatment, searching for doctors and medical specialists violated expectations of privacy that have been established by social norms.

377. As a proximate result of such unauthorized disclosures, Plaintiffs' and Nationwide Class Members' reasonable expectations of privacy in their Private

---

[67] *Notice of Privacy Practices*, *supra* note 35.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

Information was unduly frustrated and thwarted and caused damages to Plaintiffs and Nationwide Class Members.

378. Plaintiffs and Nationwide Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional natura of Defendants' conduct, directed at injuring Plaintiffs and Nationwide Class Members in conscious disregard of their rights.

379. Plaintiffs seek injunctive relief on behalf of the Nationwide Class, restitution, as well as any and all other relief that may be available at law or equity. Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause irreparable injury to Plaintiffs and Nationwide Class Members. Plaintiffs and Nationwide Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the Nationwide Class.

**COUNT EIGHT**

**BREACH OF IMPLIED CONTRACT**

***(On behalf of Plaintiffs and the Nationwide Class)***

380. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

381. When Plaintiffs and Nationwide Class Members provided their Private Information to Defendants in exchange for services, they entered into implied contracts by which Defendants agreed to safeguard and not disclose such Private Information without consent.

382. Plaintiffs and Nationwide Class Members accepted Defendants' offers of services and provided their Private Information to Defendants via the Web Properties.

383. Plaintiffs and Nationwide Class Members would not have entrusted Defendants with their Private Information in the absence of an implied contract between them that included Defendants' promise not to disclose Private Information without consent.

FIRST AMENDED CLASS ACTION COMPLAINT

384. Plaintiffs and Nationwide Class Members fully performed their obligations under the implied contracts with Defendants.

385. Defendants breached these implied contracts by disclosing Plaintiffs' and Nationwide Class Members' Private Information to unauthorized third parties, including Facebook.

386. As a direct and proximate result of Defendants' breaches of these implied contracts, Plaintiffs and Nationwide Class Members sustained damages as alleged herein. Plaintiffs and Nationwide Class Members would not have used Defendants' services, or would have paid substantially less for these services, had they known their Private Information would be disclosed.

387. Plaintiffs and Nationwide Class Members are entitled to compensatory and consequential damages as a result of Defendants' breach of implied contract.

## COUNT NINE

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, Cal. Civ. Code § 1750, *et seq*. ("CLRA")

### (*On behalf of Plaintiffs and the California Sub-Class*)

388. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

389. Defendants engaged in "unfair methods of competition and unfair or deceptive acts . . . in a transaction . . . that result[ed] . . . in the sale . . . of goods" to Plaintiffs and the Class Members in violation of Cal. Civ. Code § 1750 and Cal. Civ. Code § 1770(a)(5), (7), (9), (14), (16).

390. For instance, Defendants made representations that they would protect Plaintiffs' and the California Sub-Class Members' privacy interest, including promising that they will keep Private Information private and secure, that Defendants do not sell Users' Private Information, and that they will only disclose Private Information under certain circumstances, none of which was true.

391. Defendants made these representations with no intention of living up to

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

these representations. Contrary to these representations, Defendants disclosed and allowed third parties to intercept its customers' Private Information.

392. Further, Defendants failed to disclose they secretly shared, used, and allowed third parties to intercept Plaintiffs' and California Sub-Class Members' Private Information.

393. Defendants were under a duty to disclose this information given Defendants' relationship with its customers and Defendants' exclusive knowledge of its misconduct (e.g., the tracking technology incorporated on Defendants' Websites, the fact that Private Information is disclosed to unauthorized third parties, that Defendants allowed third parties to intercept Private Information through this technology, and how Defendants and third parties used this data).

394. Plaintiffs and California Sub-Class Members would not have purchased, or would have paid significantly less for, Defendants' medical services had Defendants not made these false representations. Defendants profited directly from these sales, including through payment for these services, and from the Private Information disclosed and intercepted.

395. Plaintiffs, individually and on behalf of the California Sub-Class Members, seek an injunction requiring Defendants to: (a) stop using Pixels on their websites; (b) obtain consent prior to disclosing and otherwise using Plaintiffs' and California Sub-Class Members' Private Information; and (c) delete the Private Information already collected, and any other relief which the court deems proper.

