SCOTT A. ELDER (Pro Hac Vice)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail:scott.elder@alston.com

Attorney for Defendants

DESERT CARE NETWORK, DESERT REGIONAL MEDICAL CENTER, INC., JFK MEMORIAL HOSPITAL, INC., and TENET HEALTHCARE CORP.

RACHEL E. K. LOWE (SBN 246361)
GILLIAN H. CLOW (SBN 298966)
ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Telephone:   213-576-1000
Facsimile:   213-576-1100
E-mail: rachel.lowe@alston.com
gillian.clow@alston.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.K., N.Z., and R.P., individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DESERT CARE NETWORK, DESERT REGIONAL MEDICAL CENTER, INC., JFK MEMORIAL HOSPITAL, INC., PALM BEACH HEALTH NETWORK, PALM BEACH GARDENS COMMUNITY HOSPITAL, INC. D/B/A PALM BEACH GARDENS MEDICAL CENTER, TENET HEALTHCARE CORP., and TENET HEALTHSYSTEM MEDICAL, INC.,<br><br>Defendants. | Case No. 2:23-cv-05021 SPG (PDx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date:   January 24, 2024<br>Time:             1:30 p.m.<br>Courtroom:      5C<br><br>Filing Date:      June 23, 2023 |

## **NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 24, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5C, before the Honorable Sherilyn Peace Garnett of the above-entitled Court, located at the First Street Courthouse, 350 West First Street, Los Angeles, CA 90012, Defendants Desert Care Network, Desert Regional Medical Center, Inc., JFK Memorial Hospital Inc., and Tenet Healthcare Corporation (collectively, "Defendants"),[1] by and through their attorneys of record, will and hereby do move for an order dismissing each of Plaintiffs B.K. and N.Z.'s claims in the First Amended Class Action Complaint ("FAC") (ECF No. 31) and the FAC in its entirety pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on October 20, 2023, and continued on October 23, 2023. The parties thoroughly discussed the substance and potential resolution of the filed motion by videoconference.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records on file in this action, and such other evidence and argument as may be presented to the Court at or before the hearing on the motion.

---

[1] The FAC does not assert any claims against Palm Beach Health Network, Palm Beach Gardens Community Hospital, Inc. d/b/a Palm Beach Gardens Medical Center or Tenet Healthsystem Medical, Inc., who are no longer defendants in this case. Similarly, Florida plaintiff R.P. is no longer a party.

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:23-cv-05021 SPG (PDx)

1  Dated:  October 27, 2023                    SCOTT ELDER
2                                              RACHEL E. K. LOWE
                                               GILLIAN H. CLOW
3                                              **ALSTON & BIRD LLP**

4                                              By:   /s/        _Rachel E. K. Lowe_
                                                           Rachel E. K. Lowe

5                                              Attorney for Defendants
6                                              DESERT CARE NETWORK, DESERT
                                               REGIONAL MEDICAL CENTER, INC., JFK
                                               MEMORIAL HOSPITAL, INC., and TENET
7                                              HEALTHCARE CORP.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:23-cv-05021 SPG (PDx)

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................1

II.   PLAINTIFFS' ALLEGATIONS.........................................................2

    A.    Plaintiffs' Alleged Interactions with Defendants....................................2

    B.    The Federal Government Encouraged Providers to Raise Awareness of their Websites. ..................................................................................3

    C.    Plaintiffs' Claims Against Defendants.................................................3

III.  ARGUMENT.....................................................................................4

    A.    Plaintiffs Lack Article III Standing to Challenge All Websites. ............4

    B.    The FAC Should Be Dismissed for Failure to State a Claim Under Rule 12(b)(6).................................................................................5

        1.    The FAC Fails to Meet the Pleading Standard as to All Claims. ............................................................................5

        2.    The FAC Also Fails to State a Claim as to Specific Causes of Action. ..................................................................8

        3.    The Claims Alleged Are Wholly or Partly Time-Barred. ..........22

        4.    The Court Should Dismiss the Nationwide Claims....................24

IV.   CONCLUSION ..............................................................................25

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:23-cv-05021 SPG (PDx)

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Aguilera v. Pirelli Armstrong Tire Corp.*,
  223 F.3d 1010 (9th Cir. 2000) ................................................................. 19

*Alvarez v. Adtalem Educ. Grp.*,
  No. 19-cv-04079c-JSW, 2019 U.S. Dist. LEXIS 240197 (N.D. Cal. Dec. 16, 2019) ........................................................................................................ 20

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) .................................................................. 22

*Baday v. Kings Cty.*,
  No. 1:20-cv-00644-ADA-SKO, 2022 U.S. Dist. LEXIS 190051 (E.D. Cal. Oct. 18, 2022) ......................................................................................... 22

*Berkla v. Corel Corp.*,
  302 F.3d 909 (9th Cir. 2002) .................................................................. 21

*Bradley v. Google, Inc.*,
  No. C 06-05289 WHA, 2006 U.S. Dist. LEXIS 94455 (N.D. Cal. Dec. 22, 2006) ....................................................................................................... 11

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................... 23

*Brown v. Google LLC*,
  525 F. Supp. 3d 1049 (N.D. Cal. 2021) ................................................. 22

*Brown v. Madison Reed, Inc.*,
  622 F. Supp. 3d 786 (N.D. Cal. 2022) ................................................... 23

*Calip v. M.E.I.C.*,
  No. 15-cv-02357-MEJ, 2015 U.S. Dist. LEXIS 140728 (N.D. Cal. Oct. 15, 2015) ....................................................................................................... 23

*Cousin v. Sharp Healthcare*,
  No. 22-cv-2040-MMA (DDL), 2023 U.S. Dist. LEXIS 120211 (S.D. Cal. July 12, 2023) .................................................................. 1, 5, 6, 7, 8, 21, 22

ii

*Dinerstein v. Google, LLC*,
    73 F.4th 502 (7th Cir. 2023) ........................................................................ 13

*Doe v. Google LLC*,
    No. 23-cv-02431-VC, 2023 U.S. Dist. LEXIS 187307 (N.D. Cal. Oct. 11,
    2023) .............................................................................................................. 9

*Doe v. UPMC*,
    Case No. 2:20-cv-359, 2020 WL 4381675 (W.D. Pa. Jul. 31, 2020) ........... 3

*Fleites & Jane Does No 1 Through No 33 v. Mindgeek S.A.R.L.*,
    No. CV 21- 04920-CJC(ADSx), 2022 WL 1314035 (C.D. Cal. Feb. 10,
    2022) ............................................................................................................. 24

*Gonzales v. Uber Techs., Inc.*,
    305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................................................... 13

*Greenley v. Kochava, Inc.*,
    No. 22-cv-01327-BAS-AHG, 2023 U.S. Dist. LEXIS 130552 (S.D. Cal. July
    27, 2023) ....................................................................................................... 22

*Hall v. SeaWorld Entm't, Inc.*,
    747 F. App'x 449 (9th Cir. 2018) ................................................................ 14

*Hammerling v. Google*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................................................... 15

*Harris v. LSP Prods. Grp., Inc.*,
    No. 2:18-cv-02973-TLN-KJN, 2021 U.S. Dist. LEXIS 122646 (E.D. Cal.
    June 29, 2021) ......................................................................................... 24, 25

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....................................................... 16

*Hodges v. Apple Inc.*,
    No. 13-cv-01128-WHO, 2013 U.S. Dist. LEXIS 114374 (N.D. Cal. Aug. 12,
    2013) ............................................................................................................. 14

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ....................................................................... 14

*Holly v. Alta Newport Hosp., Inc.*,
    No. 2:19-cv-07496-ODW, 2020 U.S. Dist. LEXIS 195652 (C.D. Cal. Oct.
    21, 2020) ....................................................................................................... 21

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:23-cv-05021 SPG (PDx)

*In re Facebook Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................... 13, 16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........................................................ 5, 15, 16

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2022) ........................................................ 19

