**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

B.K., N.Z., and R.P., individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

DESERT CARE NETWORK, DESERT REGIONAL MEDICAL CENTER, INC., JFK MEMORIAL HOSPITAL, INC., PALM BEACH HEALTH NETWORK, PALM BEACH GARDENS COMMUNITY HOSPITAL, INC. D/B/A PALM BEACH GARDENS MEDICAL CENTER, TENET HEALTHCARE CORP., and TENET HEALTHSYSTEM MEDICAL, INC.,

Defendants.

Case No. 2:23-cv-05021 SPG (PDx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF NO. 37]**

Before the Court is Defendants Desert Care Network ("DCN"), Desert Regional Medical Center, Inc. ("DRMC"), JFK Memorial Hospital Inc. ("JFK Memorial"), and Tenet Healthcare Corporation's ("Tenet," and, together with DCN, DRMC, and JFK Memorial, "Defendants") Motion to Dismiss Plaintiffs' First Amended Class Action Complaint. (ECF No. 37 ("Mot.")). Plaintiffs timely opposed, (ECF No. 42 ("Opp.")),

and Defendants timely replied, (ECF No. 43 (“Reply”)). Having considered the parties’ submissions, the record in this case, and the relevant law, the Court finds the Motion appropriate for resolution without oral argument and GRANTS the Motion. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.

## I. BACKGROUND

### A. Factual Background

Tenet is a network of hospitals and other patient care facilities located across the United States. (ECF No. 31 (First Amended Complaint (“FAC”)) ¶ 2). DCN, which is part of Tenet, is a network of hospitals and medical centers located in the Coachella Valley, California area. (*Id.* ¶ 3). DRMC and JFK Memorial are both part of DCN. (*Id.*).

#### 1. Defendants’ Use of Meta Pixel

Plaintiffs allege that Defendants installed Meta Pixel on their websites and patient portal. (*Id.* ¶¶ 4–5). Meta Pixel is a product sold by Meta Platforms, Inc. (“Meta,” formerly known as Facebook[1]). (*Id.* ¶ 5). As explained by Plaintiffs, Meta Pixel consists of “snippets of code that track [u]sers as they navigate through a website,” logging data such as pages visited, buttons clicked, and information provided in online forms. (*Id.* ¶ 6). This information is then sent to Meta via internet browser scripts which are labeled with specific internet protocol (“IP”) addresses that, in combination with other data, may be used to identify an individual or household. (*Id.*). If the user has an active Facebook account, their IP address will be paired with their unique Facebook ID (“FID”). (*Id.*). Plaintiffs further allege that, in addition to Meta Pixel, Defendants used a Meta product known as “CAPI” to track and send user data to Meta. (*Id.* ¶ 57). Because CAPI collects data from host servers, it cannot be evaded or detected by users. (*Id.* ¶ 53).

In particular, Plaintiffs allege that the Meta Pixel code and CAPI embedded in Defendants’ websites and patient portal capture data, including searches entered on

[1] The parties intermittently refer to Meta as “Facebook” or “Meta” throughout their briefing. For the sake of clarity, the Court refers to Meta by its legal name and uses the term “Facebook” in reference only to Meta’s social media platform.

Defendants' website, which may reflect users' health conditions and concerns, (*id.* ¶¶ 58–61), as well as "patient status, health conditions experienced and treatments sought, physician selected, appointments sought, specific button/menu selections, sensitive demographic information such as sexual orientation, and exact words and phrases typed into the search bar," (*id.* ¶ 67). Because this data is transmitted to Meta along with users' IP addresses, Meta can link this data with users' Facebook accounts. (*Id.* ¶ 76). Meta then uses this data for both internal and external marketing purposes, including for the purpose of sending targeted advertisements based on users' medical conditions. (*Id.* ¶ 134). At all times relevant to this action, Meta has had a policy of requiring its partners, including Defendants, to obtain user consent before sharing any data with Meta. (*Id.* ¶¶ 187–90).

2. <u>Allegations Specific to Plaintiffs</u>

Although Plaintiffs' Complaint spans nearly one hundred pages, Plaintiffs devote less than five pages to detailing their own interactions with Defendants' websites, which are as follows.