## COUNT TEN
## LARCENY/RECEIPT OF STOLEN PROPERTY (VIOLATION OF CALIFORNIA PENAL CODE § 496(a) and (c)
### *(On behalf of Plaintiffs and California Sub-Class)*

396. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

397. Courts recognize that internet users have a property interest in their personal information and data. *See Calhoun v. Google, LLC,* 526 F. Supp. 3d 605, at *21 (N.D. Cal. Mar. 17, 2021) (recognizing property interest in personal information and rejecting Google's argument that "the personal information that Google allegedly stole is not property"); *In re Experian Data Breach Litigation,* 2016 U.S. Dist. LEXIS 184500, at *5 (C.D. Cal. Dec. 29, 2016) (loss of value of PII is a viable damages theory); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.,* 440 F. Supp. 3d 447, 460 (D. Md. 2020) ("The growing trend across courts that have considered this issue is to recognize the lost property value of this [personal] information."); *Simona Opris v. Sincera,* 2022 U.S. Dist. LEXIS 94192, at *20 (E.D. Pa. 2022) (collecting cases).

398. Cal. Penal Code §496(c) permits "any" person who has been injured by a violation of section 496(a) to recover three times the amount of actual damages, costs of suit and attorney's fees in a civil suit.

399. Penal Code § 496(a) creates an action against "any" person who (1) receives "any" property that has been stolen or obtained in any manner constituting theft, knowing the property to be stolen or obtained, or (2) conceals, sells, withholds, or aids in concealing or withholding "any" property from the owner, knowing the property to be so stolen or illegally obtained.

400. Under Penal Code § 1.07(a)(38), "person" means "an individual, corporation, or association." Thus, Defendants are persons under section 496(a).

401. As set forth herein, the Users' Private Information was stolen or obtained by theft, without limitation, under Penal Code §484, by false or fraudulent representations or pretenses. At no point did the Defendants have the Plaintiffs' consent to duplicate their searches and send them to Facebook.

402. Defendants meet the grounds for liability of section 496(a) because they, and each of them:

FIRST AMENDED CLASS ACTION COMPLAINT

a. knew the Private Information was stolen or obtained by theft and/or false pretenses; and, with such knowledge,

b. transmitted such information to unauthorized third parties, like Facebook.

403. Defendants violated the second ground for liability of section 496(a) because they, and each of them:

a. knew the Private Information was stolen or obtained by theft; and, with such knowledge,

b. concealed, withheld, or aided in concealing or withholding said data from their rightful owners by unlawfully tracking the data and disclosing it to unauthorized third parties, like Facebook.

404. As a direct and proximate result of the acts and omissions described above, Plaintiffs and California Sub-Class Members were injured by the Defendants' violations of section 496(a).

405. Pursuant to California Penal Code § 496(c), the California Plaintiffs seek actual damages, treble damages, costs of suit, and reasonable attorneys' fees.

## COUNT ELEVEN

## NEGLIGENCE

### *(On behalf Plaintiffs and the Nationwide Class)*

406. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

407. Defendants owed a duty to Plaintiffs and the Nationwide Class to exercise due care in collecting, storing, safeguarding, and preventing any disclosure of their Private Information. This duty included but was not limited to: (a) preventing Plaintiffs' and Nationwide Class Members' Private Information from being to be disclosed to unauthorized third parties; and (b) destroying Plaintiffs' and Nationwide Class Members' Private Information within an appropriate amount of time after it was no longer required by Defendants.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

408. Defendants' duties to use reasonable care arose from several sources, including those described below. Defendants had a common law duty to prevent foreseeable harm to others, including Plaintiffs and Nationwide Class Members, who were the foreseeable and probable victims of any data misuse, such as disclosure of Private Information to unauthorized parties.