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................ 16

*In re Linkedin User Privacy Litig.*,
932 F. Supp. 2d 1089 (N.D. Cal. 2013) ........................................................ 18

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .................................................... 17, 20

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. Aug. 12, 2014) ........................................................ 9

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ........................................................ 14

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........................................................ 10

*Johnson v. Blue Nile, Inc.*,
No. C 20-08183 LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ........................................................ 10

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 22-cv-04792-RS, 2023 U.S. Dist. LEXIS 61306 (N.D. Cal. Apr. 6, 2023) ........................................................ 12

*Lemus v. Rite Aid Corp.*,
613 F. Supp. 3d 1269 (C.D. Cal. 2022) ........................................................ 25

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................ 15

*Mandeville-Anthony v. Walt Disney Co.*,
No. CV 11-2137-VBF(JEMx), 2011 U.S. Dist. LEXIS 156171 (C.D. Cal. July 28, 2011) ........................................................ 22

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:23-cv-05021 SPG (PDx)

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ................................................................................ 24

*McCraner v. Wells Fargo & Co.*,
No. 21-cv-1246-LAB-WVG, 2023 U.S. Dist. LEXIS 55863 (S.D. Cal. Mar.
30, 2023) ................................................................................................................. 22

*McCrary v. Elations Co.*,
No. EDCV 13-0242 JGB (Opx), 2013 U.S. Dist. LEXIS 173592, at *20
(C.D. Cal. July 12, 2013) ......................................................................................... 5

*Miller v. Cal. AG's Office*,
No. CIV S-10-1699 GEB DAD PS, 2011 U.S. Dist. LEXIS 27684 (E.D. Cal.
Mar. 17, 2011) .......................................................................................................... 5

*Mir v. City of Torrance*,
No. CV 14-1191-RGK (PJW), 2018 U.S. Dist. LEXIS 178698 (C.D. Cal.
Oct. 17, 2018) ........................................................................................................... 8

*Mohamed v. Kellogg Co.*,
No. 14-cv-2449 L (MDD), 2015 U.S. Dist. LEXIS 181088 (S.D. Cal. Aug.
19, 2015) ................................................................................................................... 4

*Motivo Eng'g, LLC v. Black Gold Farms*,
No. 2:22-cv-01447-CAS-JCx, 2023 U.S. Dist. LEXIS 54304 (C.D. Cal. Mar.
28, 2023) ................................................................................................................. 20

*Mullinix v. Fertility*,
No. SACV 21-00409-CJC, 2021 U.S. Dist. LEXIS 206779 (C.D. Cal. Apr.
21, 2021) ................................................................................................................. 13

*O'Donnell v. United States Bancorp Equip. Fin., Inc.*,
No. C10-0941 TEH, 2010 U.S. Dist. LEXIS 52986 (N.D. Cal. May 28,
2010) ......................................................................................................................... 7

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ................................................................. 16

*Ortiz v. Perkins & Co.*,
No. 22-cv-03506-KAW, 2022 U.S. Dist. LEXIS 199848 (N.D. Cal. Nov. 2,
2022) ....................................................................................................................... 18

*Powell v. Union Pac. R.R. Co.*,
864 F. Supp. 2d 949 (E.D. Cal. 2012) .................................................................... 11

v

*Reysner v. Navient Sols., Inc.*, No. 2:17-cv-00641-KJM-KJN PS, 2018 U.S. Dist. LEXIS 190880, at *17 (E.D. Cal. Nov. 7, 2018)......................................22

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N. D. Cal. May 9, 2017) ......................................11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)................................................................4

*Stark v. Patreon, Inc.*,
No. 22-cv-03131-JCS, 2023 U.S. Dist. LEXIS 27481 (N.D. Cal. Feb. 17, 2023) ..........................................................................14

*Terpin v. AT&T Mobility, LLC*,
399 F. Supp. 3d 1035 (C.D. Cal. 2019)................................................18

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)................................................................4

*Vinluan-Jularbal v. Redbubble, Inc.*,
No. 2:21-cv-00573-JAM-JDP, 2021 U.S. Dist. LEXIS 180298 (E.D. Cal. Sep. 20, 2021) ......................................................................12

*Walcoff v. Innofoods USA, Inc.*,
No. 22-cv-1485, 2023 U.S. Dist. LEXIS 78474 (S.D. Cal. May 4, 2023).............25

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 U.S. Dist. LEXIS 230732 (N.D. Cal. Dec. 22, 2022) ..........................................................................11

*Wu v. Sunrider Corp.*,
793 F. App'x 507 (9th Cir. 2019)................................................23

*Yale v. Clicktale, Inc.*,
No. C 20-07575 LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ....................10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)................................................10

**STATE CASES**

*Buttram v. Owens-Corning Fiberglas Corp.*,
16 Cal. 4th 520 (1997)................................................................19

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:23-cv-05021 SPG (PDx)

*Davies v. Krasna*,
    14 Cal. 3d 502 (1975) ................................................................................22

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ..................................................................5

*Fogelstrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011) ....................16

*Norgart v. Upjohn Co.*,
    21 Cal. 4th 383 (1999) ..............................................................................23

*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
    12 Cal. App. 5th 200 (2017) ......................................................................17

*Patent Scaffolding Co. v. William Simpson Constr. Co.*,
    256 Cal. App. 2d 506 (1967) ....................................................................19

*Pierce v. Lyman*,
    1 Cal. App. 4th 1093 (1991), *superseded by statute on other grounds* ..................21

*Ramirez v. Dean Foods Co. of Cal.*,
    No. SACV 11-1292 DOC(ANx), 2012 U.S. Dist. LEXIS 110952, at *23
    (C.D. Cal. Aug. 6, 2012) ...........................................................................22

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ............................................................................25

*Switzer v. Wood*,
    35 Cal. App. 5th 116 (2019) ......................................................................20

*Thomson v. Canyon*,
    198 Cal. App. 4th 594 (2011) ....................................................................22

**FEDERAL STATUTES**

18 U.S.C. § 2511(2)(d) ....................................................................................8

18 U.S.C. § 2520(e) .......................................................................................22

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17208 ..................................................................22

Cal. Civ. Code § 56.10(a) ...............................................................................8

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:23-cv-05021 SPG (PDx)

Cal. Civ. Code § 56.101(a) ............................................................................. 8

Cal. Civ. Code § 1770 .................................................................................. 16

Cal Civ. Code § 1783 ................................................................................... 22

Cal. Civ. Proc. Code § 340 ........................................................................... 22

Cal. Pen. Code § 496(c) ........................................................................... 3, 19

Cal. Pen. Code § 631 ................................................................................ 9, 11

Cal. Pen. Code § 631(a) ............................................................................ 9, 12

Va. Code Ann. § 59.1-442(A) ....................................................................... 25

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:23-cv-05021 SPG (PDx)

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The theory of Plaintiffs B.K.'s and R.K.'s (collectively, "Plaintiffs") case, underlying all of their claims against Defendants Desert Care Network ("DCN"), Desert Regional Medical Center, Inc. ("DRMC"), JFK Memorial Hospital, Inc. ("JFK Memorial"), and Tenet Healthcare Corporation ("Tenet" and collectively, "Defendants") is that Defendants purportedly transmitted private health information ("PHI") and personal identifying information ("PII") of Plaintiffs and others to Meta Platforms, Inc. d/b/a Facebook ("Facebook") via website-integrated technologies known as Meta Pixel ("Pixel") and Facebook Conversions API ("CAPI"). The allegations in Plaintiffs' recently filed First Amended Class Action Complaint ("FAC") (ECF No. 31) fail to support such a conclusion.

*First*, Plaintiffs lack Article III standing to the extent they seek to sue over Defendants' websites that Plaintiffs did not visit. Plaintiffs allegedly each visited the website and patient portal for their medical providers, and Plaintiffs were not plausibly harmed by websites they did not visit.