*a) Plaintiff B.K.*

Plaintiff B.K. ("B.K.") began receiving healthcare services from DRMC in approximately 2011. (*Id.* ¶ 206). B.K. accessed these services via DRMC's website and patient portal, which Defendants allegedly encouraged her to use. (*Id.* ¶¶ 206–07.) B.K. used DRMC's website and patient portal to research healthcare providers, including breast cancer specialists and primary care doctors, and to communicate with those providers. (*Id.* ¶ 209). She also used DRMC's website and patient portal to, among other things, research medical concerns and treatments, fill out forms and questionnaires, and schedule and attend appointments, including appointments for mammograms. (*Id.*). B.K. used DRMC's Patient Portal to refill prescriptions, view her bills and payments, and to see test results and notes from appointments and emergency room visits. (*Id.* ¶ 210). Through DRMC's website and Patient Portal, B.K. communicated and received information regarding her appointments, treatments, and medications. (*Id.* ¶ 211).

B.K. is an active Facebook user and has had a Facebook account since at least 2007. (*Id.* ¶ 216). She used the same email address to sign up for a Facebook account and to use DRMC's Patient Portal. (*Id.* ¶ 217). At some point in time, B.K. began receiving Facebook advertisements relating to her medical conditions and treatments, including advertisements relating to breast cancer and to hysterectomies. (*Id.* ¶ 218). B.K. asserts that these advertisements result from Defendants' use of Meta Pixel. (*Id.*).

*b) Plaintiff N.Z.*

Plaintiff N.Z. ("N.Z.") has received healthcare services from JFK Memorial since at least 2016. (*Id.* ¶ 223). She is a "frequent user" of JFK Memorial's website and Portal, which she utilizes in connection with the healthcare services she receives from JFK Memorial. (*Id.* ¶¶ 221, 223). Defendants allegedly encouraged N.Z. to use JFK Memorial's website and Portal. (*Id.* ¶ 222). N.Z. used JFK Memorial's website and Portal to research and communicate with healthcare providers, including primary care doctors. (*Id.* ¶ 225). She also used JFK Memorial's website and Portal to, among other things, research medical concerns and treatments, fill out forms and questionnaires, and schedule and attend appointments. (*Id.*). N.Z. used JFK Memorial's Portal to refill prescriptions, view her bills and payments, and see test results and appointment notes. (*Id.* ¶ 226). In addition to using JFK Memorial's Portal on her own behalf, N.Z. also used the Portal as a proxy for her husband, who has, among other diagnoses, diabetes. (*Id.* ¶ 227). Through DRMC's website and patient portal, N.Z. communicated and received information regarding her appointments, treatments, and medications. (*Id.* ¶ 228).

N.Z. is an active Facebook user and has had a Facebook account since at least 2012. (*Id.* ¶ 233). At some point in time, N.Z. began receiving Facebook advertisements relating to medical conditions and treatments particular to her and her husband. (*Id.* ¶ 234). N.Z. contends these advertisements are the result of Defendants' use of Meta Pixel. (*Id.*).

**B. Procedural Background**

Plaintiffs filed their first Complaint in this action on June 23, 2023. (ECF No. 1). On September 8, 2023, Defendants filed two motions to dismiss, (ECF No. 23; ECF No.

25) which Plaintiffs subsequently mooted by filing their FAC on September 29, 2023, (FAC). Defendants filed the instant Motion to Dismiss on October 27, 2023. (Mot.). Plaintiffs timely opposed on December 1, 2023, (Opp.), and Defendants timely replied on December 22, 2023, (Reply).

## II. LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal quotation marks and citation omitted).

When ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is not, however, "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation omitted). Where dismissal is appropriate, a court should

grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III. DISCUSSION

Defendants move to dismiss all of Plaintiffs' fourteen claims. Defendants contend that Plaintiffs lack Article III standing to challenge Defendants' conduct as to websites they did not actually visit; that Plaintiffs have failed to adequately allege when the conduct purportedly occurred; and that Plaintiffs have failed to allege facts sufficient to support their claims. The Court briefly addresses Defendants' Article III and statute of limitations challenges before proceeding to a discussion of Plaintiffs' fourteen causes of action.[2]

### A. Standing

Standing is an essential part of Article III's case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). *See also* U.S. Const. art. III, § 2.