409. Defendants had a special relationship with Plaintiffs and Nationwide Class Members, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants were in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Nationwide Class Members resulting from unauthorized disclosure of their Private Information to third parties such as Facebook. Plaintiffs and Nationwide Class Members were compelled to entrust Defendants with their Private Information. At relevant times, Plaintiffs and Nationwide Class Members understood that Defendants would take adequate data storage practices to safely store their Private Information. Only Defendants had the ability to protect Plaintiffs' and Nationwide Class Members' Private Information collected and stored on Defendants' Websites.

410. Defendants' duty to use reasonable measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of [PHI]." 45 C.F.R. § 164.530(c)(1).

411. Defendants' conduct as described above constituted an unlawful breach of their duty to exercise due care in collecting, storing, and safeguarding Plaintiffs' and the Nationwide Class Members' Private Information by failing to protect this information.

412. Plaintiffs and Nationwide Class Members trusted Defendants and in doing so provided Defendants with their Private Information, based upon Defendants' representations that they would "take reasonable, industry standard precautions to

FIRST AMENDED CLASS ACTION COMPLAINT

keep the Sites and their systems secure and to prevent personal information from being made available to unauthorized persons or entities."[68] Defendants failed to do so.

413. Defendants breached their duty in this relationship to collect and safely store Plaintiffs' and Nationwide Class Members' Private Information.

414. Plaintiffs' and the Nationwide Class Members' Private Information would have remained private and secure had it not been for Defendants' wrongful and negligent breach of their duties. Defendants' negligence was, at least, a substantial factor in causing Plaintiffs' and Nationwide Class Members' Private Information to be improperly accessed, disclosed, and otherwise compromised, and in causing Plaintiffs and the Nationwide Class Members other injuries because of the unauthorized disclosures.

415. The damages suffered by Plaintiffs and the Nationwide Class Members were the direct and reasonably foreseeable result of Defendants' negligent breach of their duties to maintain Users' Private Information. Defendants knew or should have known that their unauthorized disclosure of highly sensitive Private Information was a breach of their duty to collect and safely store such information.

416. Defendants' negligence directly caused significant harm to Plaintiffs and the Nationwide Class. Specifically, Plaintiffs and Nationwide Class Members are now subject to their sensitive information being accessed by unauthorized parties, which may lead to significant harms.

417. Plaintiffs hereby incorporate all other paragraphs as if fully stated herein.

418. Defendants had a fiduciary duty to protect the confidentiality of their communications with Plaintiffs and Nationwide Class Members by virtue of the explicit privacy representations Defendants made on their websites to Plaintiffs and members of the Nationwide Class.

---

[68] *Notice of Privacy Practices*, *supra* note 35.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

419. Defendants had information relating to Plaintiffs and Nationwide Class Members that they knew or should have known to be confidential.

420. Plaintiffs' and Nationwide Class Members' communications with Defendants about sensitive Private Information and their status as patients of Defendants were not matters of general knowledge.

421. Defendants breached their fiduciary duty of confidentiality by designing their data protection systems in a way to allow for a data breach of a massive caliber.

422. At no time did Plaintiffs or Nationwide Class Members give informed consent to Defendants' conduct.

423. As a direct and proximate cause of Defendants' actions, Plaintiffs and Nationwide Class Members suffered damage in that the information they intended to remain private is no longer so and their Private Information was disclosed to, tracked, and intercepted by third-party Internet tracking companies, including Facebook, without their knowledge or consent.

## COUNT TWELVE

## BREACH OF CONFIDENCE

### (*On Behalf of Plaintiffs and the Nationwide Class*)

424. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

425. Medical providers have a duty to their patients to keep non-public medical information completely confidential.

426. Plaintiffs and Nationwide Class Members had reasonable expectations of privacy in their communications exchanged with Defendants, including communications exchanged on Defendants' Websites.

427. Plaintiffs' and Nationwide Class Members' reasonable expectations of privacy in the communications exchanged with Defendants were further solidified by Defendants' express promises in their Privacy Policies.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

428.  Contrary to their duties as a medical provider and their express promises of confidentiality, Defendants deployed the Pixel (and other tracking technologies) to disclose and transmit Plaintiffs' and Nationwide Class Members' Private Information and the contents of their communications exchanged with Defendants to third parties.