*Second*, Plaintiffs fail to allege sufficient facts to assert a cognizable claim as required by Rule 8(a) and the *Twombly/Iqbal* standard. While the FAC offers pages of allegations about the mechanics of Pixel and how ubiquitous the tool is, the FAC remains strikingly scarce when it comes to facts about Plaintiffs' alleged use of Defendants' website. Notably, Plaintiffs fail to allege when they supposedly visited Defendants' portal and website, that Pixel was embedded on Defendants' portal and website at that time, and what communications with a medical provider were shared with Facebook. That fundamental pleading deficiency requires dismissal of all claims. *See Cousin v. Sharp Healthcare*, No. 22-cv-2040-MMA (DDL), 2023 U.S. Dist. LEXIS 120211 (S.D. Cal. July 12, 2023) (dismissing similar claims against provider).

*Third*, Plaintiffs' lack of factual pleading also undermines specific elements of the various causes of action they assert. For example, Plaintiffs' claim under the

1

California Confidentiality of Medical Information Act ("CMIA") fails because Plaintiffs do not allege what "medical" information was purportedly disclosed. Similarly, Plaintiffs' breach of implied contract claim fails because they fail to allege how Defendants supposedly agreed to "safeguard" their "medical" information or that they incurred actual damages from a breach.

*Fourth*, certain of Plaintiffs' claims fail for additional independent reasons. For example, Plaintiffs' claims for negligence, breach of implied contract, and violation of the California Unfair Competition Law ("UCL") must be dismissed because Plaintiffs do not allege actual damages.

*Fifth*, Plaintiffs' claims are barred at least in part by the statutes of limitations.

*Sixth*, Plaintiffs' common law privacy claims cannot be brought on behalf of a nationwide class under California law, and they cannot state a nationwide CMIA class.

Accordingly, Defendants request the Court grant the motion to dismiss the FAC.

## II.    PLAINTIFFS' ALLEGATIONS

### A.    Plaintiffs' Alleged Interactions with Defendants

Tenet is allegedly a "network" of hundreds of medical facilities that provides a wide range of services to patients across the United States. (*Id.* ¶ 2.) DCN is a network of hospitals and medical centers, including DRMC and JFK Memorial, providing services to patients in the Coachella Valley. (*Id.* ¶ 3.)

Plaintiff N.Z. is a California resident. (FAC ¶ 20.) Plaintiff B.K. was a California resident until May 2022. (*Id.* ¶ 19.) Plaintiff B.K. allegedly began receiving healthcare services from DRMC in 2011, and she also accessed DRMC's Web Properties. (*Id.* ¶¶ 206, 213.) Plaintiff N.Z. began receiving healthcare services from JFK Memorial in 2016, and alleges she accessed JFK Memorial's Web Properties. (*Id.* ¶¶ 213, 223.) DRMC and JFK Memorial's public-facing website is www.desertcarenetwork.com, which is the only URL alleged in the FAC. (*Id.* ¶ 4.)

Plaintiffs allegedly utilized the public-facing website and patient portal to research healthcare providers, schedule appointments, refill prescriptions, make

2

payments, see test results, and communicate and receive information regarding treatments, medications, and clinical information. (*Id.* ¶¶ 207, 209-10, 211, 222, 225-26.) Plaintiffs allege that all of this information was intercepted, viewed, and analyzed by Facebook via Pixel and CAPI, and Plaintiffs began receiving ads on Facebook relating to their particular medical conditions and treatments. (*Id.* ¶¶ 218-19, 228, 234.)

## B.    The Federal Government Encouraged Providers to Raise Awareness of their Websites.

In their FAC, Plaintiffs reference a July 2023 Bulletin from the U.S. Department of Health and Human Services ("HHS") addressing regulated provider use of tracking technologies. (FAC ¶ 39.)    But HHS's *new* guidance contrasts the U.S. Centers for Medicare & Medicaid Services' Promoting Interoperability Program, which imposed criteria that require "raising awareness of a provider's website and patient portal, as well as ensuring that the website and portal are 'engaging and user-friendly.'" *Doe v. UPMC*, Case No. 2:20-cv-359, 2020 WL 4381675, *7 (W.D. Pa. Jul. 31, 2020). Consistent with this, various healthcare providers allegedly sought to raise awareness and increase usability by using technologies such as cookies and Facebook Pixel. *See id.* Though not necessary to consider for the claims at issue here, the historical context is that providers were encouraged by the government to increase website engagement.

## C.    Plaintiffs' Claims Against Defendants

Plaintiffs assert 14 claims on behalf of either a nationwide class or a putative California sub-class: (1) violation of the CMIA; (2) violations of the Electronic Communications Privacy Act ("ECPA") (Counts Two and Three); (3) violation of the California Invasion of Privacy Act ("CIPA"); (4) violation of the UCL; (5) invasion of privacy under the California Constitution; (6) invasion of privacy – intrusion upon seclusion; (7) breach of implied contract; (8) violation of the CLRA; (9) violation of California Penal Code § 496(a) and (c) ("Section 496"); (10) negligence; (11) breach of confidence; (12) breach of fiduciary duty; and (13) unjust enrichment.

### III.    **ARGUMENT**

#### A.    **Plaintiffs Lack Article III Standing to Challenge All Websites.**

Plaintiffs lack standing to sue over the alleged use of Pixel and CAPI on Defendants' websites that Plaintiffs did not visit because they cannot show a particularized injury caused by those websites. To establish standing, the plaintiffs must allege they (1) suffered an injury in fact (2) that is fairly traceable to the defendant's challenged conduct and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An alleged injury in fact must be "concrete, particularized, and actual or imminent," and "[o]nly those plaintiffs who have been concretely harmed by a defendant's . . . violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203-5 (2021). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way," *Spokeo*, 538 U.S. at 330-31 (internal citations omitted). Plaintiffs lack standing to sue over websites that they did not visit because they were not personally harmed by them.

Tenet is allegedly a "network" of hundreds of hospitals, and Plaintiffs visited the website and patient portal for just ***two*** of those hospitals: DRMC and JFK Memorial, i.e., desertcarenetwork.com. (FAC ¶¶ 2, 4, 206, 222.).[2] Plaintiffs do not allege they visited any other Tenet hospitals or websites or that any other websites injured them. Despite this, Plaintiffs sue over *all* of Defendants' "Web Properties," which they define as "Defendants' websites . . . and their 'My Health Rec' Patient Portal." (*Id.* ¶ 5.)

Plaintiffs lack standing to sue over all of Defendants' alleged "Web Properties" because they cannot be injured by websites that they have not visited. *See, e.g.*, *Mohamed v. Kellogg Co.*, No. 14-cv-2449 L (MDD), 2015 U.S. Dist. LEXIS 181088, at *12-13 (S.D. Cal. Aug. 19, 2015) (stating that plaintiff's "admission that she did not

---

[2] Under either the incorporation by reference doctrine or judicial notice, the Court can consider that www.desertcarenetwork.com is the website for both DRMC and JFK Hospital. *See* https://www.desertcarenetwork.com/locations. In any event, Plaintiffs do not plead they visited any other provider website in the FAC.

allege that she relied on the websites doom[ed] her [standing] argument").[3]

Privacy rights, which are implicated by each of Plaintiffs' claims, are particular to an individual, and Plaintiffs lack standing to sue for any theoretical invasion of another's privacy based on websites Plaintiffs did not visit. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("A right to privacy encompass[es] the individual's control of information concerning his or her person.") (citation and internal quotation marks omitted); *Miller v. Cal. AG's Office*, No. CIV S-10-1699 GEB DAD PS, 2011 U.S. Dist. LEXIS 27684, at *18 (E.D. Cal. Mar. 17, 2011) ("Plaintiff has no standing to pursue privacy claims on behalf of other persons."). Therefore, to the extent Plaintiffs' claims involve any of Defendants' alleged other websites (i.e., websites other than desertcarenetwork.com and patient portals for hospitals other than DRMC and JFK Memorial), those claims should be dismissed.

### B. The FAC Should Be Dismissed for Failure to State a Claim Under Rule 12(b)(6).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*.