---

[2] Defendants also moves to dismiss Plaintiffs' nationwide putative class claims, contending that dismissal is appropriate because Plaintiffs do not identify their common law claims by reference to any state and because, Defendants contend, California law cannot apply extraterritorially. (Mot. at 35–36). Although the Court is aware of several Northern and Eastern District of California decisions requiring putative class action common law claims to be pleaded by reference to a particular state, *see, e.g.*, *Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2016 WL 469370, at *11–12 (N.D. Cal. Feb. 8, 2016); *Harris v. LSP Prod. Grp., Inc.*, No. 218CV02973TLNKJN, 2021 WL 2682045, at *14–*15 (E.D. Cal. June 30, 2021), the Court is not aware of a statutory basis for this rule and declines to apply it here. *See also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) ("By default, California courts apply California law . . . ." (citing *Wash. Mut. Bank, FA v. Superior Court*, 15 P.3d 1071, 1080–81 (Cal. 2001))); *Harmsen v. Smith*, 693 F.2d 932, 946–47 (9th Cir. 1982) (noting that a district court sitting in diversity is "required to apply the substantive law of the state in which it sits, including choice-of-law rules"). As for Defendants' choice of law arguments, the Court agrees with Plaintiffs that these matters are best resolved through Federal Rule of Civil Procedure 23(b)(3)'s predominance inquiry. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 561 (concluding that variations in state law did not defeat predominance and holding that, subject to constitutional and forum state choice-of-law limitations, "a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class").

"Because Article III limits our jurisdiction to cases and controversies, the 'irreducible constitutional minimum of standing' requires a plaintiff to have suffered an injury in fact, caused by the defendant's conduct, that can be redressed by a favorable result." *Langer v. Kiser*, 57 F.4th 1085, 1092 (9th Cir. 2023) (quoting *Lujan*, 504 U.S. at 560).

Under Ninth Circuit precedent, "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "[O]nce the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded . . . ." *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1176 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015)). *See also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011) (rejecting argument against standing based on specific facts of plaintiff's claim and concluding analysis "more appropriately addresses" Federal Rule of Civil Procedure 23(a)'s typicality requirement). This standard recognizes the reality that "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks and citation omitted).

Defendants argue that Plaintiffs lack standing to sue over Defendants' alleged use of Meta Pixel and CAPI on websites that Plaintiffs did not personally visit. (Mot. at 15–16). According to Defendants, Plaintiffs "cannot be injured by websites that they have not visited." (*Id.* at 15). In opposition, Plaintiffs contend that Defendants' standing argument "incorrectly conflates Article III standing with a typicality analysis under Rule 23." (Opp. at 17). The Court agrees with Plaintiffs. Based on the allegations of the FAC, B.K. and N.Z. have each adequately alleged a concrete injury, caused by Defendants' conduct and redressable by this Court. Accordingly, "the standing inquiry is concluded . . . ." *Kirola*, 860 F.3d at 1176 (quoting *Melendres*, 784 F.3d at 1262).[3]

---

[3] Defendants' cited cases do not support its narrow conception of class action standing. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), concluded that the plaintiffs *had* standing to pursue class action claims predicated on

**B. Statute of Limitations & Tolling**

Defendants also contend that Plaintiffs' FAC should be dismissed for its failure to allege when Defendants' purportedly harmful conduct occurred. (Mot. at 33). In response, Plaintiffs assert that any statute of limitations and tolling questions are issues of fact not to be decided on the pleadings. (Opp. at 38). "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute [of limitations] is apparent on the face of the complaint." *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (alteration in original; internal quotation marks and citation omitted). Here, although Plaintiffs' FAC lacks detail as to when Plaintiffs' specific interactions with Defendants' websites and patient portals occurred, the FAC does not indicate on its face that Plaintiffs' interactions ceased before the various dates identified in Defendants' Motion. (Mot. at 34).

Plaintiffs' delayed discovery argument poses another barrier to dismissal. "A motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (internal quotation marks and citation omitted). This is not the case here, where Plaintiffs contend that "Defendants secretly incorporated the Meta Pixel into their Web Properties and patient portals" and that "[t]he earliest Plaintiffs

---

individual privacy rights and various common law causes of action. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598–601. *Miller v. California Att'y Gen.'s Off.*, No. CIV S-10-1699 GEB, 2011 WL 997231 (E.D. Cal. Mar. 17, 2011) was not a class action; instead, it dealt with a plaintiff who lacked standing to pursue claims based on purported violations of her business partner's right to privacy with regards to living arrangements, personal relationships, and financial information. *Miller*, 2011 WL 997231, at *6. And the isolated language Defendants quote from *Mohamed v. Kellogg Co.*, No. 14-CV-2449 L (MDD), 2015 WL 12469107 (S.D. Cal. Aug. 19, 2015), concerned the standing inquiry as to a plaintiff who could not "establish standing in her own right" and was therefore unable "to bring substantially similar claims on behalf of others." *Mohamed*, 2015 WL 12469107, at *5.

and Class Members could have known about Defendants' conduct was approximately in April or May of 2023." (FAC ¶¶ 238, 241). Based on the allegations in Plaintiffs' FAC, at this juncture, dismissal of Plaintiffs' claims as time-barred would be premature.