429.  The third-party recipients included, but were not limited to, Facebook and other online marketers.

430.  Defendants' disclosures of Plaintiffs' and Nationwide Class Members' Private Information were made without their knowledge, consent or authorization, and were unprivileged.

431.  The harm arising from a breach of provider-patient confidentiality includes erosion of the essential confidential relationship between the healthcare provider and the patient.

432.  As a direct and proximate cause of Defendants' unauthorized disclosures of patient personally identifiable, non-public medical information, and communications, Plaintiffs and Nationwide Class Members were damaged by Defendants' breach in that:

a.  Sensitive and confidential information that Plaintiffs and Nationwide Class Members intended to remain private is no longer private;

b.  Defendants eroded the essential confidential nature of the provider-patient relationship;

c.  Defendants took something of value from Plaintiffs and Nationwide Class Members and derived benefit therefrom without Plaintiffs' and Nationwide Class Members' knowledge or informed consent and without compensating Plaintiffs and Nationwide Class Members for the data;

d.  Plaintiffs and Nationwide Class Members did not get the full value of the medical services for which they paid, which included Defendants' duty to maintain confidentiality;

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

e. Defendants' actions diminished the value of Plaintiffs' and Nationwide Class Members' Private Information and

f. Defendants' actions violated the property rights Plaintiffs and Nationwide Class Members have in their Private Information.

433. Plaintiffs and Nationwide Class Members are therefore entitled to general damages for invasion of their rights in an amount to be determined by a jury and nominal damages for each independent violation. Plaintiffs are also entitled to punitive damages.

## COUNT THIRTEEN
## BREACH OF FIDUCIARY DUTY
### (*On Behalf of Plaintiffs and the Nationwide Class*)

434. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

435. In light of the special relationship between Defendants, Plaintiffs and Nationwide Class Members, whereby Defendants became guardian of Plaintiffs' and Nationwide Class Members' Private Information, Defendants became a fiduciary by their undertaking and guardianship of the Private Information, to act primarily for Plaintiffs and Nationwide Class Members, (1) for the safeguarding of Plaintiffs' and Class Members' Private Information; (2) to timely notify Plaintiffs and Nationwide Class Members of an unauthorized disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and do store.

436. Defendants have a fiduciary duty to act for the benefit of Plaintiffs and Nationwide Class Members upon matters within the scope of Defendants' relationship with their patients and former patients, in particular, to keep secure their Private Information.

437. Defendants breached their fiduciary duties to Plaintiffs and Nationwide Class Members by disclosing their Private Information to unauthorized third parties, and separately, by failing to notify Plaintiffs and Nationwide Class Members of this

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

fact.

438. As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiffs and Nationwide Class Members have suffered and will continue to suffer injury and are entitled to compensatory, nominal, and/or punitive damages, and disgorgement of profits, in an amount to be proven at trial.

## COUNT FOURTEEN

## UNJUST ENRICHMENT

### *(On behalf of Plaintiffs and the Nationwide Class)*

439. Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

440. Plaintiffs and Class Members personally and directly conferred a benefit on Defendants by paying Defendants for health care services, which included Defendants' obligation to protect Plaintiffs' and Class Members' Private Information. Defendants were aware of Plaintiffs' privacy expectations, and in fact, promised to maintain Plaintiffs' Private Information confidential and not to disclose to third parties. Defendants received payments for medical services from Plaintiffs and Class Members.

441. Plaintiffs and Class Members also conferred a benefit on Defendants in the form of valuable sensitive medical information that Defendants collected from Plaintiffs and Class Members under the guise of keeping this information private. Defendants collected, used, and disclosed this information for their own gain, including for advertisement, market research, sale, or trade for valuable benefits from Facebook and other third parties. Defendants had knowledge that Plaintiffs and Class Members had conferred this benefit on Defendants by interacting with their website, and Defendants intentionally installed the Meta Pixel tool on their websites to capture and monetize this benefit conferred by Plaintiffs and Class Members.

442. Plaintiffs and Class Members would not have used the Defendants' services and websites had known that Defendants would collect, use, and disclose this

FIRST AMENDED CLASS ACTION COMPLAINT

information to Facebook, Google, and other third parties. The services that Plaintiffs and Class Members ultimately received in exchange for the monies paid to Defendants were worth quantifiably less than the services that Defendants promised to provide, which included Defendants' promise that any patient communications with Defendant would be treated as confidential and would never be disclosed to third parties for marketing purposes without the express consent of patients.