### 1. The FAC Fails to Meet the Pleading Standard as to All Claims.

The FAC should be dismissed because it lacks sufficient specific factual allegations of Plaintiffs' interactions with Defendants' website and patient portal, which are at the center of every claim. That is exactly what happened in *Cousin v. Sharp*

---

[3] *McCrary v. Elations Co.*, No. EDCV 13-0242 JGB (Opx), 2013 U.S. Dist. LEXIS 173592, at *20 (C.D. Cal. July 12, 2013) ("Plaintiff did not actually rely on any website statements and does not have standing to bring . . . claims based on those statements."); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (affirming dismissal of UCL claim where plaintiff did not claim he visited the website with the alleged misrepresentations).

5

*Healthcare*, No. 22-cv-2040-MMA (DDL), 2023 U.S. Dist. LEXIS 120211 (S.D. Cal. July 12, 2023), which involved a suit against a medical provider arising out of its alleged use of Pixel on its website. Raising many of the same causes of action, the plaintiffs' "overarching theory of their case, underlying all claims," was that the defendant "collected patients' personal and sensitive medical information on [the defendant's] website and that this information was then improperly shared with Meta without patients' consent." *Id.* at *7.

The *Cousin* court dismissed the complaint because the plaintiffs "fail[ed] to factually explain their personal participation in any of this." and provided "no meaningful factual support." *Id.* at *7. The court explained:

> [The plaintiffs] allege in a conclusory manner that [the defendant] disclosed to Meta their personal, confidential, and sensitive medical information; communications and messages with doctors; [and] medical test results . . . . However, these allegations are conclusory and devoid of any factual support. For example, [the plaintiffs] fail to factually support their contention that these activities took place . . . . [They] do not explain what information they provided to [the defendant].

*Id.* at *10. The court highlighted that plaintiffs' vague assertion that they entered "sensitive personal and health information" on defendant's website was "utterly devoid of factual enhancement," because plaintiffs did "not explain what personal or health information they entered, which was then subsequently shared with Meta." *Id.* at *11.

The FAC has the same deficiencies because Plaintiffs do not specify what information they entered and what was shared with Facebook. As in *Cousin*, Plaintiffs' claims rest on Defendants' alleged disclosure of their information to Facebook and other third parties through Pixel (*see, e.g.*, FAC ¶¶ 211, 228). But the FAC lacks allegations regarding what information Plaintiffs specifically provided to Defendants and when these disclosures purportedly occurred. Using *hypothetical* searches on DCN's *public* website as an "example" (*id.* ¶¶ 58-61, 81-129), Plaintiffs allege that "[t]he information that Defendants' Pixel sends to Facebook *may* include, among other things, patients' PII, PHI, and other confidential information" (*id.* ¶ 66 (emphasis added)). Plaintiffs do

not allege that they actually conducted these searches or engaged in the exemplar online activity; these *hypothetical* examples cannot support that any of Plaintiffs' specific information was transmitted to Facebook. *See Cousin*, 2023 U.S. Dist. LEXIS 120211, at *8 (reasoning that "an example of a search by a hypothetical patient" failed to factually support allegation that "sensitive medical information" was disclosed).

The allegations as to Plaintiffs' own personal experiences with Defendants' websites are conclusory and unsupported by facts:

- Plaintiff B.K. alleges that, "[w]hile using DRMC's digital services, [she] communicated and received information regarding her appointments, treatments, medications, and clinical information, including her annual mammograms, surgeries, ER visits, lab work, and scans . . . . [She] actively sought specific medical expertise related to breast cancer and other of her health concerns." (FAC ¶¶ 211-12.)

- Plaintiff N.Z. alleges that, "[w]hile using JFK [Memorial's] services, [she] communicated and received information regarding her appointments, treatments, medications, and clinical information, including her lab work and scans . . . . [She] actively sought specific medical expertise related to her . . . medical conditions[.]"[4] (*Id.* ¶ 228, 230.)

Plaintiffs then allege that, "[a]s a result of [Pixel] . . . , this information was intercepted, viewed, analyzed, and used by unauthorized third parties." (*Id.* ¶¶ 211, 228.)

These are precisely the bare allegations that the *Cousin* court found to be inadequate. Plaintiffs do not provide any supporting facts indicating when their transmissions of information or "communicat[ions]" allegedly took place or what specific information Plaintiffs disclosed to each of the Defendants. *See, e.g., O'Donnell v. United States Bancorp Equip. Fin., Inc.*, No. C10-0941 TEH, 2010 U.S. Dist. LEXIS 52986, at *9 (N.D. Cal. May 28, 2010) ("Without any reference to when the alleged

---

[4] The Court should disregard allegations pertaining to Plaintiff N.Z.'s husband (FAC ¶¶ 229-30, 234). He is not a named plaintiff, and, as described above, privacy rights are personal. N.Z. cannot assert claims on behalf of her husband.

7

misconduct occurred, O'Donnell's allegations fail to state a plausible claim[.]"); *Mir v. City of Torrance*, No. CV 14-1191-RGK (PJW), 2018 U.S. Dist. LEXIS 178698, at *3 (C.D. Cal. Oct. 17, 2018) (dismissing where "Plaintiff has not attributed most of the alleged acts to any Defendant…"). Accordingly, as Plaintiffs include only their conclusory allegations that Defendants transmitted their personal information via Pixel, the FAC should be dismissed for failure to state a claim.

### 2. The FAC Also Fails to State a Claim as to Specific Causes of Action.

#### a) Plaintiffs Fail to Allege a CMIA Violation (Count One).

Plaintiffs' CMIA claim fails because they do not plead their "medical information" was disclosed. The CMIA prohibits the unauthorized disclosure and negligent maintenance or preservation of medical information. Cal. Civ. Code §§ 56.10(a), 56.101(a). "Medical Information" means "individually identifiable" information "regarding a patient's medical history, mental health application information, mental or physical condition, or treatment." *Id.* at § 56.05(i).

As discussed above, the FAC lacks factual support for Plaintiffs' conclusory allegation that Defendants transmitted Plaintiffs' "medical information" via Pixel to Facebook. *See Cousin*, 2023 U.S. Dist. LEXIS 120211, at *21 (dismissing CMIA claim because the plaintiffs did "not provide[] sufficient facts to support the claim that their medical information was disclosed by [the defendant]."). Plaintiffs also fail to allege in the FAC that any personal identifying information was disclosed such that their identities were revealed. Accordingly, the CMIA claim should be dismissed.

#### b) The ECPA Claims Fail Because Defendants Were Parties to the Communications Allegedly at Issue (Counts Two and Three).

Plaintiffs' claims for violation of the ECPA fail because the ECPA is not an all-party consent statute. The ECPA explicitly provides an exception to liability where the alleged interceptor is "a party to the communication." *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under [the ECPA] for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the

8

communication[.]"); *Doe v. Google LLC*, No. 23-cv-02431-VC, 2023 U.S. Dist. LEXIS 187307, at *6 (N.D. Cal. Oct. 11, 2023) ("ECPA makes explicit that it is not unlawful to intercept a communication if one of the parties to the communication has given prior consent."). By Plaintiffs' own allegations, Defendants were the intended recipients of their alleged communications. (FAC ¶¶ 208, 224 ("While using [Defendants'] Web Properties, [Plaintiffs] communicated sensitive – and what [they] expected to be confidential – personal and medical information to Defendants.").) Therefore, as a party to the alleged communications at issue, Defendants cannot be liable under the ECPA, and Plaintiffs' claims for violation of the ECPA should be dismissed. *See, e.g.*, *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. Aug. 12, 2014) ("[T]he consent of one party is a complete defense to [the ECPA].").