**C. Count 1: California Confidentiality of Medical Information Act**

Under California's Confidentiality of Medical Information Act ("CMIA"), health care providers "shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization," subject to several enumerated exceptions. Cal. Civ. Code § 56.10(a)–(c). If a health care provider "creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information," they "shall do so in a manner that preserves the confidentiality of the information contained therein." Cal. Civ. Code § 56.101(a). A health care provider "who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information" is subject to liability under the CMIA. Cal. Civ. Code § 56.101(a).

The CMIA defines medical information as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05. Under California caselaw, "[t]his definition does not encompass demographic or numeric information that does not reveal medical history, diagnosis, or care." *Eisenhower Med. Ctr. v. Superior Ct.*, 172 Cal. Rptr. 3d 165, 169 (Cal. Ct. App. 2014). "[T]he mere fact that a person may have been a patient at the hospital at some time is not sufficient." *Id. See also Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (without allegations indicating plaintiff ever received medical treatment, physician names and appointment discharge dates and times not medical information within meaning of CMIA).

Here, Defendants contend that Plaintiffs' FAC "lacks sufficient specific factual allegations of Plaintiffs' interactions with Defendants' website and patient portal." (Mot.

at 16). Although the Court agrees that many of Plaintiffs' allegations are indeed "conclusory and unsupported by facts," (Mot. at 18), B.K. and N.Z. allege that they respectively used DRMC and JFK Memorial's patient portals to schedule appointments, refill prescriptions, and to view their test results and appointment notes, and that data capturing this activity was transferred to Meta without their consent. (Compl. ¶¶ 209–11, 225–27). At least as to these categories, Plaintiffs have adequately alleged the disclosure of information that "reveal[s] medical history, diagnosis, or care" within the meaning of the CMIA. *Eisenhower Med. Ctr.*, 172 Cal. Rptr. 3d at 169. Accordingly, the Court DENIES Defendants' Motion as to Plaintiffs' CMIA claim.

**D. Counts 2 & 3: Electronic Communications Privacy Act**

Plaintiffs seek relief on behalf of themselves and a putative nationwide class for purported violations of the Electronic Communications Privacy Act ("ECPA"). Count 2 seeks relief under 18 U.S.C. § 2520(a), which provides a private right of action to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter . . . ." 18 U.S.C. § 2520(a). Count 3 seeks relief under 18 U.S.C. § 2521, which authorizes injunctive relief "[w]henever it shall appear that any person is engaged or is about to engage in any act which constitutes or will constitute a felony violation of this chapter . . . ." 18 U.S.C. § 2521. Section 2521 does not establish a private right of action and instead authorizes actions brought only by the Attorney General. 18 U.S.C. § 2521 (providing that "the Attorney General may initiate a civil action in a district court of the United States to enjoin such violation"). *See also Carrow v. Roberts*, No. EDCV211525JGBSHKX, 2022 WL 2102934, at *5 (C.D. Cal. Jan. 3, 2022) (dismissing with prejudice civil claim brought under 18 U.S.C. § 2521 because "criminal provisions that do not provide a basis for liability do not give rise to a civil cause of action"). Because it is clear that this claim "could not be saved by any amendment," *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003), the Court GRANTS without leave to amend Defendants' motion to dismiss Count 3.

As for Count 2, Defendants contend that ECPA's exception for parties to the alleged interception bars Plaintiffs' claims. (Mot. at 19–20). But the exception itself excludes instances where the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). *See also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1064 (N.D. Cal. 2021) (Koh, J.) (concluding "consent is not a defense" to ECPA claim where defendant "allegedly intercepted Plaintiffs' communications for the purpose of violating other laws"); *Doe v. Meta Platforms, Inc.*, --- F. Supp. 3d ---, 2023 WL 5837443, at *4 (N.D. Cal. Sept. 7, 2023) (holding that ECPA's one-party consent "exception does not apply . . . where the interceptor acts 'for the purpose of' committing any crime or tort in violation of state or federal law" (quoting 18 U.S.C. § 2511(2)(d))).