443.  The medical services that Defendants offer are available from many other health care systems that do protect the confidentiality of patient communications. Had Defendants disclosed that it would allow third parties to secretly collect Plaintiffs' and Class Members' Private Health Information without consent, neither Plaintiffs, the Class Members, nor any reasonable person would have purchased healthcare from Defendants and/or their affiliated healthcare providers.

444. By virtue of the unlawful, unfair and deceptive conduct alleged herein, Defendants knowingly realized hundreds of millions of dollars in revenue from the use of the Private Information of Plaintiffs and Class Members for profit by way of targeted advertising related to Users' respective medical conditions and treatments sought.

445.  This Private Information, the value of the Private Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by Plaintiffs and Class Members.

446.  As a result of Defendants' conduct, Plaintiffs and Class Members suffered actual damages in the loss of value of their Private Information and the lost profits from the use of their Private Information.

447. It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of Plaintiffs and Class Members.

448. Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by Plaintiffs and Class Members through

FIRST AMENDED CLASS ACTION COMPLAINT

Defendants' obtaining the Private Information and the value thereof, and profiting from the unlawful, unauthorized and impermissible use of the Private Information of Plaintiffs and Class Members.

449. Plaintiffs and Class Members are therefore entitled to recover the amounts realized by Defendants at the expense of Plaintiffs and Class Members.

450. Plaintiffs and the Class Members have no adequate remedy at law and are therefore entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the Proposed Classes defined herein, respectfully request:

A.  That this Action be maintained as a Class Action, that Plaintiffs be named as Class Representatives of the Class, that the undersigned be named as Lead Class Counsel of the Class, and that notice of this Action be given to Class Members;

B.  That the Court enter an order:

a.  Preventing Defendants from sharing Plaintiffs' and Class Members' Private Information among themselves and other third parties;

b.  Requiring Defendants to alert and/or otherwise notify all users of their websites and portals of what information is being collected, used, and shared;

c.  Requiring Defendants to provide clear information regarding their practices concerning data collection from the users/patients of Defendants' Web Properties, as well as uses of such data;

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

  d. Requiring Defendants to establish protocols intended to remove all Private Information which has been leaked to Facebook and/or other third parties, and request Facebook/third parties to remove such information;

  e. Requiring Defendants to provide an opt out procedures for individuals who do not wish for their information to be tracked while interacting with Defendants' Web Properties;

  f. Mandating the proper notice be sent to all affected individuals, and posted publicly;

  g. Requiring Defendants to delete, destroy, and purge the Private Information of Users unless Defendants can provide reasonable justification for the retention and use of such information when weighed against the privacy interests of Users;

  h. Requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted.

C. That the Court award Plaintiffs and the Class Members damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

D. That the Court issue appropriate equitable and any other relief (including monetary damages, restitution, and/or disgorgement) against Defendants to which Plaintiffs and the Class are entitled, including but not limited to restitution and an Order requiring Defendants to cooperate and financially support civil and/or criminal asset recovery efforts;

E. Plaintiffs and the Class be awarded with pre- and post-judgment interest (including pursuant to statutory rates of interest set under State law);

FIRST AMENDED CLASS ACTION COMPLAINT

F.  Plaintiffs and the Class be awarded with the reasonable attorneys' fees and costs of suit incurred by their attorneys;

G.  Plaintiffs and the Class be awarded with treble and/or punitive damages insofar as they are allowed by applicable laws; and

H.  Any and all other such relief as the Court may deem just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on all triable issues.

DATED: September 29, 2023                    **CLARKSON LAW FIRM, P.C.**

_/s/ Yana Hart_____
Ryan Clarkson, Esq.
Yana Hart, Esq.
Tiara Avaness, Esq.
Valter Malkhasyan, Esq.


**ALMEIDA LAW GROUP LLC**

_/s/ John R. Parker_____
John R. Parker, Jr.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com