### c)    Plaintiffs Fail to Allege a CIPA Violation (Count Four).

Plaintiffs seek to apply section 631 of CIPA, a wiretapping statute, to Pixel, a routine website activity tracking tool. CIPA imposes liability on wiretappers and those who aid any person to wiretap. Cal. Pen. Code § 631(a). Plaintiffs allege that Facebook "willfully and without the consent of Plaintiffs . . . , read or attempted to learn the contents or meaning of electronic communications of Plaintiffs . . . on Defendants' Web Properties." (FAC ¶ 322.) Recognizing that a party cannot wiretap its own communications with Plaintiffs, Plaintiffs further allege that Defendants violated CIPA because they "aided, agreed with, employed, and conspired with Facebook to wiretap consumers to Defendants' Web Properties using the Facebook Pixel snipped codes and to accomplish the wrongful conduct at issue here." (*Id.* ¶ 326.) This strained application of CIPA to cover a technology that allegedly tracks the use of public facing websites for marketing purposes finds no support in the statute that prohibits wiretapping.

Plaintiffs' CIPA claim should be dismissed for the following reasons:

### i.    Plaintiffs do not plead the contents of communications.

CIPA prohibits the unauthorized access to the "contents" of a communication. Cal. Pen. Code § 631(a). The "contents" of an online communication "refer[] to the

9

intended message conveyed by the communications." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)). "Contents" under CIPA does not include "record information regarding the characteristics of the message that is generated in the course of the communication." *Id*.

Numerous courts have held that routine website tracking tools do not transmit the "contents" of communications as required to state a CIPA claim. Courts have dismissed CIPA claims on the grounds that tracking "keystrokes, mouse clicks, [and] pages viewed" are not "content." *Yoon*, 549 F. Supp. 3d at 1082-83 ("None of these pieces of data constitutes message content in the same way that words of a text message or an email do[.]"); *Johnson v. Blue Nile, Inc.*, No. C 20-08183 LB, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021) (providing that IP addresses are "not content"); *Yale v. Clicktale, Inc.*, No. C 20-07575 LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021). The Ninth Circuit has held that "referer header information," which includes a social network user's unique ID and the address of the webpage from which the user's request to view another webpage is sent, likewise is not "content." *Zynga*, 750 F.3d at 1107.

CIPA was not intended to apply to circumstances like this one. This is not a case involving allegations that someone tapped Plaintiffs' phone lines while they placed private calls to their doctors, such that the third-party was privy to all of what was discussed. Notably, Plaintiffs do not plead that Pixel has the ability to intercept text conversations between them and their medical providers. The screenshots in the FAC are based on a *hypothetical* user of DCN's public website (*see, e.g., id.* ¶¶ 58-61, 81-129) and do not show the contents of communications were transmitted within the meaning of CIPA. Plaintiffs do not allege interception of "contents," as they must.

### ii.    *No alleged communications intercepted in transit.*

The FAC also fails to allege that Plaintiffs' alleged communications were intercepted while in transit. CIPA is violated when a person intercepted the contents of a communication "while the same is in transit or passing over any wire, line, or cable."

10

Cal. Pen. Code § 631. This section of CIPA "require[s] the *interception* of an electronic communication." *Bradley v. Google, Inc.*, No. C 06-05289 WHA, 2006 U.S. Dist. LEXIS 94455, at *15 (N.D. Cal. Dec. 22, 2006) (emphasis in original).

As explained in *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N. D. Cal. May 9, 2017), "Facebook's tracking does not establish that the Healthcare Defendants 'send' information to Facebook"; rather, "they embed code that creates a new connection between a visitor's browser and a Facebook server." *Id.* at 951. "The website's decision to embed the code allows that connection to occur, but the connection happens independently." *Id.* In other words, neither the Defendants, nor Facebook are intercepting Plaintiffs' communications via Pixel. Instead, one communication is occurring between each Plaintiff and their browser, and another between the browser and Facebook. Likewise, Plaintiffs' allegations make clear that the interception requirement cannot be met based on use of CAPI, which "does not intercept data communicated from the User's browser . . . . [T]he communications between patients and Defendants . . . are actually received by Defendants and stored on their server before CAPI collects and sends the Private Information contained in those communications directly from Defendants to Facebook." (FAC ¶¶ 51-52 .)

### iii.    Plaintiffs do not plead Facebook's violation of CIPA.

Because Defendants were admittedly parties to the communications that Plaintiffs now claim were intercepted (FAC ¶¶ 208, 224), Plaintiffs cannot assert claims against Defendants for directly violating CIPA. *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) ("Published cases are in accord that [CIPA] applies only to third parties and not participants.") (collecting cases). Rather, Plaintiffs allege that Defendants violated CIPA based on a theory of aiding Facebook under § 631(a)(4). (FAC ¶ 318.) To state a claim on this theory, Plaintiffs must first plead Facebook's underlying violation of the statute. *See Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 U.S. Dist. LEXIS 230732, at *6 (N.D. Cal. Dec. 22, 2022) (noting that derivative liability CIPA claim turns on whether turns on whether the allegedly

unauthorized third-party "violated Section 631(a) in some way"). Thus, Plaintiffs must demonstrate that Facebook intended to intercept their communications. *See* Cal. Pen. Code § 631(a) (applying to any person who "intentionally taps" another person's communications without consent). They cannot do so.

Per Plaintiffs' own allegations, Facebook "released an explicit statement to the Court on November 9, 2022, that it neither desired nor intended to possess health information data." (FAC ¶ 323.) Plaintiffs further allege that Facebook "expressly emphasized not to transmit health information." (*Id.* ¶ 325.) Thus, accepting the allegations in the FAC as true, Facebook lacked the requisite intent to intercept Plaintiffs' communications. As a result, Plaintiffs' CIPA claim against Defendants under an aiding and abetting theory also fails.

### d)   The UCL and CLRA Claims Fail (Counts Five and Nine).

#### i.   *Plaintiffs lack statutory standing.*

The Court should dismiss the UCL and CLRA claims for lack of standing. "To have standing, [the plaintiff] must '(1) establish a loss of deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim.'" *Vinluan-Jularbal v. Redbubble, Inc.,* No. 2:21-cv-00573-JAM-JDP, 2021 U.S. Dist. LEXIS 180298, at *6-7 (E.D. Cal. Sep. 20, 2021) (quoting *Kwikset Corp v. Superior Court*, 51 Cal. 4th 310, 322 (2011)).

Plaintiffs do not plead any form of economic injury as a result of anything Defendants did and merely allege their data was shared without their authorization. The injuries alleged are "violation to [Plaintiffs'] rights of privacy, loss of value and privacy of their Private Information, loss of control over their sensitive personal information, and . . . embarrassment and emotional distress[.]" (FAC ¶ 342.) Courts have consistently found that where, as here, the plaintiffs allege only the unauthorized disclosure of information, they fail to plead compensable injuries under the UCL and the CLRA. *See, e.g., Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2023 U.S. Dist. LEXIS

12

61306, at \*22-24 (N.D. Cal. Apr. 6, 2023) (providing that "mere misappropriation of personal information does not establish compensable damages") (citing *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021)).

Perhaps recognizing this deficiency, Plaintiffs also allege that they "lost money or property, including but not limited to payments to Defendants and/or other valuable consideration." (FAC ¶ 352.) But courts have rejected similar claims of injury as "purely hypothetical." *In re Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019). Plaintiffs "do not plausibly allege that they intended to sell their non-disclosed personal information to someone else. Nor, in any event, do they plausibly allege that someone else would have bought it as a stand-alone product." *Id.*; *see also Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) ("the sharing of names, user IDs, location and other personal information does not constitute lost money or property for UCL standing purposes.") (citing *Campbell v. Facebook*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014)).

Further, Plaintiffs' allegations that they would not have used Defendants' websites had they known of the alleged use of Pixel do not establish statutory standing. (FAC ¶ 339.) Plaintiffs did not pay anything for using their providers' website or portal and cannot claim they lost money or property from using the Desert Care website.

The Seventh Circuit rejected a similar theory of harm earlier this year. In *Dinerstein v. Google, LLC*, 73 F.4th 502 (7th Cir. 2023), the plaintiff sued Google and the University of Chicago for allegedly disclosing his anonymized medical records. In analyzing whether plaintiff alleged standing, the court considered plaintiff's theory that he "would not have purchased the University's medical treatment had he known that it intended to share his private medical information." *Id.* at 517. The court rejected this argument, finding that the plaintiff did not "allege[] a defect in his medical care." *Id.* As in *Dinerstein*, the Court should reject Plaintiffs' allegations as speculative and lacking the requisite "as a result of" connection. *See also Mullinix v. Fertility*, No. SACV 21-00409-CJC (KESx), 2021 U.S. Dist. LEXIS 206779, at \*10 (C.D. Cal. Apr.