Here, although Plaintiffs' allegations regarding many of their purported communications are too vague and conclusory to credit, the Court can identify two categories of allegedly intercepted communications that give rise to liability under ECPA: requests to refill prescriptions and appointment scheduling inquires. (FAC ¶¶ 209–10, 225–26). Plaintiffs allege that Defendants disclosed these communications to Meta in violation of various state tort claims and state and federal laws. *See* Sections III.C, III.F, III.G, III.J–III.L. Because the Court concludes that ECPA's one-party consent exception does not apply, the Court DENIES Defendants' motion to dismiss Count 2.

**E. Count 4: California Invasion of Privacy Act**

California courts interpret Section 631(a) of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a), as several different clauses covering "three distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 583 P.2d 737, 741 (Cal. 1978). The first clause imposes liability if a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument . . . ." *Swarts v. The Home Depot, Inc.*, --- F. Supp. 3d ---, 2023 WL 5615453, at *5 (N.D. Cal. Aug. 30, 2023) (quoting Cal. Penal Code § 631(a)). The second clause

creates a violation where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit . . . ." *Id.* The third clause imposes liability where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained" as outlined in the first two clauses. *Id.* Finally, in addition to these three clauses, Section 631 also contains an aiding and abetting provision, which imposes liability on anyone who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." *Id.*

Here, Plaintiffs seek relief under Section 631's aiding and abetting provision on their own behalf, as well as for a California putative sub-class. As a result, the central issue as to this claim is whether Plaintiffs have adequately alleged an underlying predicate violation by Meta, which is not a party to this action.[4] (Mot. at 22–23; Opp. at 27). Defendants emphasize that Plaintiffs' FAC repeatedly mentions Meta's express desire not to receive health data from its business partners. (Mot. at 23 (quoting FAC ¶¶ 323, 325)). *See also* (FAC ¶ 187 ("At all times relevant herein Meta notified its partners, including Defendants, to have the rights to collect, use, and share user data before providing any data to Meta."). Because Section 631 requires defendants to act "willfully" or "intentionally," Cal. Penal Code § 631(a), the Court concludes that, as currently plead, Plaintiffs have failed to establish a predicate CIPA violation by Meta. Instead, Plaintiffs' allegations indicate that Meta either had no intention of receiving the data at issue or had some alternative *mens rea* not rising to the level of intentionality. Accordingly, the Court GRANTS Defendants' motion to dismiss Count 4 with leave to amend.

---

[4] Defendants also challenge the sufficiency of Plaintiffs' allegations as to the communications allegedly intercepted. (Mot. at 20–22). For the reasons articulated above, Section III.D, the Court concludes Plaintiffs have adequately pleaded Defendants' interception of two discrete categories of communications: prescription refill requests and appointment scheduling inquiries.

**F. Counts 5 & 9: California Unfair Competition Law & Consumer Legal Remedies Act**

Plaintiffs bring Counts 5 and 9 on their own behalf, as well as on behalf of a California putative sub-class. Count 5 asserts a claim under California's Unfair Competition Law ("UCL"), which prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. Count 9 seeks relief under California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, which imposes liability for certain "unfair methods of competition and unfair or deceptive acts or practices . . . ." Cal. Civ. Code § 1770. California law establishes a statutory standing requirement for UCL claims: a plaintiff seeking relief under the UCL must have "lost money or property as a result of the unfair competition." Cal. Civ. Code § 17204. *See also Kwikset Corp. v. Superior Court*, 246 P.3d 877, 881 (Cal. 2011). In contrast, the CLRA provides a cause of action for a consumer "who suffers *any* damage . . . ." Cal. Civ. Code § 1780 (emphasis added). A plaintiff who establishes standing under the UCL "will, *a fortiori,* have suffered 'any damage' for purposes of establishing CLRA standing." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013). Defendants contend that Plaintiffs lack statutory standing to pursue their UCL claim and that Plaintiffs' allegations are insufficient to state a claim. The Court examines each issue in turn.