13

21, 2021) (rejecting plaintiffs' argument that "they did not receive the 'benefit of their bargain" and dismissing CLRA and UCL claims for lack of standing.)

### ii.    Plaintiffs fail to allege these claims with specificity.

Plaintiffs' CLRA and UCL claims under the "unfair prong" are both based on Defendants' alleged misrepresentations in their Privacy Policy. (*See* FAC ¶¶ 347, 390.) "[C]laims under both the CLRA and UCL that are grounded in fraud . . . must be accompanied by the who, what, when, where, and how of the misconduct charged." *Hodges v. Apple Inc.*, No. 13-cv-01128-WHO, 2013 U.S. Dist. LEXIS 114374, at *6 (N.D. Cal. Aug. 12, 2013) (citations omitted). Plaintiffs do not allege when and where they read Defendants' policy (or which policy) and thus cannot claim reliance on its contents. Dismissal is thus warranted. *See, e.g.*, *Stark v. Patreon, Inc.*, No. 22-cv-03131-JCS, 2023 U.S. Dist. LEXIS 27481, at *48-49 (N.D. Cal. Feb. 17, 2023) (dismissing UCL and CLRA claims because, "[w]ithout allegations that [plaintiffs] actually read the terms of use…, [the] complaint does not sufficiently support an inference that their misunderstanding of how [defendant] used their data was caused by [defendant]'s failure to disclose that information"); *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1046 (N.D. Cal. 2021) (similarly dismissing CLRA claim).

### iii.    Plaintiffs fail to allege that Defendants had a duty to disclose the information that was allegedly omitted.

To the extent that Plaintiffs' CLRA and UCL claims are based on Defendants' alleged fraudulent omissions, i.e., that Defendants failed to disclose that they were allegedly using Pixel and transmitting Plaintiffs' information to Facebook, those claims fail because Plaintiffs do not allege that Defendants had a duty to disclose that information. A defendant has a duty to disclose an omitted fact only where: (1) the omitted fact relates to an unreasonable safety hazard; or (2) the omitted fact is material and related to the product or services at issue's central function. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018); *Hall v. SeaWorld Entm't, Inc.*, 747 F. App'x 449, 451 (9th Cir. 2018) (applying test to services). Plaintiffs allege neither. The FAC

14

does not identify any unreasonable safety hazard due to Defendants' alleged use of Pixel, nor does it allege that the use of Pixel is central to Defendants' medical services. *See, e.g.*, *Hammerling v. Google*, 615 F. Supp. 3d 1069, 1086 (N.D. Cal. 2022) (dismissing UCL and CLRA omission-based claims where plaintiffs did not allege that Google's undisclosed collection of data "render[ed] [plaintiffs'] smartphones 'incapable of use'…"). The UCL and CLRA claims should be dismissed for this reason.

**e)    The Claims for Invasion of Privacy Fail Because Plaintiffs Do Not Allege a Serious Invasion (Counts Six and Seven).**

Plaintiffs assert claims for invasion of privacy – intrusion by seclusion and violation of the California Constitution. "The California Constitution and the common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). When a plaintiff raises invasion of privacy claims under both the California Constitution and California common law, courts consider whether "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2010). Plaintiffs fail to plausibly plead either requirement, so both invasion of privacy claims must fail.

*i.    Plaintiffs cannot plead a "highly offensive" invasion*

As described above, Plaintiffs do not sufficiently allege their health information or medical records were disclosed. They allege that they utilized Defendants' website to view their medical records but fall short of alleging that the details of their health information were disclosed to Facebook. (FAC ¶¶ 211, 228.) Plaintiff N.Z. alleges she "communicated and received information regarding . . . clinical information, including her lab work and scans." (*Id.* ¶ 228.) This conclusory and vague allegation does not establish what specific information was allegedly transmitted to Facebook and does not rise to the level of a serious invasion of Plaintiffs' privacy. *See Low*, 900 F. Supp. 2d at 1025 (finding that disclosure of users' browsing history on LinkedIn was not highly offensive; also holding that the disclosure of social security numbers is not an

"egregious breach of the social norms" sufficient to state a claim); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1060, 1063 (N.D. Cal. 2012) (providing that disclosures of personal data and geolocation information did not constitute a serious breach); *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011), *as modified* (June 7, 2011) (similar). Plaintiffs allegedly chose to use a public website and the purported tracking of their unspecified searches to Facebook cannot plausibly be "highly offensive" in light of other rulings applying California law that the disclosure of a user's entire browsing history is not offensive.

### ii.    *Plaintiffs cannot demonstrate that they had a reasonable expectation of privacy in their browsing information.*

In the data privacy context, courts consider a variety of factors in determining whether a user has a "reasonable expectation of privacy": (1) what a user would reasonably expect in light of the defendant's disclosures about data collection; (2) the amount of data collected; (3) whether the data is sensitive; and (4) whether the manner in which the data is collected violates social norms. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601-02. Courts have found that where information is collected only while the user is visiting the site (and does not continue to track them after they leave the website they visited), and the collection is then disclosed, there is *no* reasonable expectation of privacy. *See Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020); *see also Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) ("[A] plaintiff cannot have a reasonable expectation of privacy if she consented to the intrusion.").

### f)    **The CLRA Claim Also Fails Because Plaintiffs Do Not Allege Statutory Elements (Count Nine).**

The CLRA prohibits "unfair or deceptive acts or practices…undertaken by any person in a *transaction*…that results in the *sale or lease* of goods to any *consumer*." Cal. Civ. Code § 1770 (emphasis added). Plaintiffs fail to allege they are "consumers" engaged in a "transaction" with each Defendant within the meaning of the CLRA.

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012), is instructive. Plaintiffs sued Sony after hackers stole personal information of individuals who had signed up for Sony's online PlayStation Network ("PSN"). *Id.* at 950. The court dismissed the CLRA claim because plaintiffs failed to allege a "transaction" under the statute. *Id.* at 972. The court reasoned: "The PSN is a free service that consumers can choose or refuse to register for. …because consumers who purchased a Sony console, yet never registered for the PSN, or utilized the device to access Third-Party Services, were not affected by the Data Breach, the Court finds the transaction at issue does not fall within the parameters of the CLRA." *Id.*

Here, the crux of Plaintiffs' claims is Plaintiffs' alleged provision of information on Defendants' *free*-to-use, voluntary website (akin to signing up for the PSN). This is not a "transaction" that results in the sale of services to a consumer. Any provision of medical services is separate. Therefore, the CLRA claim should be dismissed.

### g)   Plaintiffs Fail to Allege All Elements of a Breach of Implied Contract Claim (Count Eight).

An implied-in-fact contract requires proof of the same elements necessary to evidence an express contract: mutual assent, consideration, legal capacity, and lawful subject matter—the difference between an implied and express contract is that assent can be inferred based on the parties' conduct. *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 216, 218 (2017). The plaintiff must also allege damages as a result of any alleged breach. Here, Plaintiffs fail to allege mutual assent, consideration, and damages.