Plaintiffs contend they have alleged two forms of injury, both of which Plaintiffs argue qualify as "economic injury" under the UCL: harm in the form of alleged overpayment for medical services, and harm resulting from the economic benefits Defendants purportedly realized from the collection and distribution of Plaintiffs' data. (Opp. at 28–29). Under California law, only the first injury qualifies as "lost money or property" within the meaning of the UCL. Although it is true that Defendants may have gained money through sharing or using Plaintiffs' data, this does not establish that Plaintiffs have *lost* money. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019). Plaintiffs have not, for example, alleged that

Defendants' conduct prevented them from monetizing their medical or otherwise personal information on their own terms. *See, e.g.*, *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 972 (N.D. Cal. 2021) (concluding economic loss theory was "purely hypothetical" because, among other reasons, "there are no facts to suggest that Plaintiffs intended to monetize their individual voice recordings" at issue in the litigation); *Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-CV-0725-BAS-WVG, 2022 WL 16985001, at *5 (S.D. Cal. Nov. 16, 2022) (dismissing UCL claim based on loss of personal health data where "[t]he FAC does not allege any opportunity through which Plaintiff might" be able to "profit from his own data").

In contrast, California courts recognize that to "surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have" is a form of economic injury that establishes statutory standing under the UCL. *Kwikset*, 246 P.3d at 885. Reading the FAC in the light most favorable to Plaintiffs, B.K. and N.Z. both allege that, had they known of Defendants' data collection practices, they would not have sought medical services from Defendants. *See* (FAC ¶¶ 215, 232 (contending Plaintiffs "would not have disclosed [their] Private Information to Defendant[s]")); (*id.* ¶ 394 ("Plaintiffs and California Sub-Class Members would not have purchased, or would have paid significantly less for, Defendants' medical services had Defendants not made these false representations.")). Accordingly, statutory standing is satisfied under both the UCL and CLRA.

Moving to the issue of whether Plaintiffs have sufficiently alleged causes of action, the UCL establishes three prongs under which a plaintiff may seek relief: unlawful, unfair, or fraudulent business acts or practices. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). The CLRA, for its part, prohibits certain "unfair or deceptive" conduct. Cal. Civ. Code § 1770.

1. Unlawful Conduct

Plaintiffs' UCL claim, Count 5, alleges Defendants' conduct was "unlawful" because it violated various laws and regulations, "including but not limited to HIPAA,

Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, and the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq.*" (FAC ¶ 338). Generally, an "unlawful" practice may include only statutory or regulatory violations; "a common law violation such as breach of contract is insufficient." *Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1044 (9th Cir. 2010). As discussed elsewhere in this Order, *see* Sections III.C and III.D above, Plaintiffs have adequately alleged conduct in violation of various federal and state statutes; the Court declines to dismiss Count 5 on this basis.

2. Unfair, Deceptive, or Fraudulent Conduct

Defendants contend, and Plaintiffs do not dispute, that Plaintiffs' claims based on "unfair" conduct are in fact based on a theory of misrepresentation. Because UCL claims centered on alleged misrepresentations are "based on a fraud theory involving false advertising and misrepresentations to consumers," a plaintiff "must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *Kwikset*, 246 P.3d at 888 (citations omitted). Similarly, "consumers seeking to recover damages under the CLRA based on a fraud theory must prove actual reliance on the misrepresentation and harm." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) (internal quotation marks and citation omitted). Furthermore, when a party pleads a cause of action sounding in fraud, it is subject to the heightened pleading requirements of Rule 9(b), which requires that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Complaints involving allegations of fraud must, at minimum, include allegations demonstrating the "who, what, when, where, and how" of the misconduct alleged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), *superseded by statute on other grounds*.

Here, Counts 5 and 9 both seek relief for purported misrepresentations, but Plaintiffs have failed to state with particularity the circumstances constituting fraud or misrepresentation, instead only parroting the legal standards for these respective claims. (FAC ¶ 215 (baldly alleging "Plaintiff B.K. also relied on DRMC's Privacy Policies"); *id.*

¶ 232 (same assertion as to N.Z. and JFK Memorial)). Plaintiffs have failed to demonstrate any "actual reliance on the allegedly deceptive or misleading statements . . . ." *Kwikset*, 246 P.3d at 888. As for Plaintiffs' allegations based on Defendants' purported "duty to disclose," here, too, the Complaint is inadequate. "Although, typically, a duty to disclose arises when a defendant owes a fiduciary duty to a plaintiff, a duty to disclose may also arise when a defendant possesses or exerts control over material facts not readily available to the plaintiff." *Jones v. ConocoPhillips Co.*, 130 Cal. Rptr. 3d 571, 580 (Cal. Ct. App. 2011) (citations omitted). As discussed below, *see* Section III.L, Defendants owe no fiduciary duties to Plaintiffs and cannot owe a duty to disclose on that ground. The other "circumstances in which nondisclosure may be actionable presuppose[] the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336–37 (Cal. Ct. App. 1997).[5] Here, Plaintiffs simply assert, without explanation, that Defendants had a duty to disclose.[6] The Court accordingly DISMISSES Counts 5 and 9, to the extent those claims are based on allegations of fraudulent misrepresentations or fraudulent concealment, with leave to amend.