### i.   *Plaintiffs do not allege the existence of an implied contract.*

The FAC lacks facts showing any agreed terms or any kind of conduct manifesting mutual assent (offer and acceptance) to establish an implied contract. Plaintiffs cursorily assert that "[w]hen [they] . . . provided their Private Information to Defendants in exchange for services, [Plaintiffs] entered into implied contracts by which Defendants agreed to safeguard and not disclose such Private Information

17

without consent." (FAC ¶ 381.) In *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035 (C.D. Cal. 2019), this Court found a similarly conclusory allegation to be insufficient to support an implied contract. *Id.* at 1049. The plaintiff in *Terpin* alleged that "the opening of an AT&T wireless account" created implied contracts and that the defendant breached the contracts by failing to maintain the confidentiality and security of the plaintiff's information. *Id.* The Court found that was not enough to allege the parties' conduct that formed the basis of the implied contract and dismissed the claim. *Id.*

As in *Terpin*, Plaintiffs' breach of implied contract claim fails to sufficiently plead the terms and conditions of the implied contract. Plaintiffs do not allege any facts to support their bare-bones assertion that Defendants agreed to "safeguard" their "Private Information." (FAC ¶ 381.) Plaintiffs do not allege how Defendants supposedly agreed to "safeguard" their "Private Information," what "safeguarding" means in the context of Plaintiffs' use of a public facing website, or whether having Pixel on the Defendants' websites necessarily meant that Plaintiffs' "Private Information" was not safeguarded. They do not plead when this supposed agreement was formed, or with whom (far less allegations specific to each defendant).

### ii.    *Plaintiffs do not allege consideration.*

Plaintiffs also fail to adequately allege that they provided consideration for Defendants' alleged agreement to "safeguard" their information. "[S]everal courts have specifically found that consideration is required for an implied contract claim regarding data security." *Ortiz v. Perkins & Co.*, No. 22-cv-03506-KAW, 2022 U.S. Dist. LEXIS 199848, at *16 (N.D. Cal. Nov. 2, 2022). There is no alleged consideration – Plaintiffs do not allege that they paid anything additional for the privacy protections they now claim. There are no allegations that Plaintiffs paid more than persons who also received medical services from DRMC or JFK Memorial, but did not use or share any information via Defendants' website. Indeed, Defendants' alleged websites are free to use, and plaintiffs do not allege that they were required to use the websites to receive medical services. *See In re Linkedin User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093

18

(N.D. Cal. 2013) (dismissing claim for "breach of implied contract" where plaintiffs claimed that "in exchange for the fees they paid for the premium membership account, LinkedIn promised, among other things, to provide them with a particular level of security to protect their data," because "[t]he FAC does not sufficiently demonstrate that included in [p]laintiffs' bargain for premium membership was the promise of a particular (or greater) level of security that was not part of the free membership."). There is no plausible claim that Defendants struck such a bargain with Plaintiffs.

### iii.    Plaintiffs fail to allege damages resulting from any breach.

The Court should dismiss Plaintiffs' claim because they fail to plead any damages as a result of any alleged breach. *See, e.g.*, *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2022) (holding plaintiffs failed to state a claim for breach of contract because they failed to allege any actual damages). To establish contractual damages, the plaintiff must establish "appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000); *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 511 (1967) ("A breach of contract without damage is not actionable."). Nominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury. *Buttram v. Owens-Corning Fiberglas Corp.*, 16 Cal. 4th 520, 531 n.4 (1997).

### h)    Plaintiffs Fail to State a Section 496(a) Violation (Count Ten).

Section 496 is California's inapplicable stolen property statute, which provides a civil cause of action to "[a]ny person who has been injured" by a defendant "who buys or receives any property . . . stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained." Cal. Pen. Code § 496(a), (c). Plaintiffs' claim fails for two reasons.

### i.    The allegations do not give rise to a violation of Section 496.

One, "a cause of action for civil theft cannot lie where a plaintiff receives

19

legitimate services based on mutual agreement to pay for those services." *Alvarez v. Adtalem Educ. Grp.*, No. 19-cv-04079c-JSW, 2019 U.S. Dist. LEXIS 240197, at \*15 (N.D. Cal. Dec. 16, 2019). As this Court has recognized, "[t]he California Supreme Court has emphasized that 'not all commercial or consumer disputes alleging that a defendant obtained money or property through fraud, misrepresentation, or breach of a contractual promise will amount to a theft.'" *Motivo Eng'g, LLC v. Black Gold Farms*, No. 2:22-cv-01447-CAS-JCx, 2023 U.S. Dist. LEXIS 54304, at \*23 (C.D. Cal. Mar. 28, 2023) (quoting *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361 (2022)).

Plaintiffs allege that they used DRMC's and JFK Memorial's website "in connection with receiving healthcare services[.]" (FAC ¶¶ 213, 223.) These allegations establish that Plaintiffs sought and received legitimate services via use of Defendants' websites. Thus, "[t]he facts, as alleged, do not constitute a scheme that is based on an entire business or enterprise that is objectively a scam without any legitimate services provided. The allegations therefore do not give rise to a claim of civil theft." *Alvarez*, 2019 U.S. Dist. LEXIS 240197, at \*15 (dismissing Section 496 claim against a university where the plaintiff students "sought and received legitimate services").

### ii.    *Defendants did not receive or possess stolen property.*

Two, the elements of a Section 496(a) violation are that: (i) property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property. *Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019). Plaintiffs cannot plausibly allege that Defendants stole property. Again, Plaintiffs willingly and voluntarily provided their allegedly personal information to Defendants for a legitimate and lawful purpose: the provision of healthcare services. (FAC ¶¶ 213, 223.)

### i.    **Plaintiffs' Negligence Claim Fails Because They Do Not Plead Actual Damages (Count Eleven).**

"[A]ppreciable, nonspeculative, present harm is an essential element of a negligence cause of action." *In re Sony Gaming Networks & Customer Data Sec.*

20

*Breach Litig.*, 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012) (citing *Aas v. Super. Ct.*, 24 Cal. 4th 627, 646 (2000). Plaintiffs do not and cannot allege actual harm.

Plaintiffs allege "Defendants' negligence directly caused significant harm to Plaintiffs . . . . [They] are now subject to their sensitive information being accessed by unauthorized parties, *which may lead to significant harms*." (FAC ¶ 416 (emphasis added).) Plaintiffs allege they *may* be subject to *future* harm. Courts routinely find similar "conclusory and vague" allegations insufficient to sustain a negligence claim at the motion to dismiss stage. *See, e.g.*, *Holly v. Alta Newport Hosp., Inc.*, No. 2:19-cv-07496-ODW (MRWx), 2020 U.S. Dist. LEXIS 195652, at *9 (C.D. Cal. Oct. 21, 2020) ("improper disclosure of personal information" too vague to support damages).

### j)      Plaintiffs' Breach of Confidence Claim Fails (Count Twelve).

To prevail on a claim for breach of confidence under California law, a plaintiff must demonstrate that: "(1) the plaintiff conveyed confidential and novel information to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002) (citation omitted). Here, as described above for Plaintiffs' CMIA claim, the FAC lacks sufficient factual allegations to support that any confidential or novel information was disclosed to Facebook. The breach of confidence claim should thus be dismissed.

### k)      The Breach of Fiduciary Duty Claim Fails Because Defendants Did Not Owe Plaintiffs a Fiduciary Duty (Count Thirteen).

Plaintiffs fail to state a claim for breach of fiduciary duty because they cannot allege that Defendants owed them a fiduciary duty. Under California law, a breach of fiduciary duty claim requires "the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991), *superseded by statute on other grounds*. In *Cousin*, which involved plaintiffs suing a healthcare provider over the use of Pixel, the court dismissed the

21

breach of fiduciary duty claim because, "as a matter of law," no fiduciary duty existed between the provider and the plaintiffs. *Cousin*, 2023 U.S. Dist. LEXIS 120211, at *12-13 (citing *Luiz v. Queen of Angels Hospital*, 53 Cal. App. 2d 310, 313 (1942) ("The relationship of hospital and patient is not per se a fiduciary or confidential one.")).

### l)   Plaintiffs Fail to Plead Unjust Enrichment (Count Fourteen).

California does not recognize a separate cause of action for unjust enrichment. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *Greenley v. Kochava, Inc.*, No. 22-cv-01327-BAS-AHG, 2023 U.S. Dist. LEXIS 130552, at *52 (S.D. Cal. July 27, 2023). While courts sometimes recognize a claim for quasi-contract, Plaintiff fails to state such a claim. *See Astiana*, 783 F.3d at 762. Accordingly, the Court should dismiss Plaintiffs' claim.