**G. Counts 6 & 7: Constitutional and Common Law Invasion of Privacy**

Count 6, brought on behalf of Plaintiffs as well as a putative California sub-class, seeks relief for violation of the California constitutional privacy right. Count 7 seeks relief for Plaintiffs and the putative nationwide class under California's common-law claim for intrusion upon seclusion. To state a claim for a violation of California's constitutional right

---

[5] There are three such instances: "(1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff." *Warner Constr. Corp. v. City of Los Angeles*, 466 P.2d 996, 1001 (Cal. 1970) (footnotes omitted).

[6] Plaintiffs' opposition advances the circular, and unhelpful, argument that Defendants owed a duty to disclose because their representations were incomplete. (Opp. at 31–32).

to privacy, Plaintiffs must establish "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 657 (Cal. 1994). Under California law, "the action for intrusion has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v. Grp. W Prods., Inc.*, 955 P.2d 469, 490 (Cal. 1998), *as modified on denial of reh'g* (July 29, 1998). When brought in tandem, California courts commonly assess these claims together due to their "largely parallel elements . . . ." *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1074 (Cal. 2009).

Defendants contend that Plaintiffs have failed to establish either a reasonable expectation of privacy or a highly offensive intrusion. (Mot. at 26). Although the Court agrees that, as to Plaintiffs' browsing histories on Defendants' public-facing websites, Plaintiffs' claims are dubious, *see, e.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ("search results related to the phrase 'intestine transplant'" constituted "general health information . . . accessible to the public at large," not "protected health information"), as discussed above, Section III.C, Plaintiffs have adequately alleged the disclosure of certain personal medical information to Meta. Patients' right to privacy in their medical records "is well-settled." *Grafilo v. Wolfsohn*, 245 Cal. Rptr. 3d 564, 571 (Cal. Ct. App. 2019) (collecting cases). "It is a right that is protected by case law as well as state and federal statutes and regulations." *Cnty. of Los Angeles v. Superior Ct.*, 280 Cal. Rptr. 3d 85, 102 (Cal. Ct. App. 2021) (citing CMIA; 42 U.S.C. § 1320d *et seq.* (Health Insurance Portability and Accountability Act of 1996); *Citizens for Health v. Leavitt*, 428 F.3d 167, 172 (3d Cir. 2005)). As for whether Defendants' alleged disclosure of this information is "highly offensive," Plaintiffs have certainly pleaded facts sufficient to make this an issue not suitable for resolution at the pleading stage. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606. Defendants' motion as to Counts 6 and 7 is DENIED.

**H. Count 8: Breach of Implied Contract**

Count 8 seeks relief on behalf of Plaintiffs and the putative nationwide class for breach of implied contract. Breach of implied contract and breach of express contract share the same basic elements. *Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.*, 218 Cal. Rptr. 3d 562, 574 (Cal. Ct. App. 2017). Those elements are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011). Here, Plaintiffs' FAC alleges that an implied contract exists because "Plaintiffs and Nationwide Class Members provided their Private Information to Defendants in exchange for services . . . ." (FAC ¶ 381). But this allegation is not supported by the pleadings. Neither B.K. nor N.Z. allege that they exchanged private information, as opposed to payment, for medical services.[7] Accordingly, the Court GRANTS Defendants' motion to dismiss the breach of implied contract claim, with leave to amend.

**I. Count 10: California Penal Code Section 496**

Plaintiffs seek relief on their own behalf and on the behalf of a putative California subclass under California Penal Code Section 496, which imposes civil and criminal liability on "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained . . . ." Cal. Penal Code § 496. Defendants and Plaintiffs dispute whether Plaintiffs' allegations, which focus on Defendants' purportedly fraudulent conduct, establish that the property at issue was "stolen," within the meaning of Section 496. As an initial matter, the Court notes that neither California state nor federal courts have reached

---

[7] Indeed, the Court is unaware of any medical provider who would accept such an arrangement.

a consensus on whether property obtained by fraud has the requisite "stolen" quality required by Section 496. *See generally Hueso v. Select Portfolio Servicing, Inc.*, 527 F. Supp. 3d 1210, 1229–30 (S.D. Cal. 2021) (collecting cases). The Court need not reach this issue, however. As the Court has already discussed in detail, Plaintiffs fail to meet Rule 9's heightened pleading standard. *Grouse River Outfitters Ltd v. NetSuite, Inc.*, No. 16-CV-02954-LB, 2016 WL 5930273, at *14 (N.D. Cal. Oct. 12, 2016) (dismissing Section 496 claim because, among other reasons, "as with the other fraud claims, [plaintiff] did not identify false representations or plead fraud with particularity"). As a result, the Court GRANTS Defendants' motion to dismiss the Section 496 claim, with leave to amend.