### 3.  The Claims Alleged Are Wholly or Partly Time-Barred.

The FAC should be dismissed in its entirety because Plaintiffs fail to allege *when* Defendants allegedly disclosed their information. Each of the 14 claims asserted in the FAC is subject to a statute of limitations, ranging from one to four years.[5] As Plaintiffs filed their initial Complaint on June 23, 2023, they are thus time-barred from bringing:

---

[5] Cal. Civ. Proc. Code § 340 (CIPA) (one year); 18 U.S.C. § 2520(e) (ECPA) (two years); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) (invasion of privacy and intrusion upon seclusion) (two years); *Baday v. Kings Cty.*, No. 1:20-cv-00644-ADA-SKO, 2022 U.S. Dist. LEXIS 190051, at *35 (E.D. Cal. Oct. 18, 2022) (negligence) (two years); *Mandeville-Anthony v. Walt Disney Co.*, No. CV 11-2137-VBF(JEMx), 2011 U.S. Dist. LEXIS 156171, at *10 (C.D. Cal. July 28, 2011) (breach of implied contract) (two years); *Davies v. Krasna*, 14 Cal. 3d 502, 516 (1975) (breach of confidence) (two years); *Ramirez v. Dean Foods Co. of Cal.*, No. SACV 11-1292 DOC(ANx), 2012 U.S. Dist. LEXIS 110952, at *23 (C.D. Cal. Aug. 6, 2012) (CMIA) (two or three years); Cal Civ Code § 1783 (CLRA) (three years); *McCraner v. Wells Fargo & Co.*, No. 21-cv-1246-LAB-WVG, 2023 U.S. Dist. LEXIS 55863, at *10 (S.D. Cal. Mar. 30, 2023) (three years); *Reysner v. Navient Sols., Inc.*, No. 2:17-cv-00641-KJM-KJN PS, 2018 U.S. Dist. LEXIS 190880, at *17 (E.D. Cal. Nov. 7, 2018) (unjust enrichment) (three years); Cal. Bus. & Prof. Code § 17208 (UCL) (four years); *Thomson v. Canyon*, 198 Cal. App. 4th 594, 606 (2011) (breach of fiduciary duty) (four years).

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:23-cv-05021 SPG (PDx)

(1) any CIPA claim that accrued prior to June 23, 2022; (2) any claims subject to a two-year statute of limitations that accrued prior to June 23, 2021; (3) any claims subject to a three-year statute that accrued prior to June 23, 2020; and (4) any claims subject to a four-year statute that accrued prior to June 23, 2019.

Generally, a claim accrues "when the cause of action is complete with all of its elements." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 389 (1999). As discussed above, the FAC fails to allege any date on which Defendants allegedly disclosed information to Facebook through Pixel or on which Plaintiffs discovered this was allegedly occurring. This dearth of information leaves the Court unable to determine whether Plaintiffs' claims accrued in whole or in part outside the applicable limitations periods, and dismissal is warranted for this reason. *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110 (N.D. Cal. 2020) at 135 (dismissing claims because plaintiffs "fail[ed] to plead the approximate date of the alleged misconduct" and defendant "raised the non-frivolous possibility of multiple statute of limitations defenses"); *Calip v. M.E.I.C.*, No. 15-cv-02357-MEJ, 2015 U.S. Dist. LEXIS 140728, at *16 (N.D. Cal. Oct. 15, 2015) (dismissing complaint where it lacked sufficient allegations for the court to determine whether plaintiff brought her claims within the applicable statute of limitations period).

Plaintiffs attempt to avoid the statutes of limitations by alleging tolling based on the discovery rule or the doctrine of fraudulent concealment. (FAC ¶¶ 237-242.) But Plaintiffs' six paragraphs of conclusory allegations do not suffice to invoke either doctrine. "A plaintiff relying on the discovery rule[] must show '(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" *Wu v. Sunrider Corp.*, 793 F. App'x 507, 510 (9th Cir. 2019) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)).

Plaintiffs allege that the earliest they could have known about Defendants' alleged use of Pixel was in April or May 2023, but Plaintiffs still provide no factual allegations to describe how they made that discovery. *See Wu*, 793 F. App'x at 510; *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 800 (N.D. Cal. 2022) (rejecting

23

claim for tolling and explaining, "Notably absent are any allegations related to when the alleged discovery occurred or the manner or circumstances under which it did.").

### 4. The Court Should Dismiss the Nationwide Claims.

Plaintiff defines the putative nationwide class as: "All individuals residing in the United States whose Private Information was disclosed to a third party without authorization or sent through the Meta Pixel on Defendants' Web Properties." (FAC ¶ 244.) The Court should dismiss the putative nationwide class claims for the following independent reasons.

First, Plaintiffs have not alleged which state's law purportedly governs the nationwide common law claims, including negligence, implied contract, and unjust enrichment, which alone is grounds for dismissal. *See, e.g.*, *Harris v. LSP Prods. Grp., Inc.*, No. 2:18-cv-02973-TLN-KJN, 2021 U.S. Dist. LEXIS 122646, at *38-41 (E.D. Cal. June 29, 2021) (dismissing nationwide class claims for (1) violations of California statutes impermissibly asserted by non-residents; and (2) unspecified state law common law claims).

Second, Plaintiffs cannot show that California common law applies to the nationwide class claims. Under California's choice of law rules, the plaintiff bears the initial burden of showing that California has significant contacts to the claims of each class member, which is necessary to ensure that application of California law is constitutional. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). Only after this threshold showing would the burden shift to the defendant to demonstrate that foreign law, rather than California law, applies. *Id.* Here, Plaintiffs fail to allege that California law applies to individuals outside of California. In the privacy context, the state of injury is the relevant state of harm. *Fleites & Jane Does No 1 Through No 33 v. Mindgeek S.A.R.L.*, No. CV 21- 04920-CJC(ADSx), 2022 WL 1314035, at *6 (C.D. Cal. Feb. 10, 2022) (noting that states' intrusion of privacy torts "vary significantly").

Third, Plaintiffs cannot apply California statutory law extraterritorially. For example, there is nothing in the CMIA that provides a basis for concluding the

California legislature intended it to operate extraterritorially, so the "presumption against extraterritoriality applies . . . in full force." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). Indeed, other states have their own interests in protecting the privacy of their citizens and businesses, and have elected to achieve those goals in different ways, resulting in a patchwork of state privacy laws. *See, e.g.*, Colorado and Virginia Privacy Acts, §§ 6-1-1301, *et seq.*; Va. Code Ann. § 59.1-442(A). For the CMIA claim, the header in the FAC states that the claim is brought on behalf of a nationwide class (FAC at 62:4), but Plaintiffs reference the "California Sub-Class" in their allegations (FAC ¶¶ 267-69), so Plaintiffs may not have intended to assert the CMIA claim on behalf of the nationwide putative class.

This inquiry is not premature. There is no reason to delay this determination when California statutory law does not apply to anyone outside of California, and the putative class is alleged to be nationwide. District Courts in this Circuit routinely dismiss nationwide class allegations for this reason. *See, e.g., Harris*, 2021 U.S. Dist. LEXIS 122646, at *38-41; *Walcoff v. Innofoods USA, Inc.*, No. 22-cv-1485, 2023 U.S. Dist. LEXIS 78474, at *11 (S.D. Cal. May 4, 2023) (providing examples and noting "'growing trend' among California district courts"); *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1277 (C.D. Cal. 2022) (collecting cases).

## IV. **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiffs' FAC with prejudice.

Dated:  October 27, 2023

SCOTT ELDER
RACHEL LOWE
GILLIAN H. CLOW

ALSTON & BIRD LLP

By: /s/        *Rachel E. K. Lowe*
Rachel E.K. Lowe
Attorney for Defendants
DESERT CARE NETWORK, DESERT REGIONAL MEDICAL CENTER, INC., JFK MEMORIAL HOSPITAL, INC., and TENET HEALTHCARE CORP.

25