**J. Count 11: Negligence**

Defendants move to dismiss Plaintiffs' negligence claim on the grounds that Plaintiffs have failed to ("and cannot") establish damages. (Mot. at 31–32). The Court disagrees. Plaintiffs have adequately alleged that at least certain categories of medical information were "improperly accessed, disclosed, and otherwise compromised." (FAC ¶ 414). This privacy injury is sufficient to establish harm. *See, e.g.*, *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 799 (holding that "present and non-speculative privacy injuries" satisfied injury element of negligence claim); *In re Facebook Priv. Litig.*, 572 F. App'x 494 (9th Cir. 2014) (reversing dismissal of fraud claim on grounds that "dissemination of . . . personal information" was "sufficient to show the element of damages"). Defendants' motion as to Count 11 is DENIED.

**K. Count 12: Breach of Confidence**

Defendants hitch their motion to dismiss Plaintiffs' claim for breach of confidence to the arguments made as to Count 1, brought under the CMIA. "To prevail on a claim for breach of confidence under California law, a plaintiff must demonstrate that: (1) the plaintiff conveyed 'confidential and novel information' to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Berkla v. Corel*

*Corp.*, 302 F.3d 909, 917 (9th Cir. 2002) (citation omitted). For the reasons discussed as to Plaintiffs' CMIA claim, *see* above, Section III.C, and California constitutional and common law privacy claims, *see* above, Section III.G, Plaintiffs have adequately alleged a violation in information disclosed in confidence to Defendants. Defendants' motion to dismiss Count 12 is DENIED.

**L. Count 13: Breach of Fiduciary Duty**

Count 13 seeks relief under a theory of breach of fiduciary duty. Defendants contend, and Plaintiffs do not oppose, that this claim should be dismissed because hospitals do not have a fiduciary relationship to their patients. "The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach." *Mendoza v. Cont'l Sales Co.*, 45 Cal. Rptr. 3d 525, 533 (Cal. Ct. App. 2006). The California Supreme Court has expressly held that hospitals, unlike physicians, do not have a fiduciary relationship with patients. *Moore v. Regents of Univ. of California*, 793 P.2d 479, 486 (Cal. 1990). *See also Cousin v. Sharp Healthcare*, --- F. Supp. 3d. ---, 2023 WL 4484441, at *4–*5 (S.D. Cal. July 12, 2023). Because Count 13 fails as a matter of law, the Court GRANTS Defendants' motion without leave to amend.

**M. Count 14: Unjust Enrichment**

Plaintiffs' final cause of action, brought on their own behalf and for the benefit of the putative nationwide class, seeks relief under the theory of unjust enrichment. Although Defendants contend that this cause of action does not exist under California law, (Mot. at 33), this is an oversimplification. "Some California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (collecting cases). In the absence of clear guidance from California courts, the Ninth Circuit "has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *Id.* This claim permits recovery where "a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'"

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting 55 Cal. Jur. 3d Restitution § 2). As explained above, Section III.F, Plaintiffs have failed to meet the heightened pleading standard for any affirmative fraud-based claims and have also failed to establish the requisite relationship under which omission-based claims could be brought. Accordingly, the Court GRANTS Defendants' motion to dismiss Count 14, with leave to amend.

## IV. CONCLUSION

For the reasons stated above, the Court hereby GRANTS in part Defendants' Motion to Dismiss. Counts 3 and 13 are dismissed with prejudice. Because it is not yet clear whether amendment of Plaintiffs' other dismissed claims would be futile, the Court grants dismissal without prejudice as to Counts 4, 8, 10, and 14, and to Counts 5 and 9 to the extend they seek relief based on fraudulent conduct. Should Plaintiffs seek to amend the FAC, they must file any Second Amended Complaint within twenty-one (21) calendar days from the issuance of this order.

DATED: February 1, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE